MICHAEL J. SACKSTEDER (CSB #191605)
msacksteder@fenwick.com
ADAM M. LEWIN (CSB #284905)
alewin@fenwick.com
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA  94104
Telephone:   415.875.2300
Facsimile:   415.281.1350

JOSEPH S. BELICHICK (CSB #229371)
jbelichick@fenwick.com
FENWICK & WEST LLP
801 California Street
Mountain View, CA  94041
Telephone:   650.988.8500
Facsimile:   650.938.5200

Attorneys for Defendant
OSIsoft, LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

LOS ANGELES DIVISION

| POWER ANALYTICS CORPORATION, | Case No.: SA16-01955-JAK(FFMx) |
|---|---|
| Plaintiff, | **DISCOVERY MATTER** |
| v. | **DECLARATION OF JOSEPH S. BELICHICK IN OPPOSITION TO JOINT STIPULATION OF COUNSEL RE POWER ANALYTICS' MOTION TO COMPEL DISCOVERY RESPONSES UNDER L.R. 37-2** |
| OPERATION TECHNOLOGY INC. d/b/a/ ETAP; OSISOFT, LLC; and SCHNEIDER ELECTRIC USA, INC., | |
| Defendants. | |
| | Date:       [NOT STATED]<br>Time:       [NOT STATED]<br>Ctrm:       [NOT STATED]<br>Judge:      [NOT STATED] |
| | Discovery cutoff:      9/05/17<br>Pretrial conference:  4/02/18<br>Trial Date:               4/17/18<br>Date Action Filed:    3/21/16 |

CASE NO. SA-01955-JAK (FFMX)

I, Joseph S. Belichick, declare pursuant to 28 U.S.C. § 1746 as follows:

1. I am counsel for Defendant OSIsoft, LLC ("OSIsoft") in this action. I submit this declaration in support of OSIsoft's portions of the Joint Stipulation of Counsel re Power Analytics' Motion to Compel Discovery Responses under L.R. 37-2. I have personal knowledge of the facts set forth in this declaration, and if called upon to do so, could and would testify competently thereto.

2. Plaintiff Power Analytics filed the operative first amended complaint ("FAC") on June 21, 2016 in the District of Delaware, naming OSIsoft as a defendant along with ETAP and Schneider. Dkt. No. 38. Though the FAC includes many counts, only a limited set relating to an alleged violation of Section 1 of the Sherman Antitrust Act are asserted against OSIsoft, along with state law counts arising from the same set of alleged facts. These counts overlap with a subset of the factual allegations directed against ETAP but do not overlap with any counts directed against Schneider.

3. In the FAC, Power Analytics alleges that, in competition with ETAP, it sells software used in electric power grids, such as those of nuclear power plants. FAC ¶¶ 1-2. It identifies two categories of this "grid design and management" software: "Real Time Products" used to manage electrical grids in real-time, and "Grid Design Products." *Id.* OSIsoft develops a different category of software called historian software that is used for data archiving and analysis. FAC ¶ 24. This software can be used across numerous applications and industries, with electric power grids as just one example. OSIsoft's historian software product is called the PI System, and Power Analytics alleges that it is used by most nuclear power plants in the United States. FAC ¶¶ 24, 61. Power Analytics also alleges that grid design and management software must interact with historian software to function properly, though it also alleges that its software is already configured to work with and in fact has been integrated with the PI System. FAC ¶¶ 52, 63-64.

4. Power Analytics alleges that power grid design and management

products used in nuclear power plants must be certified by NUPIC (the Nuclear Procurement Issues Committee) and defines an alleged antitrust market as "the market for the sale and servicing of Power Grid Design and Management Products, including Grid Design Products and Real Time Products, to customers who can only purchase NUPIC-certified Power Grid Design and Management Products." FAC ¶¶ 33-36. It alleges that its Grid Design Product is NUPIC-certified but that its Real Time Product is not. FAC ¶ 40. It does not allege that OSIsoft's PI System is NUPIC-certified (or that historian software needs to be for it to be used by nuclear plants), nor that OSIsoft is a participant in the alleged NUPIC market. *See* FAC ¶¶ 15-17, 36-40, 61-62. It also does not allege that OSIsoft is a competitor of Power Analytics in the sale of historian software to customers in the alleged NUPIC market. *See* FAC ¶ 11, 17, 23-25. Though Power Analytics alleges that a large share of potential customers in this alleged market use OSIsoft's software, it does not allege that OSIsoft has any market power of consequence to Power Analytics' or ETAP's ability to sell Grid Design and Real Time products to customers in this market. *See* FAC ¶ 61-62.

