1  David W. Kesselman (Cal. Bar No. 203838)
2  dkesselman@kbslaw.com
   KESSELMAN BRANTLY STOCKINGER LLP
3  1230 Rosecrans Avenue, Suite 690
   Manhattan Beach, CA 90266
4  Telephone: 310-307-4555

5
   Counsel for Defendant
6  OPERATION TECHNOLOGY, INC.

7
                UNITED STATES DISTRICT COURT
8               CENTRAL DISTRICT OF CALIFORNIA
9                     WESTERN DIVISION

10 POWER ANALYTICS                  Case No. 8:16-cv-01955-JAK (FFMx)
   CORPORATION,
11                                  **DISCOVERY MATTER**
                                    **Before Hon. Frederick F. Mumm**
12              Plaintiff,

13        v.                        **DECLARATION OF SALUMEH R.
                                    LOESCH IN SUPPORT OF ETAP'S
14 OPERATION TECHNOLOGY, INC.,      NOTICE AND MOTION TO
   d/b/a ETAP, OSISOFT LLC, and     COMPEL THE PRODUCTION OF
15 SCHNEIDER ELECTRIC USA, INC.,    DOCUMENTS RESPONSIVE TO
                                    ETAP'S FIRST AND SECOND SETS
16              Defendants.         OF REQUESTS FOR
                                    PRODUCTION; JOINT
17                                  STIPULATION PURSUANT TO L.R.
                                    37-2**
18
                                    Date:  June 13, 2017
19                                  Time:  10:00 a.m.
20                                  Courtroom:  580, 5th Floor
                                    Judge:  Hon. Frederick F. Mumm
21
22                                  Discovery Cutoff: September 5, 2017
23                                  Pre-Trial Conf.: April 2, 2018
                                    Trial Date: April 17, 2018
24
25
26
27
28

I, Salumeh Loesch, declare:

1.    I am an attorney at the law firm of Klarquist Sparkman, LLP, and counsel for Operation Technology, Inc. ("ETAP"), the Defendant in this matter. I provide this declaration in support of ETAP's Notice and Motion to Compel the Production of Documents Responsive to ETAP'S First and Second Sets of Requests for Production. I have personal knowledge of the facts set forth below, and if called as a witness, could and would testify competently to such facts under oath.

2.    Attached as Exhibit A is a true and correct copy of the case scheduling order, ECF No. 147.

3.    Attached as Exhibit B is a true and correct copy of ECF No. 217.

4.    Attached as Exhibit C is a true and correct copy of ECF No. 217-1, Exhibits F-H.  Exhibits A-E, totaling 879 pages have not been duplicated here.

5.    Attached as Exhibit D is a true and correct copy of the February 28, 2017 Rule 37-1 letter regarding Plaintiff's Paladin document production from ETAP's counsel John D. Vandenberg to Plaintiff's counsel.  Prior to service of this letter, Plaintiff had not produced a single document or things regarding its Paladin prior art system or software dated prior to July 20, 2007.  After this letter, Plaintiff produced a few dozen documents related to Paladin before July 2007.  None of these documents provided any detailed technical information.  To date, Plaintiff has not provided any detailed technical information regarding its pre-July 2007 Paladin (including Paladin Live) software, products, or installations.

6.    Attached as Exhibit E is a true and correct copy of a follow-up Rule 37-1 letter from ETAP's counsel Salumeh Loesch to Plaintiff's counsel, summarizing the parties meet-and-confers and confirming that Plaintiff stated during that meet-and-confer that it "will: (1) produce all Paladin documents, including source code, executable code, technical documents, sales information, etc. by no later than March 31, 2017; (2) provide at least the names of the withheld

NDA third party information by no later than March, 31, 2017; and (3) provide a privilege log related to these Paladin documents by no later than April 7, 2017." The letter also explained that ETAP understood that Plaintiff will: "1. Produce its executable code by no later than March 17, 2017; 2. Make its source code available for inspection once Power Analytics determines how to install it on a computer, and provide us with an update by today, March 15; 3. Produce additional documents this week; and 4. Complete its document production by no later than April 28, 2017." None of these deadlines have been met. Plaintiff has not made its prior art source code available for inspection and has not provided any privilege log.

7.      The document production related to Paladin prior art as of May 1, 2017, has been minimal: missing are technical documents detailing the software, documents between General Atomics and Plaintiff, documents related to the FAA installations, documents supporting Plaintiff's interrogatory responses, and documents of other uses of this Paladin software that was in the market for at least three years prior to the filing of the patents.

8.      Attached as Exhibit F is a true and correct copy of the April 10, 2017 letter from Plaintiff's counsel to ETAP's counsel regarding Plaintiff's source code production.

9.      Attached as Exhibit G is a true and correct copy of email exchanges between Plaintiff's counsel and ETAP's counsel regarding Plaintiff's source code production.

10.      Attached as Exhibit H is a true and correct copy of ECF No. 161-2.

11.      Attached as Exhibit I is a true and correct copy of ECF No. 203-2.

12.      Attached as Exhibit J is a true and correct copy of an excerpt of a document produced by Plaintiff at PA_00001087.

13.     Attached as Exhibit K is a true and correct copy of an excerpt of a document produced by Plaintiff at PA_00001096.

14.     Attached as Exhibit L is a true and correct copy of an April 27, 2010 press release from Plaintiff's website titled: "ESDA Awarded Patent for Industry's Only Real-Time."

15.     Attached as Exhibit M is a true and correct copy of a March 23, 2010 press release from Plaintiff's website titled: "EDSA Awarded Patent for Industry's Only Real-Time Arc Flash Software."

16.     Attached as Exhibit N is a true and correct copy of a letter from ETAP to EDSA Micro Corporation dated July 15, 2009.

17.     Attached as Exhibit O is a true and correct copy of a letter sent from ETAP's General Counsel to its customers.

18.     Attached as Exhibit P is a true and correct copy of Kevin Meagher's LinkedIn profile, found at https://www.linkedin.com/in/kevin-meagher-2252265/.

19.     Attached as Exhibit Q is a true and correct copy of Plaintiff's Amended Objections and Responses to Defendant ETAP's First Set of Interrogatories to Plaintiff Power Analytics Corporation (Nos. 1, 3 and 5), dated April 10, 2017.

20.     Attached as Exhibit R is a true and correct copy of ECF No. 162-1.

21.     Attached as Exhibit S is a true and correct copy of ECF No. 199.

22.     Attached as Exhibit T is a true and correct copy of U.S. Patent No. 7,693,608.

23.     Attached as Exhibit U is a true and correct copy of an article from Plaintiff's website from April 9, 2006, titled "COMING SOON: Paladin®Live™ Real)time Power Analytics Platform."

24.     Attached as Exhibit V is a true and correct copy of an August 9, 2013 press release titled: "Power Analytics™ Names Kevin Meagher President and Chief Technology Officer."

25.     Attached as Exhibit W is a true and correct copy of EDSA Partial User List produced by ETAP at ETAP-PA_00005995-6036.

26.     Attached as Exhibit X is a true and correct copy of an article from Plaintiff's website from 2005 found at: http:l/web.archive.org/web/20050204215020/http:l/edsa.com/Paladin.htm.

27.     Attached as Exhibit Y is a true and correct copy of Copyright Encyclopedia website, for Copyright Registration No. TX0006355193.

28.     Attached as Exhibit Z is a true and correct copy of Plaintiff's Objections and Responses to Operation Technology Inc. d/b/a ETAP's First Request for Production of Documents (Nos. 1-64), dated December 8, 2016.

29.     Attached as Exhibit Z1 is a true and correct copy of Plaintiff's Objections and Responses to Operation Technology, Inc. d/b/a ETAP's Second Request for Production of Documents (Nos. 65-208), dated January 19, 2017.

30.     I certify that ETAP, by and through its counsel, has in good faith conferred and attempted to confer with Power Analytics in an effort to obtain the requested discovery without court action.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed May 23, 2017, at Portland, Oregon.

_Salumeh R. Loesch_
Salumeh R. Loesch

# EXHIBIT A

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

| Case No. | SA CV16-01955 JAK (FFMx) | | Date | December 1, 2016 |
|---|---|---|---|---|
| Title | Power Analytics Corporation v. Operation Technology, Inc., et al. | | | |

Present: The Honorable    JOHN A. KRONSTADT, UNITED STATES DISTRICT JUDGE

| Andrea Keifer | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

**Proceedings:**      **(IN CHAMBERS) ORDER SETTING PRETRIAL AND TRIAL DATES**

The Court has reviewed the parties November 10, 2016 joint report and sets the following deadlines:

**Patent Claims:**

| | |
|---|---|
| December 19, 2016: | Defendants to serve invalidity contentions |
| January 9, 2017: | Last day to amend or add parties |
| January 9, 2017: | Parties to exchange proposed terms for construction |
| January 23, 2017: | Parties to exchange proposed constructions and evidence |
| February 27, 2017: | Claim Construction Discovery Cut-Off |
| March 6, 2017: | Joint Markman Prehearing Statement Due |
| March 13, 2017: | Simultaneous Opening Markman Briefs Due |
| April 27, 2017: | Simultaneous Responsive Markman Briefs, Tutorials, and Presentation Materials Due |
| April 17, 2017 at 10:00 a.m.: | Markman Hearing |
| May 15, 2017: | Anticipated Ruling to be Issued on Markman Issues |
| June 12, 2017: | Patentee's Deadline to File Final Infringement Contentions, Expert Reports on issues Where Patentee has Burden of Proof, All Parties File Advice of Counsel Disclosures |
| July 10, 2017: | Accused Infringer's Deadline to File Final Invalidity Contentions, Rebuttal Expert Reports, and Opening Expert |

**Exhibit A**
**Page 7**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | SA CV16-01955 JAK (FFMx) | Date | December 1, 2016 |
|---|---|---|---|
| Title | Power Analytics Corporation v. Operation Technology, Inc., et al. | | |

| | Reports Where Accused Infringer has Burden of Proof |
|---|---|
| TBD: | Last day to participate in a settlement conference/mediation |
| TBD: | Last day to file a notice of settlement or a joint report re status of settlement |
| TBD: | Post Mediation Status Conference |
| August 7, 2017: | Patentee's Deadline for Rebuttal Expert Reports on Issues Where Accused Infringer has Burden of Proof |
| September 5, 2017: | Discovery Cut-Off |
| October 2, 2017: | Last day to file motions *(including discovery motions)* |
| November 20, 2017: | Last day to hear motions *(including discovery motions)* |
| December 18, 2017: | Anticipated ruling on all motions |
| March 19, 2018: | Last day to file all pretrial documents |
| April 2, 2018 at 3:00 p.m.: | Final Pretrial Conference, Status Conference re Exhibits, and Hearing on Motions in Limine |
| April 17, 2018 at 9:00 a.m.: | Jury Trial (est. tbd days) |

**Non-Patent Claims:**

| | |
|---|---|
| Within 14 days after the ruling on the Motions to Dismiss, if leave to amend is granted: | Last day to amend or add parties |
| January 30, 2017 at 8:30 a.m.: | Hearing on Defendant Schneider Electric USA, Inc.'s Motion to Dismiss (Dkt. 42) and Defendants Operation Technology, Inc. and Osisoft, LLC's Second Motion to Dismiss (Dkt. 44) ("Motions") |
| January 30, 2017 at 8:30 a.m.: | Status Conference re Settlement and Discovery |
| September 5, 2017: | Non-Expert Discovery Cut-Off |
| September 18, 2017: | Initial Expert Disclosures |
| October 2, 2017: | Rebuttal Expert Disclosures |

Exhibit A
Page 8

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | SA CV16-01955 JAK (FFMx) | Date | December 1, 2016 |
|---|---|---|---|
| Title | Power Analytics Corporation v. Operation Technology, Inc., et al. | | |

| | |
|---|---|
| October 23, 2017: | Expert Discovery Cut-Off |
| November 6, 2017: | Last day to file motions *(including discovery motions)* |
| January 29, 2018: | Last day to hear motions *(including discovery motions)* |
| March 5, 2018: | Anticipated ruling on all motions |
| March 19, 2018: | Last day to file all pretrial documents |
| April 2, 2018 at 3:00 p.m.: | Final Pretrial Conference, Status Conference re Disputed Exhibits, and Hearing on Motions in Limine |
| April 17, 2018 at 9:00 a.m. | Jury Trial (est. tbd days) |

The Court will determine the number of days allotted for trial at the time of the Final Pretrial Conference.

