David W. Kesselman
(Cal. Bar No. 203838)
dkesselman@kbslaw.com
KESSELMAN BRANTLY
 STOCKINGER LLP
1230 Rosecrans Avenue, Suite 690
Manhattan Beach, CA 90266
Telephone: 310-307-4555

Counsel for Defendant
OPERATION TECHNOLOGY, INC.

Don F. Livornese
(Cal. Bar No. 125,934)
donl@ruyakcherian.com
RUYAKCHERIAN LLP
222 N. Sepulveda Blvd, Suite 2000
El Segundo, California 90245
Telephone: 310-586-7689

Counsel for Plaintiff
POWER ANALYTICS
CORPORATION

[Additional Counsel Listed on Signature Pages]

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### SOUTHERN DIVISION

| | |
|---|---|
| POWER ANALYTICS CORPORATION, <br><br> Plaintiff, <br><br> v. <br><br> OPERATION TECHNOLOGY, INC., d/b/a ETAP, OSISOFT LLC, and SCHNEIDER ELECTRIC USA, INC., <br><br> Defendants. | Case No. 8:16-cv-01955-JAK-FFM <br><br> **Hon. Frederick F. Mumm** <br><br> **JOINT STATUS REPORT PURSUANT TO ECF NO. 257** <br><br> Discovery Cutoff:  1/15/2018 <br> Pretrial Conference: 11/19/2018 <br> Trial Date: 12/4/2018 <br> Date Action Filed: 3/21/2016 |

# <u>TABLE OF CONTENTS</u>

Pages

I.   INTRODUCTION ...................................................................................1

   A.   ETAP's Introductory Statement ...............................................1

   B.   Plaintiff's Introductory Statement ...........................................2

II.  PARTIES' MEET-AND-CONFER HISTORY ...............................5

   A.   ETAP's Position ........................................................................5

   B.   Plaintiff's Position ....................................................................7

III. PLAINTIFF WITHHOLDING DOCUMENTS SUBJECT TO NDA ...........7

   A.   ETAP's Position ........................................................................7

   B.   Plaintiff's Position ..................................................................12

IV.  PLAINTIFF'S SEARCH AND PRODUCTION ........................................20

   A.   ETAP's Position ......................................................................20

   B.   Plaintiff's Position ..................................................................25

V.   CONCLUSION...................................................................................26

   A.   ETAP's Position ......................................................................26

   B.   Plaintiff's Position ..................................................................27

i

## I.   **INTRODUCTION**

The Court's Order Vacating Hearing and Requiring Parties to Meet and Confer Re Dkt. No. 253 (ECF No. 257) ordered the parties to meet and confer in person and file "a joint status report which identifies the issues discussed and the agreements, if any, reached with respect to those issues." (ECF No. 257 at 1-2.) The Court further ordered that "[a]ny remaining dispute must be identified clearly." (*Id* at 2.) The parties met-and-conferred on June 14, 2017. Attached as Exhibit A to the Declaration of Salumeh R. Loesch, filed herewith, is the transcript from the parties' meet-and-confer ("Tr."). The parties now submit this joint status report.

### A.   **ETAP's Introductory Statement**

The Court's Order stated that "Power contends that it already has produced all non-privileged responsive documents that ETAP is seeking in this motion. Power further asserts that ETAP narrowed the scope of the requests after the last meet and confer of the parties, but never met and conferred with respect to the narrowed requests. According to Power, had ETAP conferred with it after the requests had been narrowed, ETAP would have learned that no documents are outstanding." (ECF No. 257 at 1.) The ordered meet-and-confer confirmed that Plaintiff's contentions and assertions, noted by the Court, were incorrect. To the contrary, as ETAP presented in its portion of the Joint Stipulation (ECF No. 253), and confirmed during the June 14 meet-and-confer, Plaintiff has *not* produced all non-privileged responsive documents, and the parties *did* meet-and-confer on the scope of the requests. For example, at the parties' June 14 meet-and-confer, Plaintiff confessed that it has withheld responsive, non-privileged documents based on one or more purported non-disclosure agreements ("NDAs").

Plaintiff contends that ETAP is not entitled to documents subject to NDAs. ETAP contends that (1) an NDA is not a valid basis for withholding indisputably

responsive and highly relevant documents, (2) at the least, Plaintiff should have sought a protective order to withhold these documents, rather than unilaterally decide to withhold these documents to the detriment of ETAP, and (3) Plaintiff's incorrect statements to the Court (that it was withholding no responsive non-privileged documents) should be sanctioned.  Accordingly, ETAP asks the Court to compel Plaintiff to produce without further delay all documents related to its Paladin and Paladin Live software from before July 2007, whether or not subject to an NDA.  And ETAP further reiterates that, because no privilege log has been provided, there cannot be any privileged documents, so all pre-July 2007 Paladin-related documents should be produced immediately.[1]

ETAP further argues that, because Plaintiff will not explain where and how it searched for documents and it still has not produced hundreds of responsive documents (subject to the purported NDA), ETAP cannot access whether Plaintiff's document production is complete.  Thus, still in dispute are: (1) whether the parties met-and-conferred prior to the filing of the Joint Stipulation; (2) whether Plaintiff must now produce the responsive documents it has unilaterally and furtively withheld based on purported NDAs; and (3) any further relief the Court may order to ensure that Plaintiff will promptly produce all responsive documents.

### B.   Plaintiff's Introductory Statement

ETAP's allegations that Plaintiff's contentions and assertions were incorrect are false.  The entirety of Defendant's initial improper motion to compel demonstrates that Defendant failed to properly meet and confer prior to its motion

---

[1] ETAP repeatedly raised the issue that no privilege log has been provided during the June 14 meet-and-confer, and Plaintiff did not deny that it has not provided a privilege log. (*See* Tr. at 7:14-9:8; 11:4-12; 11:25-12:4; 23:19-24:4; 26:4-14.)

as Plaintiff initially indicated, and is the concoction of one of ETAP's individual attorneys who persists in harassing Plaintiff's counsel and engaging in conduct unbecoming of the profession.  (D.I. 253, 4-5; A. Diaw Decl. Ex. A, B, C, D). Despite Plaintiff's requests to Defendant's lead counsel that his co-counsel cease engaging in this improper conduct, counsel's improper conduct continues.