   5. Because it alleges that most nuclear power plants use OSIsoft's PI System, Power Analytics characterizes OSIsoft as a "critical bridge" to these potential customers to whom Power Analytics would seek to sell its own software. FAC ¶ 63. Power Analytics alleges that its software interconnects with the PI System, but that after a period of cooperation, OSIsoft terminated the parties' business relationship. FAC ¶¶ 63-64. It alleges this was a consequence of a Power Analytics employee (James Neumann) leaving Power Analytics and joining ETAP, and OSIsoft subsequently entering into a *de facto* exclusive deal with ETAP, by which ETAP and OSIsoft agreed to sell products to customers in the NUPIC market exclusively with one another's software. FAC ¶ 65-67. It does not allege that its software no longer works with the PI System, only that without OSIsoft's business role as the "critical bridge," Power Analytics cannot viably sell its software to

potential customers who use the PI System. FAC ¶ 68. As a result, it alleges that it has been foreclosed from selling its Grid Design Product to customers who use the PI System in the alleged NUPIC Market in competition with ETAP. FAC ¶¶ 68-70.

6. Thus, Power Analytics accuses ETAP and OSIsoft together of violating Section 1 of the Sherman Act by entering into an alleged exclusive agreement in restraint of trade. FAC ¶¶ 175-187. It also pled counts of violation of the North Carolina Unfair and Deceptive Trade Practices Act, tortious interference with prospective economic advantage, and civil conspiracy based on the same alleged agreement. FAC ¶¶ 220-224, 234-243.

7. Separately, Power Analytics defines an antitrust market for power grid design and management products used in conjunction with data centers that require high reliability. FAC ¶ 43. It alleges that in this "HR Data Center Market," which is separate and apart from the alleged NUPIC market, power grid design and management software is used in conjunction with electrical equipment sold by Schneider, among other suppliers. FAC ¶ 50. Power Analytics alleges no involvement in this market by OSIsoft. *See* FAC ¶ 43-52, 61, 68-70. Instead, this market relates to allegations that ETAP and Schneider entered into an exclusive deal that excluded Power Analytics from this market. FAC ¶¶ 51, 70, 74-77.

8. Power Analytics also asserts claims of patent infringement against ETAP and Schneider, but not OSIsoft. FAC ¶¶ 109-174. It alleges additional antitrust counts, a Lanham Act count, and several state law counts solely against ETAP. FAC ¶¶ 188-219; 225-233. To summarize, some of Power Analytics' allegations are directed against only ETAP, some are directed against ETAP and Schneider, and some are directed against ETAP and OSIsoft, but none are directed against OSIsoft and Schneider. Each of the defendants is differently situated.

9. The defendants moved to dismiss Power Analytics' FAC on July 22, 2016. Dkt. Nos. 42-45. The motions relied on the agreement at issue between OSIsoft and ETAP (which had been submitted in connection with a motion to

dismiss the original complaint). Dkt. No. 24. These motions were fully briefed in Delaware and together challenge all counts directed against OSIsoft. *See also* Dkt. Nos. 53-54, 61, 64.

10. On October 26, 2016, the Delaware district court transferred the case to the Central District of California. Dkt. No. 73. Following transfer, the defendants sought to submit Ninth Circuit authority pertinent to their motions to dismiss, a request that Power Analytics opposed. Dkt. Nos. 149-150.

11. Power Analytics served its first set of Requests for Production (Nos. 1-6) on August 19, 2016. These requests appeared to largely duplicate the same requests that Power Analytics served on ETAP and Schneider without tailoring them for the unique circumstances of each defendant. OSIsoft timely objected and responded to these requests on September 22, 2016.

12. The next day, on September 23, 2016, Power Analytics sent an email requesting to meet and confer regarding OSIsoft's responses. A copy of this email is attached as **Exhibit 1**. The only substantive topic this email specifically raised in advance of meet-and-confer call was the relationship between the then-pending motions to dismiss and transfer and OSIsoft's proportionality objections.