Counsel shall deliver a courtesy copy of the Motions, responses, and replies no later than December 8, 2016. The documents shall be printed from CM/ECF and include the CM/ECF generated header consisting of the case number, document control number, date of filing, page number, etc.

The request to stay non-patent discovery pending the ruling on the Motions is denied other than as to depositions. The timing of the commencement of depositions will be discussed with counsel at the January 30, 2017 hearing on the Motions. With respect to the time allocated for depositions, each side is permitted 150 hours for depositions of non-expert witnesses as to both patent and non-patent issues; provided, however, of this 150 hours, no more than 70 hours may be applied to depositions of witnesses who are officers, employees or otherwise specifically linked to a particular party to this action.

The Court will confer with counsel about a settlement process at the hearing on the Motions.

Counsel for all parties shall comply with this Court's standing orders with respect to documents to be prepared and filed in connection with the Final Pretrial Conference. Dkt. 107.

**IT IS SO ORDERED.**

_____ : _____

Initials of Preparer    ak

Exhibit A
Page 9

# EXHIBIT B

David W. Kesselman (Cal. Bar No. 203838)
dkesselman@kbslaw.com
KESSELMAN BRANTLY STOCKINGER LLP
1230 Rosecrans Avenue, Suite 690
Manhattan Beach, CA 90266
Telephone: 310-307-4555

Counsel for Defendant
OPERATION TECHNOLOGY, INC.

[Additional Counsel Listed on Signature Pages]

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION

| | |
|---|---|
| POWER ANALYTICS CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>OPERATION TECHNOLOGY, INC., d/b/a ETAP, OSISOFT LLC, and SCHNEIDER ELECTRIC USA, INC.,<br><br>Defendants. | Case No. 8:16-cv-01955-JAK (FFMx)<br><br>**DISCOVERY MATTER**<br>**Before Hon. Frederick F. Mumm**<br><br>**ETAP'S L.R. 37-2.3 SUPPLEMENTAL MEMORANDUM RE JOINT STIPULATION REGARDING ETAP'S MOTION TO COMPEL PLAINTIFF TO RESPOND TO ETAP'S FIRST SET OF INTERROGATORIES (NOS. 1-7)**<br><br>Date:      May 9, 2017<br>Time:      10:00 a.m.<br>Courtroom: 580, 5th Floor<br>Before:    Hon. Frederick F. Mumm<br><br>Discovery Cut-off:   September 5, 2017<br>Pretrial Conference:  April 2, 2018<br>Trial Date: April 17, 2018 |

## I.   INTRODUCTION

ETAP's motion to compel focuses primarily on Plaintiff's own prior art that both invalidates the asserted patent claims and shows that they were procured by deceiving the Patent Office. The patents-in-suit re-use prior art drawings as drawings of the "invention," but with "Paladin" removed. The patent applicants knew these drawings were from prior art publications and software products offered for sale by their company, EDSA.[1] Yet they withheld these publications and prior art software from the Patent Office. Now, Plaintiff seeks to compound its fraudulent concealment of this prior art from the Patent Office by stonewalling discovery related to the same prior art here.

ETAP's interrogatories primarily target the EDSA Paladin prior art software from 2004-2006.[2] But Plaintiff's responses mostly ignore this critical time period and its pre-patent Paladin software. Thus ETAP asks the Court to compel Plaintiff to respond to ETAP's interrogatories to include Plaintiff's pre-patent prior art software.

## II.   PLAINTIFF'S PALADIN SOFTWARE
##        IS INVALIDATING PRIOR ART

A patent applicant's commercialization (use, sale, or offer for sale) of a claimed invention more than one year before a patent application's effective filing date is prior art. 35 U.S.C. § 102(b) (pre-AIA). This includes any purported "secret" or non-public commercialization. *See, e.g., Woodland Trust v. Flowertree Nursery,*

---

[1] EDSA is the former name of Plaintiff. (*See* ECF No. 203-2 at 84.) Plaintiff's Complaint (ECF No. 1 ¶ 26) equates EDSA and Power Analytics.

[2] Plaintiff's responses to the two interrogatories not addressed here also are incomplete: Interrogatory No. 2: Plaintiff states it will refer to documents once produced, but no documents have been produced or identified; Interrogatory No. 6: Plaintiff states it is waiting for ETAP's financial documents, which have been produced.

1    *Inc.*, 148 F.3d 1368, 1370-71 (Fed. Cir. 1998) (secret use can invalidate); *In re*

2    *Caveney*, 761 F.2d 671, 675 (Fed. Cir. 1985) (secret offer for sale can invalidate).

3    Here, the asserted patents' latest possible effective filing date is July 20, 2007, so

4    any Paladin software before July 20, 2006, is potential prior art.[3] ETAP is entitled

5    to all information related to such Paladin software use, sales, offers for sale,

6    publications, etc.

7         Plaintiff's commercialization of Paladin is prior art. Paladin was first installed

8    at FAA facilities in November 2003. (Loesch Decl. Ex. G at 887.) In 2004, named

9    inventor and founder of EDSA, Adib Nasle (*see id.* Ex. F at 882), co-authored with

10   individuals at General Atomics and the FAA, "Paladin® Monitoring and Predictive

11   Software for Electric Power Distribution Systems" ("Paladin Article"). (ECF No.

12   161-2 ¶ 5, Ex. C at 13-18, G-J at 42-57.) The 2004 Paladin Article explains that the

13   "Paladin software system has been successfully implemented at three Federal

14   Aviation Administration (FAA) sites in the USA *and is planned for installation at*

15   *others*." (ECF No. 161-2, Ex. C at 14:8-11 (emphasis added); *see also id.* at 15:21-

16   23; 18:19-21.) A General Atomics article provides further evidence of this

17   commercialization, stating that the Paladin system was implemented in

18   "Minneapolis ARTCC (MZP) … in November 2003 and [wa]s fully operational"

19   and "Denver ARTCC and FAA Oklahoma Technical Center are also on-line now,

20   with 10 additional sites (total of 13) coming on-line in 2004 and the remainder in

21   2005." (Loesch Decl. Ex. G at 887.)

22        The 2004 Paladin Article also discusses the capabilities of Plaintiff's then-

23   existing Paladin software. Its Figure 1 depicts the Paladin prior art with a drawing

---

[3] Any Paladin software between February 2006 and July 2007 also is potential prior art if Plaintiff cannot prove entitlement to the February 2006 date.  35 U.S.C. § 120.  (*See also* ECF No. 203 at 19-21.)  This analysis is done on a claim-by-claim basis. *Clearwater Sys. Corp. v. Evapco, Inc.*, 394 F. App'x 699, 705 (Fed. Cir. 2010). (*See also* ECF No. 203 at 21:1-2.)

1   that the '608 patent re-used as Figure 2 (after stripping the word "Paladin") to

2   describe the patent's purported "invention." (Loesch Decl. ¶ 10 (comparing 2004

3   Paladin Article Figure 1 with '608 patent Figure 2); *see also* ECF No. 161-2 ¶ 5, Ex.

4   C at 13-18.)

5       Also found in the 2004 Paladin prior art is Figure 3 of the '608 patent, which

6   is an image from EDSA's *prior art* brochure explaining "PALADIN® Real-Time

7   Health Monitoring & Control," (Loesch Decl. ¶ 11 (comparing 2004 EDSA brochure

8   image with '608 patent Figure 2); *see also* ECF No. 161-2 ¶ 6, Ex. D at 25.) *Plaintiff*

9   also chose to use this figure to describe the alleged invention in Plaintiff's Claim

10  Construction Demonstrative Slides (*id.* Ex. H) and Plaintiff's Opening Claim

11  Construction Brief (ECF No. 172 at 3).

12      Plaintiff surely knew of its own Paladin prior art before filing this lawsuit.

13  ETAP disclosed Paladin as invalidating prior art in its December 19, 2016 invalidity

14  contentions, mentioning "Paladin" 103 times in the cover document, identifying a

15  number of Paladin prior art articles, and listing "All versions of EDSA and

16  EDSA/General Atomics Paladin® software" and "All publications related thereto"

17  as invalidating prior art. (Loesch Decl. ¶ 2; Ex. A.) ETAP charted all 138 asserted

18  claims against the 2004 Paladin Article co-authored by Adib Nasle. (*Id.* Exs. B-E.)

19      Plaintiff has been on notice that EDSA's pre-patent Paladin software

20  embodied the asserted patents' claimed invention and invalidates the asserted

21  claims, since at least December 19, 2016. (*See id.* Exs. A-E.) Yet, it has provided

22  almost no discovery of these prior art installations and software.

23  **III.   PLAINTIFF'S INTERROGATORY RESPONSES**
24  **IGNORE ITS PRE-PATENT PALADIN SOFTWARE**

25      Plaintiff's response to Interrogatory No. 1 does not identify (much less

26  describe) the three publicly available FAA installations discussed in the Paladin

27

28

Exhibit B
Page 14

3

Article or the thirteen identified in the General Atomics article. Plaintiff's response to Interrogatory No. 3 does not identify any software release prior to 2010, even though the Paladin Article identifies the "EDSA/General Atomics Paladin® software package" (ECF No. 161-2 at 13), and the General Atomics article explains that the "Paladin software technology is certified in compliance with" various codes (Loesch Decl. Ex. G at 887). Plaintiff mentions no pre-2010 software even though Plaintiff used two figures from Paladin pre-2005 publications as embodiments of the patents. (Loesch Decl. ¶¶ 10-11; *see also* ECF No. 161-2 at 14, 25.) Thus, Paladin software that included the claimed technology was available at least as early as 2005. Still Plaintiff fails to identify any software before 2010 in response to Interrogatory No. 3.