Counsel's improper conduct continues with this very filing.  The Court requested a joint status report regarding the issues raised by Defendants' initial improper motion to compel.  (D.I. 257).  The parties' June 14, 2017 meet and confer triggered the parties June 26, 2017 deadline to file the joint status report. (*Id.*).  Defendant did not send the draft joint status report to Plaintiff until Sunday June 25, 2017 at 6:17 pm eastern time.  (A. Diaw Decl. Ex. C).  To compound Defendants' wholly unacceptable timing, the draft that Defendant sent to Plaintiff on Sunday night was in the form of a nearly twenty page fully briefed new motion to compel.  Plaintiff was forced to send letters to Defendant's lead counsel admonishing co-counsel's conduct, and the pattern of behavior that has emerged. (A. Diaw Decl. Ex. A, B).  To date, counsel has not received These types of tactics have become routine for counsel for Defendant and represent an utter lack of disregard for the text and spirit of the Federal Rules of Civil Procedure and the Local Rules.  Plaintiff is at a loss as to how it can possibly continue to work with this attorney regarding this litigation.

The lack of clarity in Defendant's initial motion demonstrates the pitfalls that may arise when a party races to the Court house prior to attempting to resolve, or at least identify relevant issues in dispute.  Defendant's continual attempts to justify its improper filing fall on deaf ears.  ETAP's improper filing is the latest incident in what has become a pattern of ETAP's attorney's poor conduct throughout this litigation.  The attorney's conduct has made it nearly impossible to work with ETAP's outside counsel.

3

The vast majority of ETAP's initial motion made unfounded assertions and arguments regarding the documents that ETAP seeks, but does not identify any *actual discovery disputes.*  ETAP's initial motion only identifies two purported issue.  First, that "Plaintiff failed to meet its promised deadlines."  (D.I. 253, 2).  And second, that "EDSA documents should be produced."  (*Id.* at 3).

With respect to the first issue identified by Defendant, Plaintiff has produced all pre-July 2007 Paladin documents to which Defendant is entitled as it indicated in its response to Defendant's motion.  (*Id.* at 4-5).  Defendant is not entitled to documents that would cause Plaintiff to break non-disclosure and confidentiality obligations that Plaintiff owes the Executive branch of the U.S. Federal Government, specifically the Federal Aviation Administration ("FAA").  Defendant has not improperly withheld any of the requested discovery.  Regarding Plaintiff's privilege log, the Parties' Stipulation & Order Regarding Discovery of Electronically Stored Information ("ESI Order") recites that: "For past productions, the parties agree to exchange their privilege logs within 30 days of filing this joint stipulation."  (D.I. 286).  Plaintiff will provide its privilege log by July 20, 2017 accordingly.

Regarding the second issue that Defendant identified to the Court, **Plaintiff has not withheld any documents on the basis that they may have been generated by EDSA**.  There is no dispute for the Court to decide regarding this issue.  ETAP's identification of these issues as the sole disputes in its initial motion to compel is a result of ETAP's failure to properly meet and confer.  ETAP's improper filing caused Plaintiff to incur costs to defend against the improper motion, meet and confer in person at ETAP's counsel's office in California, incur costs related to a court reporter, and incur costs related to responding to this purported Joint Status Report which is actually a new motion to compel.

In its portion of the Joint Status Report, ETAP continues to misrepresent the record and attempts to attribute statements to Plaintiff. Plaintiff categorically denies Defendant's statements regarding Plaintiff's position, which is straightforward, and has been consistent throughout this litigation. ETAP's ongoing conduct violates the Federal Rules of Civil Procedure, the Local Rules of this Court, and is unprofessional. The parties would not be in this position if ETAP had properly met and conferred.

Plaintiff's position throughout this litigation has been consistent. Plaintiff has produced all non-privileged responsive documents that it has found, after a reasonable search, to which Defendant is entitled. Plaintiff's position has not changed. Plaintiff is not improperly withholding any documents. Plaintiff has confidentiality and non-disclosure obligations to the executive branch of the Federal Government that are implied by certain of Defendant's discovery requests. Defendant's position that during the parties' June 14 meet and confer Plaintiff "confessed" that it has withheld documents on the basis of numerous confidentiality obligations is wrong. It implies that Defendant's have not been aware of Plaintiff's confidentiality obligations for months. This is not some new revelation for Defendant. If Defendant had properly met and conferred prior to filing its initial motion to compel, it could have identified relevant disputes for the Court, but it failed to do so.

## II.    PARTIES' MEET-AND-CONFER HISTORY

### A.    ETAP's Position

The Court stated that "Power further asserts that ETAP narrowed the scope of the requests after the last meet and confer of the parties, but never met and conferred with respect to the narrowed requests." (ECF No. 257 at 1.) ETAP started the June 14 meet-and-confer with this issue, but Plaintiff refused to discuss it. (*See* Tr. at 5:4-10:14.) Specifically, ETAP identified its February 28, 2017

Rule 37 letter, which is "verbatim almost … the same as what [ETAP's] motion says it's limited to." (Tr. at 6:22-24.) (*Compare* ECF No. 253-1 at 39 *and* ECF No. 253-1 at 56, *with* ECF No. 253 at 1:15-21.)

ETAP continued to explain that the discussion during the March 10 telephonic meet-and-confer (attorneys Salumeh Loesch and John Vandenberg for ETAP; Ted Farrell for Plaintiff) was clearly limited to pre-July 2007 Paladin documents, as both ETAP's counsel and Plaintiff's counsel stated during the March 10 meet-and-confer. (Tr. at 7:15-19; 8:7-12.) ETAP also referred to its follow-up March 15 letter, and an email on March 27 from ETAP to Plaintiff "saying that [ETAP is] following up on ETAP's February 28 letter. And [ETAP says] we have not received the Paladin document source code, executable codes, sales information, or other technical information from pre-2007." (Tr. at 7:14-25.) Plaintiff's response was: "Based on my understanding the specific issue that you addressed in your joint stipulation were not discussed with Ted." (Tr. at 8:1-3.)[2]

At the Court-ordered meet-and confer, Plaintiff provided no justification for its statements to the Court that ETAP did not meet-and-confer on the "narrowed scope" of its motion to compel—namely, limiting the motion to compel to pre-July 2007 Paladin documents and information. But, as was made clear in the meet-and-confer, it cannot be disputed that since its February 28, 2017 letter (ECF No. 253-1 at 38-54), including two follow-up emails and a follow-up letter (ECF No. 253-1 at 55-58), ETAP always sought only pre-July 2007 Paladin documents and information with this motion to compel. Plaintiff's statements to the contrary are unsubstantiated and untrue.