13. Counsel met and conferred on September 28, 2016 and discussed document request nos. 1-6, to apparent resolution. In particular, OSIsoft agreed to investigate a narrowed version of Request No. 1 (concerning organizational charts) that focused on the industries at issue and not the entire company, and to investigate whether any agreements existed responsive to Request No. 2 (concerning agreements between OSIsoft and ETAP) other than that submitted with the motions to dismiss. OSIsoft challenged the relevance of Request Nos. 3-6 (concerning any NUPIC-certified products and their technical operation, and ETAP products and their technical operation), but nonetheless agreed to investigate those requests, as limited (at the suggestion of Power Analytics' counsel) to NUPIC-certified products or those used in nuclear facilities. Counsel for ETAP and Schneider also

participated in this call because Power Analytics served a substantially identical set of document requests on all defendants.

14. Even though the September 28 telephonic conference resulted in a clear plan for follow-up on the part of OSIsoft, Power Analytics' counsel contacted OSIsoft's counsel by email on September 30, 2016 with an inconsistent description of that discussion. A copy of this communication is attached as **Exhibit 2**. In particular, Power Analytics mischaracterized OSIsoft's position on Request No. 1 and falsely stated that OSIsoft agreed to produce technical documents as to Request Nos. 4 and 6. In fact, ETAP and Schneider agreed to produce technical documents, but only responsive to the patent deadlines for such disclosures, which did not apply to OSIsoft. Accordingly, OSIsoft responded on October 3, 2016, clarifying these points and again challenging Power Analytics to explain the relevance of Request Nos. 4 and 6. A copy of that email is attached as **Exhibit 3**.

15. Power Analytics responded by email on October 4, 2016, taking the position for the first time that it need not explain the relevance of its requests to be entitled to responsive documents. A copy of this email is attached as **Exhibit 4**. It further attempted to reset the parties' discussions by stating that it was entitled to the broader version of documents within the scope of Request Nos. 3-6, as served, rather than the narrower version the parties discussed telephonically.

16. OSIsoft responded by email on October 7, 2016, explaining why Power Analytics was obligated to articulate the relevance of its requests and explaining why Request Nos. 3-6 sought information outside the scope of relevant discovery. In particular, OSIsoft explained why the technical operation of OSIsoft's products was irrelevant to any of the claims against it, which do not include patent claims. OSIsoft also took issue with the apparent approach of re-propounding discovery against it that had been prepared for ETAP and/or Schneider. In addition, OSIsoft explained that: (1) regarding Request No. 1, it did not have any organizational charts relating to its lines of business touching upon

nuclear power plants; (2) regarding Request No. 2, only a standard NDA existed between OSIsoft and ETAP other than the agreements submitted with the motions to dismiss; (3) OSIsoft's only product, the PI System, was not NUPIC-certified (and thus no responsive documents exist as to Request Nos. 3-4); and (4) OSIsoft and ETAP had no joint installations (and thus no responsive documents exist as to Request Nos. 5-6). A copy of this email is attached as **Exhibit 5**.

17. Following transfer to this Court, Power Analytics sought to reset discussion entirely regarding its Request Nos. 1-6 by sending a letter to OSIsoft on November 4, 2016, ostensibly pursuant to this Court's Local Rule 37-1. A copy of this letter is attached as **Exhibit 6**. This letter took the position that Power Analytics was entitled to *all* organizational charts and demanded that OSIsoft produce documents responsive to Request Nos. 5-6. It also threatened to seek a Court order requiring production of "all documents responsive to Requests 1 through 6." Power Analytics did not include or reference this letter in its portion of this joint stipulation.

18. OSIsoft responded by letter on November 9, 2016. A copy of this letter is attached as **Exhibit 7**. In this letter, OSIsoft reminded Power Analytics of the discussions the parties previously conducted, including the more limited, proportional version of Request No. 1. OSIsoft also reminded Power Analytics of the parties' prior discussions regarding Request Nos. 3-6 and how it previously confirmed that no responsive documents exist as to those requests. Further, OSIsoft pointed out the inconsistency with (1) Power Analytics' knowledge that responsive documents did not exist as to some requests; (2) its demand for production of documents responsive to some of these same requests; and (3) its threat that it would seek a Court order as to *all* requests. OSIsoft explained that there appeared to be no outstanding issues necessitating further meet-and-confer discussions, but made itself available if Power Analytics disagreed. Power Analytics did not respond to this letter.