Likewise, Plaintiff refused to provide a complete response to Interrogatory No. 4, claiming that "ETAP cannot make out a *prima facie* case of anticipation [and] it has not even attempted to do so." (ECF No. 203 at 22:9-10.) But, as explained above, on December 19, ETAP served invalidity contentions and claim charts stating that various prior art Paladin documents and systems invalidate or render obvious all 138 asserted claims of the 4 asserted patents. (Loesch Decl. Exs. A-E.) ETAP's invalidity contentions are sufficient (especially because evidence that Paladin software invalidates the asserted patents is uncontested) to shift the burden to Plaintiff to come forward with evidence to show it is entitled to claim priority to an earlier filing date. (*See* ECF No. 203 at 20:13-22.) And, again, this analysis is done on a claim-by-claim basis. *See, e.g., Clearwater Sys. Corp.*, 394 F. App'x at 705.

Plaintiff's assertion that Interrogatory No. 4 is too burdensome given the number of asserted claims is ill-founded, as it is Plaintiff who asserted these 138 claims, forcing ETAP to detail in over 800 pages why the Paladin Article invalidates or renders obvious all asserted claims. (*Id.* Exs. B-E; *see also* ECF No. 203 at 21:1-2.)

Plaintiff's response to Interrogatory No. 5 is similarly incomplete, because Plaintiff did not identify (much less detail) agreements with General Atomics and the FAA, or any other agreement or offer related to the claimed technology.

Plaintiff also fails to respond to Interrogatory No. 7. Evidence of Plaintiff's 2004-2006, pre-patent software as invalidating prior art is uncontested. ETAP has repeatedly asked for Plaintiff's source code and other pre-patent technical information. (ECF No. 203-2 at 112-113.) (This, unfortunately, likely will be subject to another motion to compel). As detailed in ETAP's invalidity contentions, Plaintiff's Paladin pre-patent software is identical or nearly identical to the asserted patents. (*See, e.g.,* Loesch Decl. Exs. A-E, ¶¶ 10-11.) Interrogatory No. 7, which remains unanswered, asks for what is not identical, if anything. If Plaintiff is going to contend that the asserted claims differ in some way from its own prior art fraudulently concealed from the Patent Office, then Plaintiff must disclose that position. It has not done so yet.

Finally, Plaintiff's arguments in the Joint Stipulation supposedly supporting withholding the requested information have no basis in fact or in law. For example, Plaintiff argues that Paladin software "was not released publicly until 2015" (ECF No. 203 at 22:15-16), which is contradicted by the Paladin Article and the General Atomics article and is irrelevant because secret commercialization by a patent applicant is prior art. *See Woodland Trust*, 148 F.3d at 1370-71; *In re Caveney*, 761 F.2d at 675. Thus, ETAP asks the Court to compel Plaintiff to provide complete response to ETAP's interrogatories, and specifically to include all information related to Plaintiff's pre-patent Paladin software.

Dated April 25, 2017        Respectfully submitted,

By: */s/Salumeh R. Loesch*
Klaus H. Hamm (Cal. Bar No. 224905)
klaus.hamm@klarquist.com

1

Salumeh Loesch (*pro hac vice*)

2

salumeh.loesch@klarquist.com
John D. Vandenberg (*pro hac vice*)

3

john.vandenberg@klarquist.com
Garth A. Winn (*pro hac vice*)

4

garth.winn@klarquist.com
KLARQUIST SPARKMAN, LLP

5

121 S.W. Salmon Street, Suite 1600

6

Portland, OR 97204

7

Telephone: 503-595-5300

8

David W. Kesselman (Cal. Bar No. 203838)

9

dkesselman@kbslaw.com
Trevor V. Stockinger (Cal. Bar No. 226359)

10

tstockinger@kbslaw.com
KESSELMAN BRANTLY STOCKINGER LLP

11

1230 Rosecrans Avenue, Suite 690

12

Manhattan Beach, CA 90266
Telephone: 310-307-4555

13

14

Counsel for Defendant

15

OPERATION TECHNOLOGY, INC.

16

17

18

19

20

21

22

23

24

25

26

27

28

PROOF OF SERVICE

I am employed in the County of Multnomah, State of Oregon. I am over the age of 18 and not a party to the within action. My business address is 121 SW Salmon Street, Suite 1600, Portland, Oregon 97204.

On April 25, 2017, I served the foregoing document(s) described as:

**(1) ETAP'S L.R. 37-2.3 SUPPLEMENTAL MEMORANDUM RE JOINT STIPULATION REGARDING ETAP'S MOTION TO COMPEL PLAINTIFF TO RESPOND TO ETAP'S FIRST SET OF INTERROGATORIES (NOS. 1-7); and**

**(2) DECLARATION OF SALUMEH LOESCH IN SUPPORT OF ETAP'S L.R. 37-2.3 SUPPLEMENTAL MEMORANDUM RE JOINT STIPULATION REGARDING ETAP'S MOTION TO COMPEL PLAINTIFF TO RESPOND TO ETAP'S FIRST SET OF INTERROGATORIES (NOS. 1-7), WITH EXHIBITS A-H.**

on the interested parties to this action as follows:

Robert F. Ruyak
Richard Ripley
Arthur Farrell
Amadou Kilkenny Diaw
Jacqueline M. Lee
RUYAK CHERIAN LLP
1776 Eye Street NW, Suite 750
Washington, DC 20006
(202) 838-1560
robertr@ruyakcherian.com
rickr@ruyakcherian.com
tedf@ruyakcherian.com
amadoukd@ruyakcherian.com
jacquelinel@ruyakcherian.com

| | |
|---|---|
| Korula Cherian | Don F Livornese |
| RUYAKCHERIAN LLP | RuyakCherian LLP |
| 1936 University Avenue | 222 North Sepulveda Boulevard Suite 2000 |
| Suite 350 | El Segundo, CA 90245 |

Berkeley, CA 94704                310-586-7689
(510) 944-0190                    donl@ruyakcherian.com
sunnyc@ruyakcherian.com

Attorneys for Plaintiff POWER ANALYTICS CORPORATION

Michael J Sacksteder            Joseph Stephen Belichick
Adam Michael Lewin              Fenwick and West LLP
Fenwick and West LLP            801 California Street
555 California Street, 12th Floor   Mountain View, CA 94041
San Francisco, CA 94104         650-988-8500
415.875-2434                    jbelichick@fenwick.com
alewin@fenwick.com
msacksteder@fenwick.com

Attorneys for Defendant OSIsoft, LLC

Benjamin J Bradford            Joshua M Segal
Michael G Babbitt              Lee K Van Voorhis
Reginald J Hill                Jenner and Block LLP
Jenner and Block LLP           1099 New York Avenue NW Suite 900
353 North Clark Street         Washington, DC 20001
Chicago, IL 60611              202-639-6089
312-840-7224                   jsegal@jenner.com
bbradford@jenner.com           lvanvoorhis@jenner.com
mbabbitt@jenner.com
rhill@jenner.com

Kirsten Hicks Spira
Michael P McNamara
Jenner and Block LLP
633 West Fifth Street Suite 3600
Los Angeles, CA 90071
213-239-5100
KSpira@jenner.com
mmcnamara@jenner.com

Attorneys for Defendant Schneider Electric USA Inc.

☒    **BY COURT'S CM/ECF SYSTEM**: Pursuant to the Local Rule, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which sent notification of that filing to the registered CM/ECF users in this action to be served by the CM/ECF System.

☐    **BY ELECTRONIC MAIL:** I caused such documents to be transmitted via electronic mail to the offices of the addressee(s) at the listed electronic mail address(es).

☐    **BY U.S. MAIL**: I deposited such envelope in the mail at Portland, Oregon. The envelopes were mailed with postage thereon fully prepaid.

☒    Federal: I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the offices of Klarquist Sparkman, LLP and Salumeh Loesch, at whose direction the service was made.

Marla Beier
Print Name

*/s/Marla Beier*
Signature

# EXHIBIT C

Exhibit C
Page 21

David W. Kesselman (Cal. Bar No. 203838)
dkesselman@kbslaw.com
KESSELMAN BRANTLY STOCKINGER LLP
1230 Rosecrans Avenue, Suite 690
Manhattan Beach, CA 90266
Telephone: 310-307-4555

Counsel for Defendant
OPERATION TECHNOLOGY, INC.

[Additional Counsel Listed on Signature Pages]

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION

| | |
|---|---|
| POWER ANALYTICS CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>OPERATION TECHNOLOGY, INC., d/b/a ETAP, OSISOFT LLC, and SCHNEIDER ELECTRIC USA, INC.,<br><br>Defendants. | Case No. 8:16-cv-01955-JAK (FFMx)<br><br>**DISCOVERY MATTER**<br>**Before Hon. Frederick F. Mumm**<br><br>**DECLARATION OF SALUMEH LOESCH IN SUPPORT OF ETAP'S L.R. 37-2.3 SUPPLEMENTAL MEMORANDUM RE JOINT STIPULATION REGARDING ETAP'S MOTION TO COMPEL PLAINTIFF TO RESPOND TO ETAP'S FIRST SET OF INTERROGATORIES (NOS. 1-7)**<br><br>Date:　　　May 9, 2017<br>Time:　　　10:00 a.m.<br>Courtroom: 580, 5th Floor<br>Before:　　Hon. Frederick F. Mumm<br><br>Discovery Cut-off:　September 5, 2017<br>Pretrial Conference:　April 2, 2018<br>Trial Date:　April 17, 2018 |

Exhibit C
Page 22

I, Salumeh R. Loesch, declare:

1.     I am an attorney at the law firm of Klarquist Sparkman, LLP, and counsel for Operation Technology, Inc. ("ETAP"), the Defendant in this matter. I provide this declaration in support of the ETAP'S L.R. 37-2.3 Supplemental Memorandum Re Joint Stipulation Regarding ETAP's Motion To Compel Plaintiff To Respond To ETAP's First Set Of Interrogatories (Nos. 1-7). I have personal knowledge of the facts set forth below, and if called as a witness, could and would testify competently to such facts under oath.