---

[2] ETAP also specifically asked, with respect to Request No. 14, how the parties did not meet-and-confer. The request seeks software and code. In both ETAP's letters, ETAP specifically asked for prior art source code and executable code. Again, Plaintiff had no substantive response. (Tr. at 37:19-38:7.)

### B.   Plaintiff's Position

Defendant continues to address this issue *ad naseum*.  The Court need not look any further than Defendant's initial motion to compel to conclude that Defendant failed to properly meet and confer.  Defendant's initial motion does not identify any actual disputes for the Court to address beyond general complaints regarding the timing of Plaintiff's responses to Defendant's requests.  Moreover, the purported conversations and correspondence that Defendant cites occurred more than two months prior to Defendant's filing of its initial motion to compel.  These communications also occurred in the midst of the parties' preparation and briefing of *potentially case dispositive issues* when the ETAP attorney with whom Plaintiff can no longer work elected to weaponize the Federal Rules of Civil Procedure and the Court's Local rules by attempting to purposefully overload Plaintiff with discovery issues and divert Plaintiff's attention away from the then pending briefing on potentially case dispositive issues.  Defendant's barrage of discovery issues coincided precisely with the briefing schedules on the parties' claim construction and summary judgment briefing.  Defendant's tactics were below board and cannot be condoned.

## III.   PLAINTIFF WITHHOLDING DOCUMENTS SUBJECT TO NDA

### A.   ETAP's Position

The Court stated that "Power contends that it already has produced all non-privileged responsive documents that ETAP is seeking in this motion."  (ECF No. 257 at 1.)  But Plaintiff admitted in the Court-ordered meet-and-confer that this too is untrue; conceding that it is "withholding based upon NDAs."  (Tr. at 11:11-12.)  Plaintiff's "position is that defendants are not entitled to receive documents that would violate contractual obligations."  (Tr. at 13:4-6.)  At this time, Plaintiff has identified a potential NDA with the Federal Aviation Agency ("FAA")—the same FAA that ETAP identified in the Joint Stipulation (*see* ECF No. 253 at 1:15-21,

2:13-18, 14:12-15:2, .)  According to Plaintiff, there may be other NDAs, but, at this time, Plaintiff has unilaterally determined that it is entitled to withhold at least "a few hundred documents" (Tr. at 46:9-12) that are unquestionably response and relevant to ETAP's defenses:

> [ETAP]:  … First of all, I want to understand what you're saying here by Power Analytics is not withholding any responsive documents that defendant is entitled to receive. Again, I understand you're withholding documents based on NDAs, one or more, never been clearly set forth; so what does this mean?
>
> [PLAINTIFF]: We are withholding based upon NDAs.
>
> [ETAP]: Which NDAs? With whom?
>
> [PLAINTIFF]: At a minimum FAA.
>
> [ETAP]: Do you know any others?
>
> [PLAINTIFF]: We're investigating others.
>
> [ETAP]: And you did not make this clear in the joint stipulation?
>
> [PLAINTIFF]: Well, that's the --
>
> [PLAINTIFF]: Our position is that defendants are not entitled to receive documents that would cause plaintiff to violate contractual obligations.
>
> [ETAP]: But you did not seek a protective order presenting this issue before the court. You did not seek a protective order saying that you are withholding documents and you want a protective order to not produce these documents.
>
> [PLAINTIFF]: This is the same issue that was brought up --
>
> [PLAINTIFF]: We are not aware of any requirement to do so.
>
> [PLAINTIFF]: This is the same issue that was brought up with respect to the interrogatories, and we showed the NDA -- I'm sorry -- the NDAs that we had and the efforts we made to contact the FAA. It's the same issue because

8

1  we said we were going to produce with respect to documents there that we

2  were going to answer with respect to documents under 33 D, and we raised it

3  in the context of the interrogatories. And it's the exact same issue here.

4  [ETAP]: But you didn't raise it here.

5  (Tr. at 12:14-13:25.)

6  [ETAP]: Do you know or have a sense of the size or amount of documents

7  you are withholding based on this NDA with FAA?

8  [PLAINTIFF]: It's not -- I don't think it is that big. It's may be a few hundred

9  documents, but I mean, that's kind of a guesstimate, but it's not a substantial

10  amount of documents.

11  [ETAP]: Okay. And are these documents in your possession and plaintiff's

12  possession currently, the documents you are withholding?

13  [PLAINTIFF]: Well, they're documents that we located after our search in

14  response to the discovery request.

15  [ETAP]: So documents that were in plaintiff's possession and are currently

16  in plaintiff's possession that you are currently withholding?

17  [PLAINTIFF]: They're documents that we located, searched just like all the

18  other documents that we've located in our search of our files.

19  [ETAP]: Okay. And so I understand you've identified in your interrogatory

20  responses certain installations, Blue Cross Blue Shield, Visa, FAA. Have

21  you searched for and produced all documents responsive to those

22  installations except for whatever you're withholding based on an FAA

23  NDA?

24  [PLAINTIFF]: I believe that's correct. I know that our search there I think is

25  still ongoing, but I believe we have given over everything. And I also

26  believe there are some questions as to when that Visa installation may have

27  occurred because it may have actually after the July of 2007 time.

28

9

[PLAINTIFF]: So besides the FAA agreement, are you aware of any other agreements that you're basing any withholding of documents on?

[PLAINTIFF]: As I mentioned earlier, I think that analysis is ongoing, but sitting here today I have not -- I do (phone sound warbles) believe there are others.

(Tr. at 46:6-47:18.)

The parties also discussed Plaintiff's purported attempts to contact the FAA. These attempts are limited to one email and two letters from Plaintiff's counsel, starting on February 20, 2017.  (ECF No. 203-3 at 27-29.)  But in none of these communications does Plaintiff expressly notify the FAA that it will produce documents unless the FAA objects, or make any other proactive attempt to get a response from the FAA. And Plaintiff confirmed during the June 14 meet-and-confer that these are Plaintiff's only communications with the FAA on this issue. (Tr. at 14:4-18:1.)

ETAP submits that withholding documents based on one or more NDAs is improper.  Documents are not properly withheld merely because they are subject to a confidentiality agreement; only privilege, not confidentiality, is a valid objection and basis for withholding.