19. The Court entered a case schedule on December 2, 2016, including scheduling a hearing on the pending motions to dismiss. Dkt. No. 147. On the same day, Power Analytics served its second set of Requests for Production (Request Nos. 7-61). Some of these requests appeared to have been prepared for or directed at ETAP and/or Schneider, but served on OSIsoft anyway. OSIsoft timely objected and responded to these requests on January 3, 2017, including specific objections, with explanations, based on relevance and proportionality, and commitments as to when it would begin producing documents. In the interim, OSIsoft also began preparing documents for production, to the extent feasible given the intervening holidays.

20. Before OSIsoft could begin producing documents, Power Analytics sent a letter on January 11, 2017 under Local Rule 37-1, requesting that counsel conduct a meet-and-confer conference. A copy of this letter is attached as **Exhibit 8**. This letter opened by stating that it was "in response to OSIsoft, LLC ("OSIsoft")'s Objections and Responses to Power Analytics' Second Requests for Production of Documents ("Requests") which were served on OSIsoft on December 2, 2016." Rather than identify particular requests for production which Power Analytics thought might be in dispute, the letter listed 11 generalized issues and requested a telephonic conference.

21. Of the 55 requests in Power Analytics' second set, it specifically highlighted only the substance of OSIsoft's objections to Request No. 8 (topic 9) and Request No. 11 (topic 10). In addition, Power Analytics highlighted OSIsoft's alleged "boilerplate proportionality objection" (topic 4), with reference to Request No. 7, though it actually omitted using an ellipsis (. . .) the specific reasons OSIsoft had recited in those objections. Other topics raised in this letter included general objections (topic 1), dates for production (topic 2), bases for withholding documents (topic 3), vagueness objections (topic 5), objections to temporal scope (topic 6), confidentiality objections (topic 8), and requests seeking information

outside the alleged NUPIC market (topic 11).  The letter also purported to restart, once again, discussions regarding Request No. 1 (corporate structure, topic 7), even though the second set of document requests included a narrowed version of this request (Request No. 21), to which OSIsoft agreed to produce responsive documents.  Almost nothing at issue in this joint stipulation was originally raised in Power Analytics' purported meet-and-confer letter under Local Rule 37-1, because the letter did not identify or state the relevance and proportionality of almost any individual request.

22.    OSIsoft nonetheless agreed to meet and confer with Power Analytics to discuss the topics raised in this letter.  Counsel for OSIsoft and counsel for Power Analytics met telephonically on January 23, 2017.  I participated in this call on OSIsoft's behalf and came prepared to discuss the topics identified in Power Analytics' letter.  I addressed each of the points Power Analytics raised, explained OSIsoft's approach to documentary discovery, and indicated specific dates on which OSIsoft would begin production (including production of email).  Given Power Analytics' position on OSIsoft's relevance and proportionality objections, I also explained why Request No. 7 sought irrelevant documents outside the proportional scope of discovery.  In particular, as this request sought documents regarding competition between OSIsoft and Power Analytics, I reminded Power Analytics' counsel that the complaint does not allege that the parties are competitors or place competition between OSIsoft and Power Analytics at issue.  I challenged Power Analytics' counsel to explain otherwise, but nonetheless confirmed that such objection would not be used as a basis for withholding documents, if any exist.  There appeared to be no further disputes relating to the contents of Power Analytics' January 11, 2016 letter.

23.    Nevertheless, Power Analytics' counsel proceeded to attempt to discuss every individual request from both sets of document requests, even though neither its January 11 letter nor its email requesting meet-and-confer stated that the

individual requests (beyond those few specifically identified) would be up for discussion. I indicated that although OSIsoft would be willing to have such a discussion, raising it for the first time midway through a meet-and-confer call on other issues was inappropriate because: (1) Power Analytics had not presented its position on these requests in an appropriate letter pursuant to Local Rule 37-1; and (2) raising these issues with no notice and without explaining Power Analytics' position on them did not permit OSIsoft to first consider those positions and come prepared to compromise or present its own positions. In response, counsel for Power Analytics threatened to serve a joint stipulation by Wednesday, January 25 (two days later).