2.     Attached as Exhibit A is a true and correct copy of Defendants ETAP's and Schneider Electric USA's Preliminary Invalidity Contentions, served on Plaintiff on December 19, 2016.  A search for "Paladin" in this cover document to the Invalidity Contentions results in the word Paladin mentioned 103 times on the following pages:  48, 52, 53, 81, 82, 84, 85, 86, 90, 91, 93, 94, 97, 98, 100, 101, 104, 105, 108, 109, 112, 113, 116, 117, 118, 121, 123, 124, 126, 127, 128, 130, 136, 139, 140, 143, 144, 146, 150, 152, 159, 160, 163, 165, 166, 167, 171, 172, 173, 174, 177, 179, 180, 184, 207, 226.  Also in this cover document, Defendants identify the following Paladin articles:

| Paladin Prior Art Documents Identified in Defendants' Preliminary Invalidity Contentions | Page Nos. In Defs.' Preliminary Invalidity Contentions |
| --- | --- |
| **COMING SOON: Paladin Live Real- Time Power Analytics Platform; Wayback Machine**; EDSA; 2006/04/09; ETAP-PA_00005821 | 48, 101, 139, 166, 174, |

Exhibit C
Page 23

1

| Paladin Prior Art Documents Identified in Defendants' Preliminary Invalidity Contentions | Page Nos. In Defs.' Preliminary Invalidity Contentions |
|---|---|
| **Paladin Monitoring and Predictive Software For Electric Power Distribution Systems**; R.J. Thome, M. Nevins, M. Reed, Adib Nasle, James Firestine; 2004; ETAPPA_593 -ETAPPA_00006598; **Exhibit No. A2**; '608 v Monitoring and Predictive Software (Paladin) p. 84; **Exhibit No. B2**; '808 v Monitoring and Predictive Software (Paladin) p. 84; **Exhibit No. C2**; '990 v Monitoring and Predictive Software (Paladin) p. 85; **Exhibit D2**; '395 v Monitoring and Predictive Software (Paladin) p. 86 | 48, 52, 81-82, 84, 85, 86, 91, 93, 98, 100, 105, 108, 109, 113, 117, 118, 121, 123, 127, 128, 130, 140, 144, 146, 152, 163, 167, 171, 173, 179, 180, 207, 226 |
| **Paladin represents a new technological achievement that will forever change how electric power systems are designed, controlled and maintained**; Wayback Machine; EDSA; 2004/03/06; ETAPPA_00006592 | 52, 93, 101, 123-124, 139, 146, 166, 173, 180, |
| **Paladin DesignBase [sic, p. 52] Solutions Modules; Wayback Machine**; EDSA/ 2006/05/18; ETAPPA_00006590 -ETAPPA_00006591 | 52, 100, 160, 165, 172, |
| **EDSA Introduces Virtualization, Capacity Planning Capabilities for Paladin Live; EDSA**; EDSA; 2007/06/22; ETAPPA_00005993 -ETAPPA_00005994 | 53, 94, 166, 173, |
| **EDSA and EDSA/General Atomics Paladin® software Paladin Live software** ("Paladin") | 81, 226 |
| **Paladin® software Paladin Live software offered for sale and/or in public use no later than 2005 by EDSA and/or EDSA/General Atomics**; EDSA and/or EDSA/General Atomics | 90, 97, 104, 108, 112, 116, 121, 126, 136, 143, 150, 159, 162, 169, 177, 184, 226, |
| **Power Analytics: Now You Know EDSA Introduces Virtualization, Capacity Planning Capabilities for Paladin Live**; EDSA; EDSA | 100-101 |

Finally, Defendants identify "All versions of EDSA and EDSA/General Atomics Paladin® software" on pages 81 and 226 of Defendants' preliminary invalidity contentions of Exhibit A.

Exhibit C
Page 24

2

3.      Attached as Exhibit B is a true and correct copy of Exhibit A2 to Defendants ETAP's and Schneider Electric USA's Preliminary Invalidity Contentions, titled '608 v. "Paladin® Monitoring and Predictive Software for Electric Power Distribution Systems," served on Plaintiff on December 19, 2016.

4.      Attached as Exhibit C is a true and correct copy of Exhibit B2 to Defendants ETAP's and Schneider Electric USA's Preliminary Invalidity Contentions, titled '808 v. "Paladin® Monitoring and Predictive Software for Electric Power Distribution Systems," served on Plaintiff on December 19, 2016.

5.      Attached as Exhibit D is a true and correct copy of Exhibit C2 to Defendants ETAP's And Schneider Electric USA's Preliminary Invalidity Contentions, titled '990 v. "Paladin® Monitoring and Predictive Software for Electric Power Distribution Systems," served on Plaintiff on December 19, 2016.

6.      Attached as Exhibit E is a true and correct copy of Exhibit D2 to Defendants ETAP's And Schneider Electric USA's Preliminary Invalidity Contentions, titled '395 v. "Paladin® Monitoring and Predictive Software for Electric Power Distribution Systems," served on Plaintiff on December 19, 2016.

7.      Attached as Exhibit F is a true and correct copy of the LinkedIn profile of Adib Nasle, found at https://www.linkedin.com/in/adibnasle/.  According to the LinkedIn profile, Mr. Nasle was the Co-Founder, President and CSO at Power Analytics Corporation from January 2003 to January 2010.

8.      Attached as Exhibit G is a true and correct copy of a General Atomics article, pulled from the Wayback Machine, June 2, 2005.

9.      Attached as Exhibit H is a true and correct copy of Slide 32 of Plaintiff's Claim Construction Demonstrative Slides, as received by ETAP on April 4, 2017.

10.     The article "Paladin® Monitoring and Predictive Software for Electric Power Distribution Systems," by R.J. Thome, M. Nevins, M. Reed (General Atomics), Adib Nasle (EDSA), and James Firestine (FAA), published before

Exhibit C
Page 25

3

November 9, 2004 ("Paladin Article"), is Exhibit C of ECF No. 161-2 at pages 13-18.  Figure 1 in the 2004 Paladin Article is nearly identical to Figure 2 of the '608 patent, as shown below:



Fig.1  Illustration of the process employed by Paladin in determining the health of the system



'608, Fig. 2

11.    The brochure titled "EDSA® Professional Power System Design and Simulation for CATIA® V5, is Exhibit D to ECF No. 161-2 at pages 20-27.  The drawing on page 25 of ECF No. 161-2, titled "Basic PALADIN Architecture" is nearly identical to Figure 3 of the '608 patent, as shown below:



Basic PALADIN Architecture



'608, Fig. 3

Exhibit C
Page 26

4

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed April 25, 2017 in San Francisco, California.


/s/ Salumeh R. Loesch
Salumeh R. Loesch

Exhibit C
Page 27

5

# EXHIBIT F

Exhibit C
Page 28

Exhibit F
Page 880

# Adib Nasle

Co-Founder at XENDEE | Cloud Computing for Microgrids

## Summary

I have overall responsibility for business operations at my second startup XENDEE.  We are developing the industry's first cloud computing platform specifically built to help address the end-to-end needs of microgrid planners and developers.

I also teach the power system simulation course at UC San Diego via the Extension's program, and hold 17 patents in the field of electrical power system analysis.   I have additional patents pending for internet business methods, and cloud computing.

## Experience

**Co-Founder and CEO**

January 2012  -  Present

XENDEE is empowering the adoption of distributed energy resources and microgrid technology.  Through our collaboration with EPRI we are building next-generation solutions that provide clear engineering and business answers for Microgrid Developers and Investors.

**Steering Committee Member at The Aspen Institute**

June 2009  -  Present

The Aspen Institute's Socrates Society is a by invitation only forum for emerging leaders (approximately ages 28-45) from various professions to convene and explore contemporary issues through expert-moderated dialogue. Socrates also provides the opportunity for participants to enter into a diverse professional network, and into the broader range of the Aspen Institute's programs.

**Instructor CSE-41228 at University of California, San Diego**

April 2016  -  Present

I teach CSE-41228 as my time permits.  This course is focused on developing the core skills necessary to become fluent with software assisted modeling and analysis of Microgrids and complex unbalanced, multi-phase utility distribution systems.

Students learn how to apply modern simulation technologies to perform power flow analysis, Quasi-Static Time-Series (QSTS) simulations, short circuit analysis (classical and ANSI C 37/IEEE Red book methods), and other analysis including Arc Flash Hazard per NFPA 70E and IEEE 1584 standards. Students will also learn how to model and emulate smart controls such as transformer Load Tap Changers, and Line Voltage Regulators.

Exhibit C
Page 29

**Board of Trustees Finance Committee at La Jolla Country Day School**

June 2011  -  June 2013 (2 years)

  "Scientia Pacifica" (peace through knowledge).

**Executive Director at Pepperdine University**

January 2011  -  January 2012 (1 year)

  Lead and managed the administration of the world renowned Executive MBA and the Presidents and Key Executives MBA programs at the graduate school of business and management.

  - Captured significant savings, and instituted the first digital content distribution strategy for an EMBA program.

  - Established the product strategy, marketing and messaging for the Executive MBA degree programs.

  - Drove organic growth through novel alumni outreach and engagement initiatives that increased recruitment while lowering the total cost of acquisition for qualified MBA candidates.

  - Created the partnership and marketing strategies that influenced the executive MBA industry and further strengthened the school's reputation.

**Co-Founder, President and CSO at Power Analytics Corporation**

January 2003  -  January 2010 (7 years)

  Enterprise power system engineering data analytics software for predictive energy management.

  I was president and co-founder from 2003-2008 and moved to the role of Chief Strategy Officer for two years after private equity acquisition.

  - Negotiated and closed Series A VC financing.

  - Negotiated and closed over $24M in sales within 15 months of VC financing round.

  - Existed the business 20 months later through a private equity buyout that returned 13x in shareholder value.

  - Compellingly told the EDSA story and made all key presentations communicating product and technology value propositions to investors and clients, including speaking as the face of the business at national and international forums and conferences.

  - Full leadership authority of technology, engineering, software development, strategy, quality assurance, and global sales and marketing activities. Managed over 20 global sales offices.

Exhibit C
Page 30

Exhibit F
Page 882

Page 2

- Developed and managed strategic partnerships and OEM relationships with governments and global 500 companies.

---

## Education

**Pepperdine University, The George L. Graziadio School of Business and Management**
MBA, Business Administration and Management, General, 2009
**Stanford University Graduate School of Business**
FANFE, Finance and Accounting, 2008
**Stanford University Graduate School of Business**
SDF, Corporate Governance, 2008
**Michigan State University**
BA, College of Communication Arts & Sciences, Public Relations, Advertising, and Applied Communication, 1992
**Activities and Societies:** Member: American Advertising Federation

---

Exhibit C
Page 31

Exhibit F   Page 3
Page 883

# Adib Nasle

Co-Founder at XENDEE | Cloud Computing for Microgrids

---



Contact Adib on LinkedIn

Exhibit C
Page 32

# EXHIBIT G

Exhibit C
Page 33



FAQs | Contact Us | Site Map    Search

**Operating Groups**

- Advanced Technologies
- Electromagnetic Systems
- Paladin



**An Intelligent Predictive Control System for Electrical Power Systems**

Paladin®, a joint effort between General Atomics and EDSA Micro Corporation, was initially developed under contract to the US Department of Defense to provide an intelligent umbrella of safety over any electrical distribution and transmission system responsible for powering mission-critical facilities and operations.

Paladin provides intelligent analytical filters that allow large sets of electrical power system sensory information to be summarized into an easy-to-comprehend display designed to help managers, supervisors, and operators understand the current health of their power system.

**TECHNOLOGY OVERVIEW**

An intelligent electrical control and health monitoring system must be able to filter, analyze, and interpret the impact and relevance of actual sensory data. An analysis of the data must be conducted in order to determine significance of deviations and recommend reconfiguration options in order to prevent power failure. In order for such a system to be valid, a virtual model and physical model must be kept synchronized automatically and the predicted values must be reported in very rapid time scales.

The core infrastructure of such a system is based on the implementation of fast-solving, sophisti-cated simulation and analytical technologies that act as analytical filters. EDSA has already devel-oped highly optimized, fast-solving simulation and analytical engines. This requirement was initially driven for simulation of US Naval aircraft carriers under various operational scenarios. This requirement drives the Paladin technology to be scalable for implementation in complex facilities, cities, regions, or states.