During the June 14 meet-and-confer, Plaintiff admitted that it is withholding at least FAA-related pre-July 2007 Paladin documents responsive to, at least, the following Requests:

Request No. 7:  Plaintiff is withholding documents "known, seen by, or read by any of the patent applicants."  (Tr. at 12:5-25)

Request No. 11: Plaintiff is withholding documents "related to the validity, invalidity, enforceability, unenforceability of the asserted patents."  (Tr. at 24:13-

16, 25:7-24) This includes prior art executable code (Tr. at 26:15-23), technical documents (Tr. at 31:24-32:9), and testing documentation (Tr. at 36:4-8).

Request Nos. 12 & 13:  Although Plaintiff did not respond, ETAP submits that Plaintiff likely is withholding documents related to any pre-July 2007 use, display, or offer for sale of its Paladin software.  (Tr. at 36:9-37:18.)

Request No. 14:  Plaintiff is withholding at least executable code.  (Tr. at 37:19-38:7; 26:15-23.)

Request No. 20:  Plaintiff is withholding documents related to Plaintiff's attempts to commercialize the subject matter of the asserted patents prior to July 2007.  (Tr. at 40:23-41:12.)

Request Nos. 61, 203, 204:  Plaintiff is withholding "technical documents relating to [] the features of Paladin prior to 2007, July 2007."  (Tr. at 41:13-20.)

Request No. 205:  Plaintiff's has not determined if it is going to withhold agreements between Plaintiff, the FAA and/or General Atomics based on a purported NDA.  To the extent such documents are withheld, ETAP submits that it is improper and asks the Court to compel their production.  (Tr. at 42:13-15, 43:4-23.)

Request No. 206:  Plaintiff is withholding documents related to the use of Paladin in any live customer facility "to the extent it implicates the NDA."  (Tr. at 43:24-44:14.

Request No. 208:  Plaintiff is withholding documents describing any actual planned features of Paladin "to the extent that the FAA are implicated."  (Tr. at 45:6-46:5.)

ETAP seeks a Court order compelling the production of documents in response to these requests (and any other requests to which documents are being withheld), including any documents subject to any purported NDA or other confidentiality agreement.

## B.    **Plaintiff's Position**

Defendant's assertions misrepresent Plaintiff's statements to the Court. Plaintiff stated that: "Plaintiff has explained to Defendant that it is *not improperly withholding any documents* and has produced the non-privileged responsive documents **to which Defendant is entitled**."  (D.I. 253, 4) (emphasis added). Defendant is attempting to misconstrue Plaintiff's statements to support the conclusion that it seeks.  This tactic has become a regular practice for Defendant's counsel who will stretch words well beyond their meaning in order to support Defendant's position.  To the extent any issues were not identified in Defendant's initial improper motion to compel, Defendant has no one to blame but itself for failing to properly meet and confer prior to filing its motion.

Substantively, Plaintiff's position remains consistent, Plaintiff has "produced all responsive documents to which defendant is entitled. That is correct. That is our position, and that has been our position."  (Tr. at 17:9-12).  Defendant is not entitled to receive documents that would cause Plaintiff to violate confidentiality and non-disclosure obligations that it owes the Federal Government.  Defendant has been aware of Plaintiff's obligations for months and has had applicable NDAs in its possession since at least early March of this year.  Regarding the specific requests at issue, Plaintiff responds as follows.

Defendant's Request No. 7 seeks: "All Documents, Things and Electronically Stored Information known to, seen by, or read by any of the

Asserted Patents Applicants, prior to their respective filing dates for the Asserted Patents concerning or relating to the subject matter of the Asserted Patents." This request is extremely broad. Moreover, Power Analytics cannot determine exactly what was "known to, seen by, or read by any of the Asserted Patent Applicants" more than a decade ago. On its face, ETAP's request is hopelessly overbroad and ambiguous.

Nonetheless, Power Analytics performed a reasonable search of its documents in accordance with its obligations under the Federal Rules and has produced documents that are responsive to this particular request, although by producing documents, Power Analytics does not make any representation regarding what the patent applicants may have seen or known prior to filing the Asserted Patents. This request does implicate documents that Defendant is not entitled to receive because their production would cause Plaintiff to violate *existing* confidentiality and non-disclosure obligations that it owes the Federal Government.

Defendant's Request No. 8 seeks: "All Documents, Things and Electronically Stored Information **that reflect any consideration by any of the Asserted Patents Applicants, or anyone acting on any of their behalves, to disclose or not disclose any prior art that was not disclosed to a patent office** or other governmental authority in connection with the Asserted Patents, Asserted Patents Applications, and/or Related Power Analytics Patents and Applications." (Emphasis added). On its face, this request incorporates the legal conclusion and contention that "prior art [] was not disclosed to a patent office...." Plaintiff

13

disagrees with Defendant's contention.  Nonetheless, Plaintiff performed a reasonable search consistent with its obligations under the Federal Rules, and did not locate documents responsive to this RFP.

During the meet and confer, counsel for Defendant attempted to rewrite this request:

> Plaintiff: I am not aware of any documents being withheld in response to this RFP.
>
> Defendant: And no privilege log has been produced; so there's no privileged documents either.  And so to the best we understand there are no documents that have been produced in response to RFP 8.· So there's no -- sorry -- Power Analytics has no documents in response to RFP 8?· There are no documents -- you have no documents related to filing of any of the patent applications?
>
> Plaintiff: That's not what your RFP asks for.  You're, again, completely manipulating the specifics of your own RFP here.
>
> Defendant: It says, 'All documents and things that reflect any consideration by the patent applicants or anyone acting on their behalf to disclose or not disclose any prior art that was not disclosed to the patent office.' So there's no documents in response to this RFP?
>
> Plaintiff: Again, I'm not aware of any documents responsive to this RFP.
>
> Defendant: Okay.

(Tr. 23:17-24:13).  Plaintiff reiterates that it is not withholding any documents responsive to this request and has completed its response to this request.

Regarding Request No. 11, by ETAP's own admission, it is "quite broad." (Tr. 24:13-16).  The request seeks: "**All Documents**, Things and Electronically Stored Information concerning or relating to the validity, invalidity, enforceability or unenforceability of the Asserted Patents."  (Emphasis added).  Despite the extreme overbreadth of this request, Plaintiff has produced documents responsive to this request.  This request does implicate documents that Defendant is not entitled to receive because their production would cause Plaintiff to violate *existing* confidentiality and non-disclosure obligations that it owes the Federal Government.