24. I invited Power Analytics' counsel to provide its positions on the relevance of its requests in writing so that counsel for OSIsoft could prepare to discuss those positions in substance on a future call. Instead, later in the day on January 23, 2017, Power Analytics sent follow-up email without acknowledging anything discussed on the parties' call or any progress the parties made. A copy of this email is attached as **Exhibit 9**. Nowhere does this email say that the parties' meet-and-confer call was meaningless or unproductive. Nor does this email acknowledge the initiation of that meeting in Power Analytics' January 11 letter. Rather, the email purported to serve as a checklist, with spaces for OSIsoft to "confirm": (1) the list of requests for which it agreed to produce responsive documents (and the date such production would begin); (2) that it was not withholding any documents based on any objections to those requests; (3) the list of documents for which it had not agreed to produce responsive documents; and (4) the list of requests for which OSIsoft had already verified that no responsive documents exist. In categorizing the requests based on OSIsoft's response, instead of thematic categories of discovery, the email also failed to provide Power Analytics' position on any individual request (which positions were never provided until service of this joint stipulation). In other words, the email took no steps

9    CASE NO. SA-01955-JAK (FFMX)

towards identifying any potentially disputed issues of substance or their potential resolution, nor did it request a further meet-and-confer conference to discuss any such issues.

25. OSIsoft responded by email the next day, January 24, 2017. A copy of this communication is attached as **Exhibit 10**. In this email, OSIsoft objected to Power Analytics' "fill-in-the-blanks" approach because it is not a productive way to identify and resolve any disputed discovery issues. OSIsoft again requested that Power Analytics explain its position on requests for which it disagreed with OSIsoft's objections, and rejected Power Analytics' assumption that everything requested was properly and automatically within the scope of discovery. OSIsoft explained, with reference to case law, how this approach to individual requests did not satisfy the Local Rules' prerequisites for a motion to compel.

26. Nonetheless, OSIsoft again affirmed its willingness to conduct a further meet-and-confer call with Power Analytics once the issues to be discussed were explained in advance so that OSIsoft could be prepared to discuss them. And OSIsoft further sought to advance the process by: (1) explaining its view of relevancy and proportionality in general; (2) attempting to clarify which objections OSIsoft would stand on and whether responsive documents would be produced regardless; (3) reiterating the timing of when OSIsoft anticipated it would be producing responsive documents (a promise OSIsoft has since met); and (4) addressing the requests raised in Power Analytics' email, grouping them into categories of substantive discovery, and explaining with greater specificity OSIsoft's reasons for its positions for each, such as why certain individual requests sought documents outside the scope of discovery. My email concluded: "If you disagree with these positions, please explain why these RFPs or portions of RFPs seek documents that are relevant and proportional to the needs of the case, and we will consider your arguments and work with you to narrow the scope of any dispute and/or amend OSIsoft's responses as appropriate."

27. Power Analytics responded by email on January 25, 2017. A copy of this communication is attached as **Exhibit 11**. In response to OSIsoft's email, Power Analytics did not respond to any substantive position that OSIsoft provided. Instead, it stated that the January 11 letter omitted mention of specific requests because OSIsoft interposed proportionality objections throughout, though Power Analytics did not discuss the substance of those objections, the differences between them, or its positions in response. For the first time, Power Analytics took the position that, because the parties did not then discuss individual requests during the January 23 meet-and-confer, that call was not "meaningful" and therefore "valueless." It also took the view that it was *OSIsoft's* burden to articulate the basis for its objections, without acknowledging Power Analytics' responsibility to respond to those objections once made. Finally, Power Analytics requested a further "meaningful meet and confer," stating that "[t]he meet and confer process has already dragged on for four months," despite Power Analytics' letter having been originally served exactly two weeks prior, and OSIsoft's responses having been served less than two weeks before that. Power Analytics also knows that the parties met and conferred to apparent resolution on the first set of document requests (Nos. 1-6) that have been pending for longer, and that Judge Kronstadt only ordered that discovery as to antitrust claims should go forward as of early December 2016. Power Analytics asserted this false statement in its portion of the joint stipulation ("OSI has dragged its feet for the last five months") under its argument regarding Request No. 12, which was part of the *second* set of Requests, which OSIsoft originally responded to in early January.