This same technology infrastructure that provides the analytical filters can be used to make manual configuration changes to a power system in a "virtual" environment – giving a high level of confidence to operators prior to making actual changes to their system. The technology can be further extended such that the virtual model can be used to rapidly validate recommended power distribution reconfiguration solutions, selecting the optimum solution, and based on these results take automatic control actions to prevent power system failure at critical nodes.

Paladin contains a hyper-accurate logical model of the physical power distribution system that is always synchronized and calibrated to the actual power system. As the configuration and topol-ogy of the power system change (switches open or close, loads come on or turn off), so does the logical model.

In the background, Paladin continuously conducts a detailed analysis of the power system based on its actual, current topology. Paladin compares its predicted values (from the logical model) against the real-time sensor readings, and then looks for unexpected deviations, which are clear indicators of real health problems. Paladin allows the power system to become a dynamic system that can accurately communicate its health concerns and direct operators to the source of its health problem.

This approach provides a robust perspective on the actual health of the system while also ensuring that alarming is no longer based on "best-guess" threshold values that may lead to false or missed alarms. Rather, health condition and alarms are based on accurate, simulation-based predicted values that automatically update from the network's changing topology.



Paladin also introduces a Parent-Child logical relationship between processes and equipment. Using this approach, Paladin intelligently directs attention for repair of the primary failure and also notifies and displays that all processes or equip-ment dependent upon the failed equipment are in alarm condition. Operators are no longer swamped with hundreds of simultaneous alarms, forcing them to go through pages of reports (during a high-stress situation) to find the real source of the problem.

ETAP-PA_00037313

With Paladin deployed, mission-critical facility owners and operators can have an easy and intuitive means of understanding the health of their electrical distribution system and are now empowered to make prompt, accurate decisions on the operation and health of their electrical system.

- Templates for each industry and domain are provided "off the shelf" in order to expedite deployment and provide a baseline for modifications to meet each client's potential customization needs with minimum effort.
- Technical clients have access to a full set of diagnostic and troubleshooting tools and can drill down into levels of detail with direct access to engineering-level interfaces, one-line diagrams, and equipment-specific screens coupled with robust charting, trending, and statistical data.

## QUALITY ASSURANCE

Paladin software technology is certified in compliance with:

- ISO 9001
- 10CFR 50 Appendix B
- 10CFR 21
- Mil Spec level CMM3
- ASME NQA-2a-1990 part 2.7

## IMPLEMENTATION

The United States Federal Aviation Administration has commissioned the deployment of the Paladin system throughout all of its most mission-critical sites – the Air Route Traffic Control Centers (ARTCC).

The Minneapolis ARTCC (MZP), responsible for over 300,000 square miles of airspace, was selected as the first site to benefit from Paladin technology. Paladin was successfully deployed in November 2003 and is fully operational at MZP. Denver ARTCC and FAA Oklahoma Technical Center are also on-line now, with 10 additional sites (total of 13) coming on-line in 2004 and the remainder in 2005.

Paladin is applicable to many other domains including the following:

- Nuclear power utilities
- Shipboard power systems
- Mission-critical facilities (embassies, the Pentagon, government sites)
- Data centers
- Telecommunication and wireless infrastructure nodes
- Hospitals
- Financial institutions
- Petrochemical, oil and gas
- Pharmaceutical
- Semiconductor and manufacturing

## ABOUT EDSA MICRO CORPORATION

EDSA (http://www.edsa.com) is a leading developer of advanced electrical power system analysis and simulation technologies. The company's high-performance software products have become indispensable tools for professional engineers in demanding fields such as aerospace, air traffic control, nuclear power generation, utilities, manufacturing, off-shore oil, oil and gas, and process and power industries.

EDSA is world-recognized in the electrical power domain. It has been the exclusive electrical power system analysis and simulation solution for the most demanding and visible mission-critical programs – some of which include:

- DD(X)
- CVN-76, CVN-77 and CVN-X aircraft carrier programs
- Seawolf and Virginia Class submarines
- FAA National Air Space facilities (ARTCC, TRACON, AFSS)

**For more information, contact:**
Meera Venkatesh, Project Manager
meera.venkatesh@ga.com

back to top

©2004 General Atomics All Rights Reserved

Exhibit C
Page 35
http://web.archive.org/web/20050602080604/http://www.ga.com/atg/paladin.php

Exhibit G
Page 887

2/3/2017
ETAP-PA_00037314

# EXHIBIT H

Exhibit C
Page 36



## "Real-time" & "predicted data" – Support for Plaintiff's Proposed Construction

- Intrinsic evidence – the specification
- Figure 3 of the '608 Patent shows the comparison between "real-time" (current) data collected from the sensors at facility 102 and "predicted" (calculated) data from virtual facility model 206 on the right.



# EXHIBIT D

# Klarquist

February 28, 2017

JOHN D. VANDENBERG
Attorney
john.vandenberg@klarquist.com

Amadou Kilkenny Diaw
amadoukd@ruyakcherian.com
Ruyak Cherian LLP
1776 Eye St. NW, Suite 750
Washington, DC, 20006

Re:   *Power Analytics Corp. v. Operation Technology, Inc. dba ETAP et al.*
C.D. Cal. Case No. 8:16-cv-01955-JAK (FFMx)

Dear Amadou,

We write pursuant to L.R. 37-1 to request a conference on the below discovery dispute. We can be available to meet and confer on this subject on 24 hours notice any day between today and the deadline of March 10. Please let us know Plaintiff's counsel's availability.

As briefly discussed in person on Friday, February 24, ETAP asks Power Analytics to promptly produce all responsive documents and things regarding Paladin (including Paladin Live) from the period prior to July 20, 2007. More specifically, we ask Power Analytics to promptly produce all documents and things responsive to Production Request Nos. 7-8, 11-15, 20-21, 25, 61, and 203-08 (copied below). This request and letter is restricted to materials referring or related to Paladin (including Paladin Live) dated or related to the period prior to July 20, 2007. We shall address other issues with Plaintiff's responses to these and other requests separately.

ETAP shall move for an order compelling Plaintiff to promptly produce all materials encompassed by Production Request nos. 7-8, 11-15, 20-21, 25, 61, and 203-08 that relate or refer to Paladin (including Paladin Live), including its source code, technical documentation, sales and marketing information, contracts with General Atomics and/or the FAA, and its uses anywhere in the U.S., prior to July 20, 2007. And it shall move for an order awarding ETAP its fees in connection with this motion in view of Power Analytics's failure to produce these materials already.

**Klarquist Sparkman, LLP** Intellectual Property Law
One World Trade Center • 121 SW Salmon Street, Suite 1600 • Portland, OR 97204 U.S.A.
www.klarquist.com  P: 503.595.5300  F: 503.595.5301

Exhibit D
Page 39

# Klarquist

Amadou Kilkenny Diaw
February 28, 2017
Page 2

<u>Clear Relevance Of This Paladin Information</u>: All requested materials regarding Paladin dated or related to the period prior to July 20, 2007, are highly relevant at least to prior art invalidity of the asserted patent claims, unenforceability of the asserted claims due to inequitable conduct, fraud on the Patent Office, inventorship, enablement, and prior art restrictions on the scope of equivalents.

The earliest possible "critical date" for the four asserted patents is February 14, 2005 (one year before the earliest provisional application). Therefore, all public uses and on sale activity in the U.S., and all publications anywhere, before that date constitute prior art under 35 U.S.C. § 102(b). Further, ETAP's position is that Power Analytics will be unable to show that any asserted claim is entitled to be backdated before its actual filing date. Therefore, ETAP asserts that the latest "critical date" of the four asserted patents is July 20, 2006 (one year before the filing date of the '608 patent). Also, activities by another, not the named inventive entity, before the actual filing date, may constitute prior art, or evidence inventorship defects, making all Paladin activities before July 20, 2007, relevant.

Much of the subject matter described in the patents in suit was described by Plaintiff (under its former name EDSA) and/or its development partner, General Atomics, in public documents, prior to the earliest possible critical date of these patents. With Defendants' motion for partial summary judgment filed February 28, were submitted the following four public Paladin references, all from before the earliest possible critical date, as examples of this:

1. ECF No. 161-2, Exh. A.  <u>General Atomics's Web Page archived on February 11, 2005, entitled "An Intelligent Predictive Control System for Electrical Power Systems"</u> (Exh. A, Declaration of Arie Pellikaan ("Pellikaan Decl.")).

2. ECF No. 161-2, Exh. B. <u>Plaintiff EDSA's Web Page Archived on February 4, 2005, entitled "Advanced First-of-a-Kind Technologies from EDSA and General Atomics"</u> (Exh. B, Pellikaan Decl.).

3. ECF No. 161-2, Exh. C. <u>2004 Paper of EDSA, General Atomics, and U.S. FAA, entitled "Paladin® Monitoring and Predictive Software for Electric Power Distribution Systems"</u> (Exh. C, Pellikaan Decl.).

**k**
**Klarquist Sparkman, LLP** Intellectual Property Law
One World Trade Center • 121 SW Salmon Street, Suite 1600 • Portland, OR 97204 U.S.A.
www.klarquist.com  P: 503.595.5300  F: 503.595.5301

# Klarquist

4. ECF No. 161-2, Exh. D. <u>2004 Brochure, entitled "EDSA Professional Power System Design and Simulation for CATIA V5"</u> (Exh. D, Pellikaan Decl.).

These materials describe and depict much of the subject matter presented in the asserted patents as part of the alleged invention, and contradict at least some of what the patent applicants told the Patent Office about the prior art. Below, for example, are two figures presented in the patents as describing embodiments of the alleged invention, next to essentially the same drawings in the 2004 prior art paper and brochure.

<u>2004 Paladin References</u>                    <u>Patents-in-Suit</u>



(See Exh. C at 2 and Fig. 2 of each patent.)

**Klarquist Sparkman, LLP** Intellectual Property Law
One World Trade Center • 121 SW Salmon Street, Suite 1600 • Portland, OR 97204 U.S.A.
www.klarquist.com  P: 503.595.5300  F: 503.595.5301

# Klarquist

Amadou Kilkenny Diaw
February 28, 2017
Page 4

2004 Paladin References

Patents-in-Suit





(See ECF No. 161-2, Exh. D at 6 and Fig. 3 of each patent.)