Request No. 12 seeks: "All Documents, Things and Electronically Stored Information concerning or relating to any use, publication, disclosure or display, or any sale or offer for sale of the subject matter claimed in the Asserted Patents which occurred on or before the respective filing dates for the Asserted Patents." Despite the overbreadth of this additional "All Documents" request, Plaintiff has produced numerous documents responsive to this request.  This request does implicate documents that Defendant is not entitled to receive because their production would cause Plaintiff to violate *existing* confidentiality and non-disclosure obligations that it owes the Federal Government.

Request No. 13 seeks: "All Documents, Things and Electronically Stored Information concerning or relating to any of the following: the first presentation, first disclosure, first demonstration, first display, first sale, first offer for sale or first use of any alleged invention described in the Asserted Patents."  Despite the overbreadth of this additional "All Documents" request, Plaintiff has produced

numerous documents responsive to this request.  This request does implicate documents that Defendant is not entitled to receive because their production would cause Plaintiff to violate *existing* confidentiality and non-disclosure obligations that it owes the Federal Government.

Request No. 14 seeks: "All Documents, Things and Electronically Stored Information concerning or relating to any software, application, macro, or other program code developed by or on behalf of Power Analytics prior to July 20, 2007, concerning or relating to in whole or in part to real time monitoring, modeling, simulation and visualization of events, and any other/or any software making use of any alleged invention described in the Asserted Patents."  This request for "All Documents" is overbroad, but Power Analytics has produced source code for EDSA Technical 2005 Rev 1, EDSA Technical 2005 Rev 2, DesignBase 6, and Paladin Live 5.4.  This source code remains available for inspection at the offices of its counsel in Washington, D.C.  This request does implicate documents that Defendant is not entitled to receive because their production would cause Plaintiff to violate *existing* confidentiality and non-disclosure obligations that it owes the Federal Government.

Request No. 15 seeks: "All publications authored or co-authored by any Asserted Patents Applicant concerning or relating to the subject matter disclosed in the Asserted Patents."  Power Analytics has produced responsive documents and is not withholding any documents responsive to this request.

Request No. 20 is extremely broad.  It seeks: "All Documents, Things and Electronically Stored Information concerning or relating to attempts by Power

Analytics or anyone else to commercialize the subject matter of the Asserted Patents." Despite the overbreadth of this request, Power Analytics has produced responsive documents. This request does implicate documents that Defendant is not entitled to receive because their production would cause Plaintiff to violate *existing* confidentiality and non-disclosure obligations that it owes the Federal Government.

Request No. 25 seeks: "All Documents, Things and Electronically Stored Information concerning or relating to any testing, development or research activity conducted in connection with any alleged invention described in the Asserted Patents, including, but not limited to, models, prototypes, specifications, schematics, test results, notes, laboratory notebooks, manuals, memoranda, correspondence or e-mail." Despite the overbreadth of this additional "All Documents" request, Plaintiff has produced numerous documents responsive to this request. This request does implicate documents that Defendant is not entitled to receive because their production would cause Plaintiff to violate *existing* confidentiality and non-disclosure obligations that it owes the Federal Government.

Request No. 61 seeks: "All Documents, Things and Electronically Stored Information that show what features all versions of Paladin Gateway, Paladin Live, and Real Time Arc Flash had and when." This request is overbroad, but Plaintiff has produced documents responsive to this Request. This request does implicate documents that Defendant is not entitled to receive because their production would

17

cause Plaintiff to violate *existing* confidentiality and non-disclosure obligations that it owes the Federal Government.

Request No. 203 seeks: "All Documents, Things, and Electronically Stored Information describing any aspect of the "Paladin" systems mentioned in the article "Paladin® Monitoring and Predictive Software for Electric Power Distribution Systems," (which lists R.J. Thome, M. Nevins, M. Reed, Adib Nasle and James Firestine as authors) including those "implemented at three [FAA] sites in the USA," as stated in Sec. 1 of the article."  Plaintiff has produced documents responsive to this request despite its clear overbreadth.  This request does implicate documents that Defendant is not entitled to receive because their production would cause Plaintiff to violate *existing* confidentiality and non-disclosure obligations that it owes the Federal Government.

Request No. 204 seeks: "All Documents, Things, and Electronically Stored Information describing the "auto-calibration feature that automatically calibrates the logical model to the actual installed equipment load characteristics," mentioned in Sec. 2 of the article "Paladin® Monitoring and Predictive Software for Electric Power Distribution Systems," (which lists R.J. Thome, M. Nevins, M. Reed, Adib Nasle and James Firestine as authors)."  Plaintiff has produced documents responsive to this request despite its clear overbreadth.  This request does implicate documents that Defendant is not entitled to receive because their production would cause Plaintiff to violate *existing* confidentiality and non-disclosure obligations that it owes the Federal Government.

Request No. 205 seeks: "All agreements between any of EDSA Micro Corp., General Atomics, and the US FAA, regarding Paladin in whole or in part." Power Analytics has produced documents responsive to this request throughout the pendency of this litigation. Power Analytics produced additional documents responsive to this Request on June 26 as it indicated it would in its portion of ETAP's initial motion to compel. (D.I. 253, 41). This request does implicate documents that Defendant is not entitled to receive because their production would cause Plaintiff to violate *existing* confidentiality and non-disclosure obligations that it owes the Federal Government.

Request No. 206: "All Documents, Things, and Electronically Stored Information describing the use of "Paladin Live" "in live customer facilities," prior to April 9, 2006, mentioned on EDSA's April 9, 2006, archived Web page at http://web.archive.org/web/20060409123933/http://edsa.com/productsServices/paladinLive.html." This request is overbroad. Nevertheless, Plaintiff has produced responsive documents. This request does implicate documents that Defendant is not entitled to receive because their production would cause Plaintiff to violate *existing* confidentiality and non-disclosure obligations that it owes the Federal Government.

Request No. 207 seeks: "All versions of "Paladin live: a sneak preview for EDSA users," including the version submitted with Copyright Registration No. TX0006355193." Plaintiff's response to this request is complete. (D.I. 253, 44).

Request No. 208 seeks: "All Documents, Things, and Electronically Stored Information dated before April 9, 2006, describing actual or planned features of

any software or product referenced as "Paladin Live" or any internal code name for
that software or product."  Plaintiff has produced numerous documents responsive
to this request.  This request does implicate documents that Defendant is not
entitled to receive because their production would cause Plaintiff to violate
***existing*** confidentiality and non-disclosure obligations that it owes the Federal
Government.