28. OSIsoft responded by email on January 26, 2017. A copy of this communication is attached as **Exhibit 12**. Once again, OSIsoft expressed its willingness to meet and confer, and asked Power Analytics to provide its positions beforehand so that the parties might attempt to reach resolution on any disputed issue. OSIsoft explained how its original responses provided specific explanations

11 CASE NO. SA-01955-JAK (FFMX)

(particularly those relating to relevance and proportionality) and how its prior email further explained its positions on why certain requests sought information outside the scope of discovery. OSIsoft again challenged Power Analytics to explain what it took issue with, noting that "we are left unsure of what areas are of particular concern to you, what issues may be in dispute, and what topics you wish to discuss with us to try to reach resolution. . . . Demanding that we immediately make ourselves available for another telephone call without first knowing Power Analytics' positions is unreasonable, inefficient, and fails to comply with the Local Rules." With reference to case law, OSIsoft reminded Power Analytics of its obligation to engage in good-faith meet-and-confer efforts and its burden to establish the relevance and discoverability of the documents sought.

29. OSIsoft did not receive any further communication from Power Analytics regarding these discussions.

30. Judge Kronstadt held a hearing on the defendants' motions to dismiss on January 30, 2017, but has not yet ruled on them, instead taking them under submission. (Dkt. No. 158.) The motion papers make clear that if granted, all claims against OSIsoft would be dismissed from this case (and thus discovery as to OSIsoft would not go forward).

31. On January 31, 2017, with no additional warning or further attempts to meet and confer, Power Analytics served OSIsoft with its opening portion of the joint stipulation in support of this motion to compel and supporting documents including an attorney declaration and two exhibits (A and B).

32. The original supporting declaration of Arthur T. Farrell that Power Analytics served on January 31 was not signed under penalty of perjury as required under 28 U.S.C. § 1746 or dated as of the date of service. It also failed to certify that Power Analytics had conferred or attempted to confer in good faith with OSIsoft as required by Federal Rule of Civil Procedure 37(a)(1). Finally, that declaration did not attach a copy of the case scheduling order (Dkt. No. 147) as

required by Local Rule 37-2.1. Pursuant to Local Rule 37, OSIsoft added its portions of the joint stipulation and delivered them to Power Analytics on February 7, 2017, including a supporting declaration that was substantially identical to this one other than this paragraph. In response, however, Power Analytics did not finalize the joint stipulation for signing and filing pursuant to Local Rule 37-2.2. Instead, Power Analytics re-served its portion of the joint stipulation and supporting papers on February 10, 2017. Although Power Analytics did not revise its portions of the joint stipulation, it served a new declaration of Arthur T. Farrell purporting to fix the errors in the original declaration outlined above, which OSIsoft had also identified in its portion of the joint stipulation and supporting declaration. The changes included reciting a pro forma certification parroting the language of Federal Rule of Civil Procedure 37(a)(1), attaching the case schedule, and signing and dating the declaration. All other procedural and substantive defects in the joint stipulation and supporting declaration remain.

33. In addition, Power Analytics' opening portion of the joint stipulation does not acknowledge the progress the parties made during any meet-and-confer efforts on either set of the document requests. It also reverted its organization of document requests according to its January 23rd email, instead of the follow-up correspondence that sought to make progress by arranging categories of discovery by topic. The first time Power Analytics disclosed its position regarding the alleged relevance and proportionality of almost all of its document requests was on January 31, 2017, when Power Analytics served its opening portion of the joint stipulation in support of its motion to compel, including those for which there is no apparent dispute.

34. At no point in Power Analytics' correspondence, or in the joint stipulation itself, has Power Analytics identified any areas for possible compromise or explained what type of response from OSIsoft regarding the second set of document requests would be satisfactory other than to state: "All documents

13      CASE NO. SA-01955-JAK (FFMX)

responsive to this RFP must be produced."

35. A copy of the FAC, Dkt. No. 38, is attached as **Exhibit 13**.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct, and that this declaration was executed at Mountain View, California, on February 17, 2017.

By: *Joseph A. Belichick*
Joseph S. Belichick

Fenwick & West LLP
Attorneys at Law
Mountain View