These four exhibits, all dating from before the earliest possible critical date of the patents, describe prior art Paladin deployments as using the same ideas, functions and actions the patents describe as embodiments of their alleged invention. For example, Plaintiff and General Atomics, in writings made prior to February 14, 2005, described deployments of Paladin software at FAA site(s) in the U.S. prior to February 14, 2005, as including the ideas, actions and functions of:

| 1A. Real-Time Data Acquisition: Collects real-time data from sensors monitoring an electrical system, and from a data acquisition (SCADA) system. | ECF No. 161-2, Exh. A at 7:45-46 ("Paladin compares its predicted values (from the logical model) against the real-time sensor readings"). |
|---|---|
| | ECF No. 161-2, Exh. C at 13:40-44 (left-hand col. ("L") ("The EDSA/General Atomics Paladin® software package embeds the EDSA simulation engines and logical electrical model, into a real time Supervisory Control and Data Acquisition (SCADA) environment. Paladin collects data from sensors that measure system performance at critical points …."), 14:25-28 (L) ("The real-time data from system sensors placed strategically throughout the distribution system are brought into the SCADA system."), 14:43-45 (L) ("Paladin |

**Klarquist Sparkman, LLP** Intellectual Property Law
One World Trade Center • 121 SW Salmon Street, Suite 1600 • Portland, OR 97204 U.S.A.
www.klarquist.com P: 503.595.5300 F: 503.595.5301

# Klarquist

| | |
|---|---|
| | Supervisory Control And Data Acquisition (SCADA)"). |
| | ECF No. 161-2, Exh. D at 25:15-17 (figure) ("Sensors and SCADA," "Sensor Voltage/Current, etc."), 25:23-24 ("real-time sensor readings"), 25:51 ("large sets of electrical power system sensory information"). |
| 1B. <u>Model and Modeling Engine</u>: Uses a virtual (logical) model of the physical monitored system, for running simulations and predicting values regarding system performance. | ECF No. 161-2, Exh. A at 7:24-25 ("In order for such a system to be valid, a virtual model and physical model must be kept synchronized automatically and the predicted values must be reported in very rapid time scales."), 7:28-29 ("EDSA has already developed highly optimized, fast-solving simulation and analytical engines."), 7:45-46 ("Paladin compares its predicted values (from the logical model) against the real-time sensor readings"), 7:54-55 ("health condition and alarms are based on accurate, simulation-based predicted values"). |
| | ECF No. 161-2, Exh. C at 14:29-34 (L) ("The electrical distribution system one-line diagram is modeled, in detail, with the EDSA design analysis and simulation software package that can perform real-time power flow, transient stability and harmonics analyses."), 14:40-42 (L) ("Paladin Logical Facility Electrical Distribution Model"), 14:1-2 (R) ("Paladin continuously runs simulations on the embedded logical model …."). |
| | ECF No. 161-2, Exh. D. at 25:10-11 ("Within Paladin resides a hyper-accurate logical model of the physical power distribution system"), 25:15-17 (figure) ("EDSA CAA Virtual Facility Model," |

**Klarquist Sparkman, LLP** Intellectual Property Law
One World Trade Center • 121 SW Salmon Street, Suite 1600 • Portland, OR 97204 U.S.A.
www.klarquist.com P: 503.595.5300  F: 503.595.5301

# Klarquist

Amadou Kilkenny Diaw
February 28, 2017
Page 6

| | |
|---|---|
| | "EDSA Simulation," "Predicted Voltages/Currents, etc."), 25:22-23 ("predicted values (from the logical model)"), 25:27-30 (figure) ("Hyper-Accurate Predictions," "Detailed Logical Model"). |
| 1C. <u>Simulation Engine</u>: Simulates and predicts aspects of the system's performance and health, sometimes in response to an operator's proposed change to the physical system. | ECF No. 161-2, Exh. A at 7:28-29 ("EDSA has already developed highly optimized, fast-solving simulation and analytical engines."); 7:33-36 ("This same technology infrastructure that provides the analytical filters can be used to make manual configuration changes to a power system in a virtual environment – giving a high level of confidence to operators prior to making actual changes to their system. The technology can be further extended such that the virtual model can be used to rapidly validate recommended power distribution reconfiguration solutions, ...."). <br><br> ECF No. 161-2, Exh. C at 14:40-41 (L) ("Paladin Simulation Engine, Outputs expected values based on facility configuration."), 14:1-2 (R) ("Paladin continuously runs simulations on the embedded logical model ...."). <br><br> ECF No. 161-2, Exh. D at 25:16 (figure) ("EDSA Simulation"), 25:19-22 ("Paladin is continuously conducting a detailed analysis of the power system based on its actual, current topology. Paladin compares its predicted values (from the logical model) ...."). |
| 1D. <u>Calibration and Synchronization</u>: Updates the virtual model by calibrating and synchronizing it in | ECF No. 161-2, Exh. A at 7:24-25 ("In order for such a system to be valid, a virtual model and physical model must be kept synchronized automatically"), 7:40-42 ("Paladin contains a |

**Klarquist Sparkman, LLP** Intellectual Property Law
One World Trade Center • 121 SW Salmon Street, Suite 1600 • Portland, OR 97204 U.S.A.
www.klarquist.com  P: 503.595.5300  F: 503.595.5301

# Klarquist

| | |
|---|---|
| response to the collected real-time data to reflect the actual physical system configuration, loads and load characteristics. | hyper-accurate logical model of the physical power distribution system that is always synchronized and calibrated to the actual power system. As the configuration and topology of the power system change (switches open or close, loads come on or turn off), so does the logical model."), 7:54-56 ("health condition and alarms are based on accurate, simulation-based predicted values that automatically update from the network's changing topology.").

ECF No. 161-2, Exh. C at 14:1-21 (R) ("Paladin continuously runs simulations on the embedded logical model and auto-synchronizes the model with the system status so that switch, breaker, and equipment on/off conditions are continuously monitored and the logical model is continuously updated to reflect the system configuration. .... Paladin includes an auto-calibration feature that automatically calibrates the logical model to the actual installed equipment load characteristics. This allows a 'normal' set of conditions to be defined in the event that the parameters used for the logical model are not 100% reflective of delivered and installed components."), 18:30-31 (L) ("reconfigure the system circuit models automatically as the system state changes").

ECF No. 161-2, Exh. D at 25:11-16 ("This model is always synchronized and calibrated to the actual power system. As the configuration and topology of the power system changes (switches open or close, loads come on or are turned off), so does that of the logical model."), 25:31-35 (figure) ("Automatic Calibration of Logical Model equipment normal performance settings to Actual |

Klarquist Sparkman, LLP  Intellectual Property Law
One World Trade Center • 121 SW Salmon Street, Suite 1600 • Portland, OR 97204 U.S.A.
www.klarquist.com  P: 503.595.5300  F: 503.595.5301

Exhibit D
Page 45

# Klarquist

| | |
|---|---|
| | equipment normal performance sensed." "Automatic and Continuous Synchronization of Logical Model status to actual Facility status.") |
| 1E. <u>Comparison Engine</u>: Compares real-time sensor data to predicted values from simulations using the virtual model to identify unexpected deviations. | ECF No. 161-2, Exh. A at 7:44-47 ("Paladin continuously conducts a detailed analysis of the power system based on its actual, current topology. Paladin compares its predicted values (from the logical model) against the real-time sensor readings, and then looks for unexpected deviations, which are clear indicators of real health problems.")<br><br>ECF No. 161-2, Exh. C at 14:39 (L) ("Paladin Comparison Engine. Compares SCADA output readings vs. Simulation output readings."), 14:21-23 (R) ("Paladin compares the sensor data from the physical system to the predicted data from the logical model."), 17:19-23 (R) ("It would allow the continuous monitoring of sensors and comparison to predicted state variables to allow the health of the electric distribution system components to be displayed."), 18:32-33 (L) ("compare the system status with analytical predictions in real time").<br><br>ECF No. 161-2, Exh. D at 25:17-19 (figure) ("Difference and Significance"), 25:21-26 ("Paladin compares its predicted values (from the logical model) against the real-time sensor readings, and then 'looks' for unexpected deviations …."). |
| 1F. <u>Decision Engine</u>: Evaluates the significance of a deviation between real-time sensor data and predicted | ECF No. 161-2, Exh. A at 7:44-48 ("Paladin continuously conducts a detailed analysis of the power system based on its actual, current topology. Paladin compares its predicted values (from the |

K Klarquist Sparkman, LLP  Intellectual Property Law
One World Trade Center • 121 SW Salmon Street, Suite 1600 • Portland, OR 97204 U.S.A.
www.klarquist.com  P: 503.595.5300  F: 503.595.5301

Exhibit D
Page 46

# Klarquist

| | |
|---|---|
| values, including comparing that deviation to threshold limits, classifying the level of deviation, and determining alarms and health/status indications based on such evaluation. | logical model) against the real-time sensor readings, and then looks for unexpected deviations, which are clear indicators of real health problems. Paladin allows the power system to become a dynamic system that can accurately communicate its health concerns and direct operators to the source of its health problem.") |
| | ECF No. 161-2, Exh. B at 10:61-63 ("With the ability to accurately predict expected system performance and behavior, alarming and health status indication moves to a new level of accuracy and robustness.") |
| | ECF No. 161-2, Exh. C at 14:37-38 (L) ("Paladin Decision Engine." Compares deviation and sets warning level and Health/Performance Status"), 14:26-31 (R) ("The differences between actual sensor and simulation based predicted values are compared to threshold limits. The deviation level is classified as High ('red'), Marginal ('yellow'), or Low ('green') ...."), 17:23 (R) – 18:3 (L) ("Variations from the norm would lead to calculated differences which would automatically trigger alarms to call attention to an impending maintenance condition, or a failure."). |
| | ECF No. 161-2, Exh. D at 25:19-21 (figure) ("Differences and Significance", "Health Status Indicators"), 25:21-26 ("Paladin compares its predicted values (from the logical model) against the real-time sensor readings, and then 'looks' for unexpected deviations which are clear indicators of real health problems.") |

**Klarquist Sparkman, LLP** Intellectual Property Law
One World Trade Center • 121 SW Salmon Street, Suite 1600 • Portland, OR 97204 U.S.A.
www.klarquist.com  P: 503.595.5300  F: 503.595.5301

# Klarquist

Amadou Kilkenny Diaw
February 28, 2017
Page 10

| 1G. Human Machine Interface and Filtering: Displays and communicates to users alarms, filtered health indicators and forecasts about the system, including in response to operator selected hypothetical changes in system status, using a color scheme for visualization of the system's health and performance. | ECF No. 161-2, Exh. A at 7:13-17 ("Paladin provides intelligent analytical filters that allow large sets of electrical power system sensory information to be summarized into an easy-to-comprehend display designed to help managers, supervisors, and operators understand the current health of their power system."), 7:33-35 ("This same technology infrastructure that provides the analytical filters can be used to make manual configuration changes to a power system in a 'virtual' environment – giving a high level of confidence to operators prior to making actual changes to their system."), 7:54-56 ("health condition and alarms are based on accurate, simulation-based predicted values that automatically update from the network's changing topology.")<br><br>ECF No. 161-2, Exh. B at 10:40-41 ("Paladin solves these current limitations by providing intelligent, best-of-breed analytical filters which provide a means for large sets of electrical power system sensory information to be summarized into an easy to comprehend, visual 'heatmap' display for the end user."), 10:53-56 ("Paladin greatly streamlines system self status via a green/orange/red color scheme for easy visualization of the system health and performance, with indicators overlaid on top of already recognizable diagrams allowing for instantaneous understanding of the power system status to both technical and non-technical data consumers.").<br><br>ECF No. 161-2, Exh. C at 14:36 (L) ("Paladin HMI. Visually communicates decision engine |

**k** **Klarquist Sparkman, LLP** Intellectual Property Law
One World Trade Center • 121 SW Salmon Street, Suite 1600 • Portland, OR 97204 U.S.A.
www.klarquist.com P: 503.595.5300 F: 503.595.5301

Exhibit D
Page 48

# Klarquist

findings to user."), 14:41 (R) - 15:8 (L) ("The HMI provides displays of the system and its status at various levels of detail, calls attention to alarm conditions, and can be used to perform what if analyses to display the predicted system response to a hypothetical operator change in system status (e.g., open or close breakers, turn equipment on or off, etc.) before the action is implemented. The entire history of system states is also recorded so that an analysis of events leading to an alarm condition can be displayed. The net result is that health and performance indicators are overlaid on easily recognizable engineering diagrams to allow an immediate understanding of system status."), 16:23-39 (Figure 5, "Typical display of subsystem detailed status with comparison of actual and predicted values at a selected node. (screen courtesy of the FAA)."), 18:33 (L) – 18:5 (R) ("display status using alarm thresholds when the state changes from 'green' to 'orange' to 'red' conditions to alert human operators. System operational history is recorded continuously for display and further analysis.").