## IV.   PLAINTIFF'S SEARCH AND PRODUCTION

### A.   ETAP's Position

The Court ordered the parties to identify issues in dispute.  (ECF No. 257 at
2.)  As discussed above, ETAP seeks an order compelling the production of all
documents responsive to Request Nos. 7-8, 11-15, 20-21, 25, 61, and 203-208,
regardless of whether these ten-or-more-year-old documents are subject to an NDA
or not.  It appears that the only requests to which all responsive documents have
been produced—and are not being withheld for any basis—are Request Nos. 8 and
207. (Tr. at 23:4-24:12; 44:15-45:5.)  ETAP withdraws its motion regarding these
two requests to the extent   a thorough and complete search has been conducted
and no responsive documents exist (regarding Request No. 8) and all responsive
documents have been produced (regarding Request No. 207), regardless of any
purported confidentiality, privilege or other objection.

Because Plaintiff is withholding responsive documents and because Plaintiff
refuses to explain where and how it has searched for documents, ETAP cannot
confirm if Plaintiff's document production (assuming it produces all withheld
documents) would be complete.  Based on ETAP's review of the produced
documents, it appears that there are significant gaps in the production and critical
missing documents.  Plaintiff will not confirm the databases and locations where it
searched for documents, and the methods/search terms it used to collect
documents.  Plaintiff simply states that it has met the Federal Rules requirement:

[ETAP]: So I think, Don, if you recall at our meet and confer subject to your request, your motion, I detailed who we collected from and what search terms we used in our production. So you're saying you did perform a reasonable search, but you are not going to explain whether you actually collected from the named inventors on the four patents in response to an RFP that asked for all documents known to the named inventors prior to filing patent application. Am I understanding that correctly?

[PLAINTIFF]: Yes.

[ETAP]: Okay.  So are you going to tell me if you collected their personal files?

[PLAINTIFF]: We performed a reasonable search of documents within our client's custody and control.

[ETAP]:  Did you look at the hard drives of the named inventors?

[PLAINTIFF]: Again, we performed our reasonable search pursuant to the Federal Rules of Civil Procedure, and we have turned over everything that defendant is entitled to.

[ETAP]: Did you search all their e-mails from before July 2007 to and from any of the named inventors?

[PLAINTIFF]: Again, we performed our reasonable search, and we have given defendant all documents to which it is entitled in response to this request.

(Tr. at 18:19-19:20.)

During the June 14 meet-and-confer, ETAP raised the following sample deficiencies in Plaintiff's document production, but Plaintiff was unable to provide a response to any of these issues:

Nasles as Custodians (RFPs 11 & 15):  [Two of the named inventors are Adib and Ali Nasle.] "[B]ased on [ETAP's] understanding of the custodian from

21

whom [Plaintiff] collected the named inventors on all four patents Adib and Ali Nasle were not custodians; so as [ETAP] understand it their documents were not directly collected or searched based on the meta data of the documents [Plaintiff] produced." (Tr. at 18:5-10.) Plaintiff would not confirm the manner of the collection or whether Adib and Ali Nasle's documents were directly collected. (Tr. at 18:13-18; *see also* Tr. at 39:1-39:17.) Collecting from the named inventors, of course, is critical to a reasonable search for responsive documents.

Conception and Reduction to Practice (RFP 7): "[ETAP has] only been able to identify at most five e-mails to or from the named inventors from August 2005 or earlier. So to [ETAP] this appears like it's lacking. … If [Plaintiff] had a conception and reduction to practice date of August 2005, why are there no e-mails, no documentation of that?" (Tr. at 20:25-21:7.) Plaintiff would not provide an explanation of its search or why these documents are missing. (Tr. at 21:8-11.)

Paladin as Prior Art to Patent Office (RFP 7): These patents describe Plaintiff's prior art "Paladin" software, and the provisional applications even used the name "Paladin," but Plaintiff never told the Patent Office that that Paladin software was prior art. Plaintiff claimed in its portion of the Joint Stipulation that "Plaintiff disclosed Paladin to the patent office." (ECF No. 253 at 11:13-15.) During the meet-and-confer, ETAP sought to clarify this: "Paladin is prior art to the asserted patents, and it should have been disclosed to the patent office as prior art. And under the Form 1499 … if it was disclosed[,] the patent office would have looked at it, examined it, it would have been listed on the front page of the patent." (Tr. at 22:6-12.) Again, Plaintiff disagreed, but would not substantively respond. (Tr. at 22:14-19.) And no supporting documents have been produced indicating that Plaintiff told the Patent Office that Paladin is prior art, or disclosed the facts from which the Patent Office would have determined on its own that Paladin was prior art.

Source Code (RFP 11 & 14):  Plaintiff has failed to produce the crucial Paladin prior art source code, or explain the search it has made for this software, or describe when this source code was destroyed or lost. During the Court-ordered meet-and-confer, Plaintiff merely said that "Paladin prior art source code is not available." (Tr. at 26:11.)  ETAP wants to understand why this code is missing, but other code from that time period is available.  Again, Plaintiff refused to respond. (*See* Tr. at 26:24-28:5.)

Sales Information (RFP 11):  ETAP explained that Plaintiff "provided [] monthly income statements from 2008 to 2011 [including] P&Ls, profit and loss statements, sales by product statements post 2007, but none of these documents have been produced pre-2007." (Tr. at 28:17-21.)  And ETAP identified a June 2006 document discussing "23 years worth of existing customers," but this pre-July 2007 sales information has not been produced.  (Tr. at 28:21-29:6.)  Plaintiff had no substantive response, saying only it would get back to ETAP (which it has not). (Tr. at 29:9-11.)

Technical Documents (RFP 11): ETAP explained that documents in the production reference additional technical documents, such as "software development plans for FAA Paladin, software configuration management plans for FAA Paladin requirements for FAA Paladin …. bug reports or issues that … were at different clients. None of the supporting document has been produced.  None of the technical documentation has been produced." (Tr. at 30:4-11.)  ETAP also explained that these documents are "obviously critical to [ETAP's] defenses."  (Tr. at 31:23.)  It appears that Plaintiff contends that these documents are all subject to the FAA NDA, but Plaintiff has been unclear on this and has provided no description of Plaintiff's search. (Tr. at 31:24-32:9.)