ECF No. 161-2, Exh. D at 25:30-40 (figure) ("Actual PALADIN screen courtesy of the United States Federal Aviation Administration"), 25:50-59 ("Paladin solves these current limitations by providing intelligent, best-of-breed analytical filters which provide a means for large sets of electrical power system sensory information to be summarized into an easy to comprehend, visual 'heatmap' display for the end user. Paladin acts as an on-board electrical power system expert - insulating the end user from the complexity of a power system database - and intelligently filtering

**k** **Klarquist Sparkman, LLP** Intellectual Property Law
One World Trade Center • 121 SW Salmon Street, Suite 1600 • Portland, OR 97204 U.S.A.
www.klarquist.com **P:** 503.595.5300 **F:** 503.595.5301

Exhibit D
Page 49

# Klarquist

Amadou Kilkenny Diaw
February 28, 2017
Page 12

| | |
|---|---|
| | power system sensory data; in real-time, into an easy visual presentation designed to help managers, owners and operators understand at a glance the current health of their power system(s). Paladin greatly streamlines system self status via a green/orange/red color scheme for easy visualization of the system health and performance, allowing for instantaneous understanding of the power system status to both technical and non-technical data consumers.") |
| 1H. <u>Thin-Client</u>: Provides users a thin-client architecture with browser-based interface. | ECF No. 161-2, Exh. B at 10:29-30 ("Secure Thin-Client Architecture: Dynamic and Secure Browser Based interface with global compatibility with all hardware platforms and Web Browsers.") |

Yet, Plaintiff did not disclose to the Patent Office that Paladin is prior art and did not disclose to the Patent Office these materials or other materials describing this Paladin prior art, and made affirmative statements to the Patent Office about the supposed state of current technology which these above materials prove to be false. These omissions and affirmative misstatements make all of Plaintiff's Paladin related documents and things, for the period before July 20, 2007, highly relevant.

In addition, Plaintiff's "Paladin Live" software appears to have been used by one or more EDSA customers no later than early 2006, if not mid-2005, and Plaintiff did not disclose that to the Patent Office either.

In view of the indisputably high relevance of this Paladin prior art to this action, Power Analytics has no reasonable basis for its failure to produce the materials requested in these requests.

Further, Plaintiff should have gathered and analyzed all of this requested material before filing this lawsuit. A pre-suit investigation in compliance with Rule 11 necessarily would have collected all available information on this Paladin prior art before proceeding to file this action, making that information at hand and

**K**  **Klarquist Sparkman, LLP** Intellectual Property Law
One World Trade Center • 121 SW Salmon Street, Suite 1600 • Portland, OR 97204 U.S.A.
www.klarquist.com P: 503.595.5300 F: 503.595.5301



Amadou Kilkenny Diaw
February 28, 2017
Page 13

available for production in this action last year. Also, any litigation funding firm that conducted due diligence on the case necessarily would have required all of these materials in order to investigate validity, inequitable conduct, fraud on the Patent Office, etc.

Finally, Plaintiff has provided no privilege log identifying any of these requested materials.

Accordingly, Plaintiff has no reasonable basis for withholding any of these requested materials.

## REQUEST FOR PRODUCTION NO. 7:

All Documents, Things and Electronically Stored Information known to, seen by, or read by any of the Asserted Patents Applicants, prior to their respective filing dates for the Asserted Patents concerning or relating to the subject matter of the Asserted Patents.

## REQUEST FOR PRODUCTION NO. 8:

All Documents, Things and Electronically Stored Information that reflect any consideration by any of the Asserted Patents Applicants, or anyone acting on any of their behalves, to disclose or not disclose any prior art that was not disclosed to a patent office or other governmental authority in connection with the Asserted Patents, Asserted Patents Applications, and/or Related Power Analytics Patents and Applications.

## REQUEST FOR PRODUCTION NO. 11:

All Documents, Things and Electronically Stored Information concerning or relating to the validity, invalidity, enforceability or unenforceability of the Asserted Patents.

## REQUEST FOR PRODUCTION NO. 12:

All Documents, Things and Electronically Stored Information concerning or relating to any use, publication, disclosure or display, or any sale or offer for sale of

Klarquist Sparkman, LLP Intellectual Property Law
One World Trade Center • 121 SW Salmon Street, Suite 1600 • Portland, OR 97204 U.S.A.
www.klarquist.com P: 503.595.5300 F: 503.595.5301

Exhibit D
Page 51



Amadou Kilkenny Diaw
February 28, 2017
Page 14

the subject matter claimed in the Asserted Patents which occurred on or before the respective filing dates for the Asserted Patents.

**REQUEST FOR PRODUCTION NO. 13:**

All Documents, Things and Electronically Stored Information concerning or relating to any of the following: the first presentation, first disclosure, first demonstration, first display, first sale, first offer for sale or first use of any alleged invention described in the Asserted Patents.

**REQUEST FOR PRODUCTION NO. 14:**

All Documents, Things and Electronically Stored Information concerning or relating to any software, application, macro, or other program code developed by or on behalf of Power Analytics prior to July 20, 2007, concerning or relating to in whole or in part to real time monitoring, modeling, simulation and visualization of events, and any other/or any software making use of any alleged invention described in the Asserted Patents.

**REQUEST FOR PRODUCTION NO. 15:**

All publications authored or co-authored by any Asserted Patents Applicant concerning or relating to the subject matter disclosed in the Asserted Patents.

**REQUEST FOR PRODUCTION NO. 20:**

All Documents, Things and Electronically Stored Information concerning or relating to attempts by Power Analytics or anyone else to commercialize the subject matter of the Asserted Patents.

**REQUEST FOR PRODUCTION NO. 25:**

All Documents, Things and Electronically Stored Information concerning or relating to any testing, development or research activity conducted in connection with any alleged invention described in the Asserted Patents, including, but not limited to, models, prototypes, specifications, schematics, test results, notes, laboratory notebooks, manuals, memoranda, correspondence or e-mail.

**Klarquist Sparkman, LLP** Intellectual Property Law
One World Trade Center • 121 SW Salmon Street, Suite 1600 • Portland, OR 97204 U.S.A.
www.klarquist.com P: 503.595.5300 F: 503.595.5301

Exhibit D
Page 52



**REQUEST FOR PRODUCTION NO. 61:**

All Documents, Things and Electronically Stored Information that show what features all versions of Paladin Gateway, Paladin Live, and Real Time Arc Flash had and when.

**REQUEST FOR PRODUCTION NO. 203:**

All Documents, Things, and Electronically Stored Information describing any aspect of the "Paladin" systems mentioned in the article "Paladin® Monitoring and Predictive Software for Electric Power Distribution Systems," (which lists R.J. Thome, M. Nevins, M. Reed, Adib Nasle and James Firestine as authors) including those "implemented at three [FAA] sites in the USA," as stated in Sec. 1 of the article.

**REQUEST FOR PRODUCTION NO. 204:**

All Documents, Things, and Electronically Stored Information describing the "auto-calibration feature that automatically calibrates the logical model to the actual installed equipment load characteristics," mentioned in Sec. 2 of the article "Paladin® Monitoring and Predictive Software for Electric Power Distribution Systems," (which lists R.J. Thome, M. Nevins, M. Reed, Adib Nasle and James Firestine as authors).

**REQUEST FOR PRODUCTION NO. 205:**

All agreements between any of EDSA Micro Corp., General Atomics, and the US FAA, regarding Paladin in whole or in part.

**REQUEST FOR PRODUCTION NO. 206:**

All Documents, Things, and Electronically Stored Information describing the use of "Paladin Live" "in live customer facilities," prior to April 9, 2006, mentioned on EDSA's April 9, 2006, archived Web page at http://web.archive.org/web/20060409123933/http://edsa.com/productsServices/paladinLive.html.

**Klarquist Sparkman, LLP** Intellectual Property Law
One World Trade Center • 121 SW Salmon Street, Suite 1600 • Portland, OR 97204 U.S.A.
www.klarquist.com P: 503.595.5300 F: 503.595.5301

Exhibit D
Page 53



Amadou Kilkenny Diaw
February 28, 2017
Page 16

**REQUEST FOR PRODUCTION NO. 207:**

All versions of "Paladin live: a sneak preview for EDSA users," including the version submitted with Copyright Registration No. TX0006355193.

**REQUEST FOR PRODUCTION NO. 208:**

All Documents, Things, and Electronically Stored Information dated before April 9, 2006, describing actual or planned features of any software or product referenced as "Paladin Live" or any internal code name for that software or product.

Sincerely yours,

KLARQUIST SPARKMAN, LLP

John D. Vandenberg

JDV:mlb
cc:  Trevor Stockinger (tstockinger@kbslaw.com)
     Benjamin J. Bradford (BBradford@jenner.com)
     Adam Lewin (alewin@fenwick.com)

**Klarquist Sparkman, LLP**  Intellectual Property Law
One World Trade Center • 121 SW Salmon Street, Suite 1600 • Portland, OR 97204 U.S.A.
www.klarquist.com  P: 503.595.5300  F: 503.595.5301

Exhibit D
Page 54

# EXHIBIT E

# Klarquist

March 15, 2017

SALUMEH R. LOESCH
Attorney
salumeh.loesch@klarquist.com

Amadou Kilkenny Diaw
Ted Farrell
Ruyak Cherian LLP
1776 Eye St. NW, Suite 750
Washington, DC, 20006
amadoukd@ruyakcherian.com
tedt@ruyakcherian.com

Re:     *Power Analytics Corporation v. Operation Technology, Inc. et al.*
        Civil Case No.: 8:16-cv-01955-JAK-FFM

Dear Amadou and Ted:

We are follow-up on our meet-and-confers from March 10 and 13, regarding ETAP's February 28 and March 3 Rule 37-1 letters and the production of financial information.

## ETAP's Feb. 28 Rule 37-1 Letter Re: Paladin Prior Art

During our meet-and-confer, ETAP again asked that Power Analytics produce its Paladin prior art documents.  This includes, but is not limited to, technical documents, sales information, source code, and executable code.  We asked that these documents be produced by no later than March 31, including any privilege log covering these documents.  On Monday, March 13, you said that Power Analytics will be producing all Paladin documents by March 31, unless they are subject to an NDA that Power Analytics has not been able to resolve.  To the extent that you will be continuing to withhold documents based on an NDA, you agreed that by March 31 Power Analytics would provide the names of the third parties with whom Power Analytics has an NDA.  And, you agreed that you would provide a privilege log related to these documents by no later than April 7, 2017. Finally, you said that you would provide us with additional information on your production of source code and other documents by today, March 15.