Correspondence and Internal Notes Regarding Paladin (RFP 11):  ETAP asked about correspondence between Plaintiff and General Atomics and other

partners in the development of Paladin.  (Tr. at 32:10-13.)  Plaintiff was to follow-up on this issue.  (Tr. at 32:14-17.)  ETAP asked about Plaintiff's internal notes regarding the development of Paladin.  (Tr. at 32:18-22.)  Plaintiff would not explain the document collection process.  (Tr. at 33:10-34:12.)  Thus, ETAP is unable to determine if all correspondence and notes regarding the development of Paladin have been produced, but based on the documents produced to-date, it appears that many such documents are missing.

Testing Documentation (RFP 11):  ETAP asked about "testing" documents, because "no documents supporting any testing [has been produced], no testing plans, no testing results, no monitoring of Paladin, nothing along those lines."  (Tr. at 34:16-20.)  Plaintiff would not explain the document collection process, except that these documents may "fall under the NDA."  (Tr. at 34:21-36:8.)

Use, Display, Offer for Sale Pre-July 2007 of Paladin (RFPs 12 & 13):  ETAP identified a March 2006 document that talks "about five years of deployment and two years of successful on-the-job use" of Paladin.  (Tr. at 36:13-24.)  ETAP asked about this "five years of documentation that [ETAP has] not receiv[ed]."  (Tr. at 37:3-4.)  Plaintiff would not comment on these documents. (Tr. at 37:8-18.)

Agreements related to Paladin (RFP 205):  Plaintiff claims that it will produce all agreements between Plaintiff, the FAA, and/or General Atomics by June 26.  Plaintiff has made such promises before and broken them.  ETAP cannot comment on this production yet, as it is unclear what documents will be produced and if any will be withheld. (Tr. at 42:13-43:23.)  Plaintiff would not comment on why it has taken over a year to produce these documents. (Tr. at 42:22-43:3.)

ETAP seeks a Court order compelling the production of documents in response to ETAP's requests and specifically an explanation from Plaintiff of

where and how it conducted its search for responsive documents to explain why so many documents are missing.

**B.** <u>**Plaintiff's Position**</u>

The entirety of this section of Defendant's joint status report is improper. ***The sufficiency of Plaintiff's search for responsive documents is not at issue in this litigation.*** Defendant has not identified this issue in the context of any L.R. 37 letters to Plaintiff. Defendant did not raise this issue in its initial motion to compel. Defendant did not alert Plaintiff that it would raise this issue during the parties' June 14 meet and confer. Plaintiff pointed out these critical issues in a letter that it was forced to send to Defendant's counsel in response to their conduct. (A. Diaw Decl. Ex. A). During the parties' meet and confer, Defendant's counsel attempted to depose counsel for Plaintiff regarding Plaintiff's search for responsive documents during the Court ordered meet and confer. (Tr. 18:2-20:8). Plaintiff expressed its view that Defendant's questions were improper and well beyond the scope of the issues that Defendant raised in its motion to compel, but counsel for Defendant continued to badger counsel for Plaintiff with questions regarding Plaintiff's search for documents. (*See e.g.* Tr. 26:24-27:14, 38:8-39:17).

ETAP's outside counsel has proven itself incapable of following the text or spirit of the Federal Rules or the Local Rules of this Court. Almost every interaction or statement that the attorney makes strays toward the fringes of accuracy. The entirety of Defendant's initial motion to compel, and this purported joint status report demonstrate the significant challenges that Plaintiff's counsel has faced in its attempts to work with ETAP's counsel throughout this litigation. Counsel for Defendant's conduct forced counsel for Plaintiff to serve a letter on ETAP in an attempt to address these issues and prevent counsel for Defendant from resorting to improper tactics in the future. (A. Diaw Decl. Ex. A). ETAP's counsel has refused to conform its behavior to what is acceptable as demonstrated

by their refusal to strike this improper section from the joint status report.  (A. Diaw Decl. Ex. D, 1).

It is also critical to note that the documents at issue are over a decade old. Defendant ignores this fact and proceeds as if every corporate document that a patent Plaintiff ever generates must be kept by the company in perpetuity.  Plaintiff is unaware of any such requirement.

Plaintiff requests that the Court order Defendant's counsel to adhere to the Court's Local Rules with respect to discovery disputes and cease its pattern and practice of improper conduct and discovery abuses.  Plaintiff also requests its attorneys' fees connection with responding to this particular portion of the Joint Status Report.

## V.   **CONCLUSION**

### A.   **ETAP's Position**

ETAP met and conferred with Plaintiff on three separate occasions, including the recent June 14 meet-and-confer.  During all these meetings, it was clear that ETAP sought all pre-July 2007 Paladin and Paladin-related documents. But Plaintiff in the June 14 meet-and-confer confirmed that it is withholding documents.  As such, ETAP seeks a Court order compelling production of all documents, including any documents withheld based on any purported NDA or other confidentiality agreement, and an explanation of where and how Plaintiff searched for documents, including what search terms were used and what document locations were searched.  ETAP is entitled to these documents, as they are critical to ETAP's invalidity defenses and any claims for attorney's fees. ETAP further seeks its fees and costs related to its motion to compel, the Court-ordered meet and confer, and this joint report.

### B.   Plaintiff's Position

Defendant did not meet and confer prior to filing its initial motion to compel to identify areas of disagreement, potentially resolve those issues, and identify disputed issues to bring to the Court's attention.  Defendant's initial motion which does not identify any actual disputes is a direct result of Defendant's failure. Defendant's attempts to blame Plaintiff for the deficiencies in Defendant's filing should be rejected by the Court.  Defendant's attempt to raise new issues that it ***never previously identified to Plaintiff*** during the June 14 meet and confer, and defense counsel's insistence on including those new issues in this Joint Status Report is improper and undermines the text and spirit of this Court's Local Rules. Defendant's ongoing improper filings and conduct have undermined Plaintiff's ability to work with Defendant's counsel on a straightforward basis regarding any issues in this case.  In light of Defendant's counsel's conduct and continual abuse of the discovery process, Plaintiff requests that the Court deny Defendant's motion in its entirety and award Plaintiff its fees and costs related to Defendant's motion to compel, the June 14 meet and confer, and this Joint Status Report.