First, please confirm by tomorrow, **March 16, 2017**, that Power Analytics will: (1) produce all Paladin documents, including source code, executable code, technical documents, sales information, etc. by no later than March 31, 2017; (2) provide at least the names of the withheld NDA third party information by no later than March, 31, 2017; and (3) provide a privilege log related to these Paladin documents by no later than April 7, 2017.

---

**k** Klarquist Sparkman, LLP  Intellectual Property Law
One World Trade Center • 121 SW Salmon Street, Suite 1600 • Portland, OR 97204 U.S.A.
www.klarquist.com  P: 503.595.5300  F: 503.595.5301



Amadou Kilkenny Diaw
Ted Farrell
March 15, 2017
Page 2

Second, Power Analytics has not produce any of these purported NDAs, despite the NDAs being responsive to at least ETAP's Request for Production Nos. 12, 13, 20, 21, 29, 36, 37, 40, and 41. By tomorrow, **March 16, 2017**, please provide Power Analytics's basis for withholding these NDAs.

**ETAP's March 3 Rule 37-1 Letter Re:**
**<u>Power Analytics's RFP Responses and Document Production</u>**

Based on our meet-and-confer, I understand that Power Analytics will:

1. Withdraw its General Objection No. 1 to RFP Nos. 1-64, and No. 9 to RFP Nos. 65-208, with regard to at least documents related to Paladin;
2. Withdraw its General Objection Nos. 2 and 3 to RFP Nos. 1-64, and No. 10 to RFP Nos. 65-208, with regard to EDSA Micro Corporation, but will not withdraw the objection related to any Power Analytics parent company; and
3. Let ETAP know by today, March 15, 2017, whether Power Analytics will withdraw its General Objection No. 5 regarding related Power Analytics patents.

Please confirm by tomorrow, **March 16, 2017**, your position on the above general objections.

Second, based on our meet-and-confer, I understand that Power Analytics will:

1. Produce its executable code by no later than March 17, 2017;
2. Make its source code available for inspection once Power Analytics determines how to install it on a computer, and provide us with an update by today, March 15;
3. Produce additional documents this week; and
4. Complete its document production by no later than April 28, 2017.

Please confirm by tomorrow, **March 16, 2017**, that Power Analytics will indeed complete numbers 1-4 above during the above-identified time periods.

Also, please let us know when your source code will be available for inspection. As you know, this includes all prior art Paladin source code, as well as any additional source code Power Analytics claims embodies the claimed inventions.

**Klarquist Sparkman, LLP** Intellectual Property Law
One World Trade Center • 121 SW Salmon Street, Suite 1600 • Portland, OR 97204 U.S.A.
www.klarquist.com P: 503.595.5300 F: 503.595.5301

Exhibit E
Page 57



Amadou Kilkenny Diaw
Ted Farrell
March 15, 2017
Page 3

<u>Financial Information</u>:

I understand that Power Analytics will agree to exchange financial information, in the form of a spreadsheet exported from the parties' respective financial/accounting software, that includes at least the following information:

1. Customer name;
2. Sale date;
3. Accused software/service ;
4. Dollar amount; and
5. Location (limited to US sales)

ETAP is able to provide this information, once we receive confirmation from you that Power Analytics is able and willing to exchange this information.

**Rule 37.1 Meet-And-Confer**

To the extent there is any dispute or misunderstanding regarding any of the above, then ETAP will provide Power Analytics with a Joint Stipulation under Rule 37 related to those issues.  We are available to discuss any of these issues during tomorrow's meet-and-confer regarding ETAP and Power Analytics's March 6 Rule 37-1 letters.

Sincerely,

KLARQUIST SPARKMAN, LLP

Salumeh R. Loesch

SRL:lds

**Klarquist Sparkman, LLP**  Intellectual Property Law
One World Trade Center • 121 SW Salmon Street, Suite 1600 • Portland, OR 97204 U.S.A.
www.klarquist.com  P: 503.595.5300  F: 503.595.5301

Exhibit E
Page 58

# EXHIBIT F



Washington, DC 20006
Office: 202.838.1564
Mobile: 202.246.1376

Amadou Kilkenny Diaw
Partner

April 10, 2017

**VIA FEDERAL EXPRESS**

Salumeh R. Loesch
Klarquist Sparkman, LLP
One World Trade Center
121 SW Salmon Street, Suite 1600
Portland, OR 97204

**Re: Confidential Production of Power Analytics' Software and Software from Power Analytics' Files**

Dear Salumeh,

Enclosed please find discs containing the following Power Analytics' software, and software that was located in Power Analytics' files.

- EDSA Technical 2005 – Rev 1
- Paladin Live 5.4
- Design Base 6.0

Power Analytics is producing the software as CONFIDENTIAL under the protective order. Please handle the materials accordingly.

Regarding the production of Power Analytics' source code, Power Analytics is working to make source code for EDSA Technical Rev 1 and Rev 2 available for inspection pursuant to the agreed terms of the Stipulated Protective Order (D.I. 189-1) at our offices in Washington, DC by April 15, 2017. Power Analytics will continue to supplement its product as additional versions of its software and source code within its possession become available.

Sincerely,

Amadou Kilkenny Diaw

Enclosures

Exhibit F
Page 60

# EXHIBIT G

| From: | Amadou Kilkenny Diaw |
|---|---|
| To: | Salumeh R. Loesch |
| Cc: | Sunny Cherian; Don Livornese; Garth A. Winn; John D. Vandenberg; Sarah E. Jelsema; Linda D. Schroeder; Ted Farrell; Jacqueline Lee |
| Subject: | RE: Source Code |
| Date: | Thursday, May 04, 2017 3:07:11 PM |
| Attachments: | image002.png |
| | image003.png |

Hi Salumeh,

We have not been able to locate source code for the items that you mentioned in point 2 of your email below, but source code for DesignBase 6 and Paladin Live 5.4 is now available for inspection in our DC office. Thanks.

Amadou

**Amadou Kilkenny Diaw**
RuyakCherian LLP
O: (202) 838-1564
M: (202) 246-1376



---

**From:** Salumeh R. Loesch [mailto:salumeh.loesch@klarquist.com]
**Sent:** Thursday, May 4, 2017 1:15 PM
**To:** Amadou Kilkenny Diaw <amadoukd@ruyakcherian.com>; Ted Farrell <tedf@ruyakcherian.com>
**Cc:** Sunny Cherian <sunnyc@ruyakcherian.com>; Don Livornese <donl@ruyakcherian.com>; Garth A. Winn <garth.winn@klarquist.com>; John D. Vandenberg <john.vandenberg@klarquist.com>; Sarah E. Jelsema <Sarah.Jelsema@klarquist.com>; Linda D. Schroeder <linda.schroeder@klarquist.com>
**Subject:** RE: Source Code

Hi Amadou,

Do you have an update on the below email?

Thanks.

-Salumeh

Salumeh R. Loesch

**Klarquist**

D: 503.473.0931

---

**From:** Amadou Kilkenny Diaw [mailto:amadoukd@ruyakcherian.com]
**Sent:** Friday, April 28, 2017 4:14 PM

Exhibit G
Page 62

**To:** Salumeh R. Loesch <salumeh.loesch@klarquist.com>; Ted Farrell <tedf@ruyakcherian.com>
**Cc:** Sunny Cherian <sunnyc@ruyakcherian.com>; Don Livornese <donl@ruyakcherian.com>; Garth A. Winn <garth.winn@klarquist.com>; John D. Vandenberg <john.vandenberg@klarquist.com>; Sarah E. Jelsema <Sarah.Jelsema@klarquist.com>; Linda D. Schroeder <linda.schroeder@klarquist.com>
**Subject:** RE: Source Code

Salumeh,
The source code for EDSA Technical Rev 1 and Rev 2 is available for inspection in our offices in Washington, DC. We will follow up by Wednesday regarding the items that you mentioned in point 2 of your list.

Many thanks.
**Amadou Kilkenny Diaw**
RuyakCherian LLP
O: (202) 838-1564
M: (202) 246-1376



---

**From:** Salumeh R. Loesch [mailto:salumeh.loesch@klarquist.com]
**Sent:** Friday, April 28, 2017 2:00 PM
**To:** Amadou Kilkenny Diaw <amadoukd@ruyakcherian.com>; Ted Farrell <tedf@ruyakcherian.com>
**Cc:** Sunny Cherian <sunnyc@ruyakcherian.com>; Don Livornese <donl@ruyakcherian.com>; Garth A. Winn <garth.winn@klarquist.com>; John D. Vandenberg <john.vandenberg@klarquist.com>; Sarah E. Jelsema <Sarah.Jelsema@klarquist.com>; Linda D. Schroeder <linda.schroeder@klarquist.com>
**Subject:** RE: Source Code

Hi Amadou,

Can you promptly respond to the below email? Thank you.

-Salumeh

Salumeh R. Loesch

**Klarquist**

D:503.473.0931

---

**From:** Salumeh R. Loesch
**Sent:** Wednesday, April 26, 2017 11:2⬚ AM
**To:** ⬚Amadou Kilkenny Diaw⬚<amadoukd@ruyakcherian.com>; ⬚Ted Farrell⬚ <tedf@ruyakcherian.com>
**Cc:** Sunny Cherian <sunnyc@ruyakcherian.com>; Don Livornese <donl@ruyakcherian.com>; Garth A.

Exhibit G
Page 63

Winn <garth.winn@klarquist.com>; John D. Vandenberg <john.vandenberg@klarquist.com>; Sarah E. Jelsema <Sarah.Jelsema@klarquist.com>; Linda Schroeder linda.schroeder@klarquist.com <linda.schroeder@klarquist.com>

**Subject:** Source Code

Amadou,

Please confirm that:

1. Power Analytics's source code for EDSA Technical Rev 1 and Rev 2 are available for inspection, and
2. The source code available for review includes all source code associated with all versions of EDSA's Paladin software from 2006 and earlier, including code installed at
   a. the three Federal Aviation Administration FAA sites in the SA referenced in ECF o. 161-2, E C;
   b. the Minneapolis ARTCC M P and Denver ARTCC and FAA klahoma Technical Center installations identified in ECF o. 217-1 at E G; and
   c. the installations identified in Plaintiff's response to nterrogatory o. 1.

Thank you.

-Salumeh


**Salumeh R. Loesch**
Attorney

**Klarquist**

One World Trade Center
121 SW Salmon Street, Suite 1600
Portland, OR 97204 U.S.A.

D: 503.473.0931

email | website

The information contained in this e-mail is confidential and may be legally privileged. It is intended solely for the addressee. Access to this e-mail by anyone else is not authorized. If you are not the intended recipient, any disclosure, copying, distribution, use, or any action you take or fail to take in reliance on it, is prohibited and may be unlawful. Please immediately notify us by telephone (collect) or return e-mail, destroy the original message, and retain no copy - on your system or otherwise.

Exhibit G
Page 64