Dated July 6, 2017                        Respectfully submitted,

                                          By: /s/*Salumeh R. Loesch*

David W. Kesselman                        Klaus H. Hamm
(Cal. Bar No. 203838)                     (Cal. Bar No. 224905)
dkesselman@kbslaw.com                     klaus.hamm@klarquist.com
KESSELMAN BRANTLY                         Sarah E. Jelsema (*pro hac vice*)
  STOCKINGER LLP                          sarah.jelsema@klarquist.com
1230 Rosecrans Avenue, Suite 690          Salumeh Loesch (*pro hac vice*)
Manhattan Beach, CA 90266                 salumeh.loesch@klarquist.com
Telephone: 310-307-4555                   John D. Vandenberg (*pro hac vice*)
                                          john.vandenberg@klarquist.com
                                          KLARQUIST SPARKMAN, LLP
                                          121 S.W. Salmon Street, Suite 1600
                                          Portland, Oregon 97204
                                          Telephone: 503-595-5300

                                          Counsel for Defendant
                                          OPERATION TECHNOLOGY, INC.
                                          d/b/a ETAP

                                          By: /s/*Amadou Kilkenny Diaw*

Robert F. Ruyak (*pro hac vice*)          Don F Livornese
Richard Ripley (*pro hac vice*)           RUYAKCHERIAN LLP
Arthur Farrell (*pro hac vice*)           222 North Sepulveda Boulevard
Amadou Kilkenny Diaw (*pro hac vice*)     Suite 2000
Jacqueline M Lee (*pro hac vice*)         El Segundo, CA 90245
Brittany V. Ruyak (*pro hac vice*)        310-586-7689
RUYAK CHERIAN LLP                         donl@ruyakcherian.com
1700 K. Street NW, Suite 810
Washington, DC 20006
(202) 838-1560
robertr@ruyakcherian.com
rickr@ruyakcherian.com
tedf@ruyakcherian.com
amadoukd@ruyakcherian.com
jacquelinel@ruyakcherian.com
brittanyr@ruyakcherian.com

Korula Cherian
RUYAKCHERIAN LLP                          Counsel for Plaintiff POWER
1936 University Avenue                    ANALYTICS CORPORATION
Suite 350
Berkeley, CA 94704
(510) 944-0190
sunnyc@ruyakcherian.com

## <u>SIGNATURE CERTIFICATION</u>

Pursuant to Local Rule 5-4.3.4(a)(2)(i), Salumeh R. Loesch attests that concurrence in the filing of this document has been obtained from Amadou Kilkenny Diaw and that she is authorized to affix Mr. Diaw's, electronic signature to this document.


Dated July 6, 2017

By: */s/Salumeh R. Loesch*
Salumeh R. Loesch

1

**PROOF OF SERVICE**

I am employed in the County of Multnomah, State of Oregon. I am over the age of 18 and not a party to the within action. My business address is 121 SW Salmon Street, Suite 1600, Portland, Oregon 97204.

On July 6, 2017, I served the foregoing document(s) described as:

**JOINT STATUS REPORT PURSUANT TO ECF NO. 257**

on the interested parties to this action, by electronic mail to each addressee named below, as follows:

Robert F. Ruyak *(pro hac vice)*
Richard Ripley *(pro hac vice)*
Arthur Farrell *(pro hac vice)*
Amadou Kilkenny Diaw *(pro hac vice)*
Jacqueline M Lee *(pro hac vice)*
Brittany V. Ruyak
RUYAK CHERIAN LLP
1700 K Street NW, Suite 810
Washington, DC 20006
(202) 838-1560
robertr@ruyakcherian.com
rickr@ruyakcherian.com
tedf@ruyakcherian.com
amadoukd@ruyakcherian.com
jacquelinel@ruyakcherian.com
brittanyr@ruyakcherian.com

Korula Cherian
RUYAKCHERIAN LLP
1936 University Avenue
Suite 350
Berkeley, CA 94704
(510) 944-0190
sunnyc@ruyakcherian.com

Don F Livornese
RUYAKCHERIAN LLP
222 North Sepulveda Boulevard
Suite 2000
El Segundo, CA 90245
310-586-7689
donl@ruyakcherian.com

Attorneys for Plaintiff POWER ANALYTICS CORPORATION

Michael J Sacksteder
Adam Michael Lewin
FENWICK AND WEST LLP
555 California Street, 12th Floor
San Francisco, CA 94104
415.875-2434
alewin@fenwick.com
msacksteder@fenwick.com

Joseph Stephen Belichick
FENWICK AND WEST LLP
801 California Street
Mountain View, CA 94041
650-988-8500
jbelichick@fenwick.com

Attorneys for Defendant OSISOFT, LLC

1

Benjamin J Bradford *(pro hac vice)*
Michael G Babbitt *(pro hac vice)*
Reginald J Hill *(pro hac vice)*
Lisa M. Schoedel *(pro hac vice)*
JENNER AND BLOCK LLP
353 North Clark Street
Chicago, IL 60611
312-840-7224
bbradford@jenner.com
mbabbitt@jenner.com
rhill@jenner.com
lschoedel@jenner.com

Joshua M Segal *(pro hac vice)*
Lee K Van Voorhis *(pro hac vice)*
JENNER AND BLOCK LLP
1099 New York Avenue NW Suite 900
Washington, DC 20001
202-639-6089
jsegal@jenner.com
lvanvoorhis@jenner.com

Kirsten Hicks Spira
Michael P McNamara
Nick Saros
JENNER AND BLOCK LLP
633 West Fifth Street Suite 3600
Los Angeles, CA 90071
213-239-5100
KSpira@jenner.com
mmcnamara@jenner.com
nsaros@jenner.com

Attorneys for Defendant Schneider Electric USA Inc.

☒    **BY COURT'S CM/ECF SYSTEM**: Pursuant to the Local Rule, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which sent notification of that filing to the registered CM/ECF users in this action to be served by the CM/ECF System.

☐    **BY ELECTRONIC MAIL**: I caused such documents to be transmitted via electronic mail to the offices of the addressee(s) at the listed electronic mail address(es).

☐    **BY U.S. MAIL**: I deposited such envelope in the mail at Portland, Oregon. The envelopes were mailed with postage thereon fully prepaid.

☒    **Federal**: I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the offices of Klarquist Sparkman, LLP and Salumeh R. Loesch, at whose direction the service was made.

/s/Linda Schroeder
Print Name

*/s/Linda Schroeder*
Signature