1  David W. Kesselman (SBN 203838)
   *dkesselman@kbslaw.com*
2  Trevor V. Stockinger (SBN 226359)
   *tstockinger@kbslaw.com*
3  KESSELMAN BRANTLY STOCKINGER LLP
   1230 Rosecrans Ave., Suite 690
4  Manhattan Beach, CA 90266
   Telephone: (310) 307-4555
5  Facsimile: (310) 307-4570

6  *Attorneys for Defendant*
   Operation Technology, Inc.
7  d/b/a ETAP

8  Michael J. Sacksteder (SBN 191605)
   *msacksteder@fenwick.com*
9  Joseph S. Belichick (SBN 229371)
   *jbelichick@fenwick.com*
10 Adam M. Lewin (SBN 284905)
   *alewin@fenwick.com*
11 FENWICK & WEST LLP
   555 California Street, #1200
12 San Francisco, CA 94104
   Telephone: (415) 875-2300
13 Facsimile: (415) 281-1350

14 *Attorneys for Defendant*
   OSIsoft, LLC

15 [Additional Counsel Listed on Signature Pages]

16        **UNITED STATES DISTRICT COURT**

17        **CENTRAL DISTRICT OF CALIFORNIA**

18

19 POWER ANALYTICS                    CASE NO. 8:16-cv-01955-JAK-FFMx
   CORPORATION,
20                                    *Honorable John A. Kronstadt*
                      Plaintiff,
21      v.                           **DEFENDANTS OPERATION
                                     TECHNOLOGY, INC. d/b/a ETAP
22 OPERATION TECHNOLOGY INC.         AND OSISOFT LLC'S NOTICE OF
   d/b/a ETAP; OSISOFT LLC; and      MOTION AND MOTION TO
23 SCHNEIDER ELECTRIC USA, INC.,     DISMISS SECOND AMENDED
                                     COMPLAINT
24                    Defendants.
                                     Date:      October 2, 2017
25                                   Time:      8:30 a.m.
                                     Courtroom: 10B
26

27

28

―――――――――――――――――――――――――――――――――――――
DEFENDANTS OPERATION TECHNOLOGY, INC. d/b/a ETAP AND OSISOFT LLC'S
MOTION TO DISMISS SECOND AMENDED COMPLAINT

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that on October 2, 2017 at 8:30 a.m., Defendants Operation Technology, Inc. d/b/a ETAP ("ETAP") and OSISoft, LLC ("OSIsoft") will bring for hearing this Motion to Dismiss the Second Amended Complaint before the Honorable John A. Kronstadt, in courtroom 10B at First Street Courthouse, 350 W. First Street, Los Angeles, California 90012.

Defendants, by and through their undersigned counsel, hereby move this Court pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss all remaining claims (Counts V-XV) in Plaintiff's Second Amended Complaint for failure to state a claim. Among other things, the Sherman Act Section 1 claims fail to properly allege a single element of those claims. The Second Amended Complaint fails to remedy any of the deficiencies found by this Court when it dismissed the First Amended Complaint. The remaining counts similarly fail to state a claim because, among other things, they are derivative of the deficiently-pleaded Sherman Act Section 1 claims.

This Motion is based on the attached memorandum of points and authorities, the Declaration of Trevor V. Stockinger and attached exhibits, any matters of which this Court may take judicial notice, and such additional argument as may be presented at or before the hearing on this matter.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

DEFENDANTS OPERATION TECHNOLOGY, INC. d/b/a ETAP AND OSISOFT, LLC'S
MOTION TO DISMISS SECOND AMENDED COMPLAINT

1          This motion is made following the conference of counsel pursuant to L.R.

2    7-3, which took place on July 10, 2017.

3

4    DATED:  July 17, 2017           Respectfully submitted,

5                                           KESSELMAN BRANTLY STOCKINGER LLP

6

7                                       By:   */s/ Trevor V. Stockinger*

8                                            Trevor V. Stockinger

9

10   Michael J. Sacksteder         David W. Kesselman

11   Joseph S. Belichick           Trevor V. Stockinger

    Adam M. Lewin               KESSELMAN BRANTLY STOCKINGER LLP

12   FENWICK & WEST LLP       1230 Rosecrans Ave., Suite 690

13   555 California Street         Manhattan Beach, CA 90266

    San Francisco, CA 94104     Telephone: (310) 307-4555

14   Telephone: (415) 875-2300

15                             John W. Vanderberg (*Pro Hac Vice*)

    *Counsel for Defendant*      Salumeh R. Loesch (*Pro Hac Vice*)

16   OSIsoft , LLC               KLARQUIST SPARKMAN, LLP

17                             121 S.W. Salmon St., Ste. 1600

                               Portland, OR 97204

18                             Telephone: (503) 595-5300

19                             *Counsel for Defendant*

20                             OPERATION TECHNOLOGY, INC.,

                               d/b/a ETAP

21

22

23

24

25

26

27

28

DEFENDANTS OPERATION TECHNOLOGY, INC. d/b/a ETAP AND OSISOFT, LLC'S
MOTION TO DISMISS SECOND AMENDED COMPLAINT

# TABLE OF CONTENTS

Page

INTRODUCTION .................................................................................. 1

STATEMENT OF ALLEGATIONS AND PROCEDURAL HISTORY ............. 1

I.     Defendants' First Motion to Dismiss and Plaintiff's First Amendment. ...... 1

II.    This Court Granted Defendants' Second Motions to Dismiss. ................... 4

III.   Plaintiff's Third Attempt to State a Claim. ................................... 6

ARGUMENT ......................................................................................... 9

I.     The SAC Fails to State Plausible Theories Based on Facts. ........................ 9

II.    The SAC Still Fails to State Claims for Antitrust Violations. ..................... 9

       A.     The SAC Fails to Allege Antitrust Injury and Standing. ................... 9

       B.     The SAC Fails to Sufficiently Plead Facts Supporting Sherman
              Act Section 1 Violations. ................................................. 12

              1.     The SAC Pleads Away an Exclusive Dealing Claim. ........... 13

              2.     Plaintiff Fails to Allege a Specific Term Amounting to
                     Exclusivity. ..................................................... 13

              3.     The SAC Fails to Allege Preclusion From a Relevant
                     Market. .......................................................... 17

                     a.     The SAC Still Fails to Allege Foreclosure From
                            All Selling Opportunities. ............................ 17

                     b.     The SAC Still Fails to Allege Foreclosure Even in
                            the Alleged Narrow Markets. ........................ 19

              4.     The SAC Fails to Allege Facts Showing Harm to
                     Competition. .................................................... 20

       C.     The SAC Fails to Sufficiently Plead Facts Supporting Sherman
              Act Section 2 Violations. ................................................. 20

III.   The SAC Still Fails to Allege a California Cartwright Act Claim. ........... 21

IV.    The SAC Still Fails to Allege Violations of North Carolina's UDTPA. .... 21

V.     The SAC Fails to Allege Violations of California's UCL (Count X) ........ 22

i                    Case No. 8:16-cv-01955-JAK-FFMx
DEFENDANTS OPERATION TECHNOLOGY, INC. d/b/a ETAP AND OSISOFT LLC'S
MOTION TO DISMISS SECOND AMENDED COMPLAINT

TABLE OF CONTENTS <em>(con't)</em>

<u>Page</u>

VI.    The SAC Still Fails to State a Claim for Tortious Interference.................. 22

VII.   The SAC Still Fails to Allege a Claim of Civil Conspiracy (Count XV)............................................................................ 23

VIII.  This Court Should Dismiss All Non-Patent Claims With Prejudice.......... 23

CONCLUSION.................................................................................. 24

DEFENDANTS OPERATION TECHNOLOGY, INC. d/b/a ETAP AND OSISOFT, LLC'S MOTION TO DISMISS SECOND AMENDED COMPLAINT

TABLE OF AUTHORITIES

Page(s)

<u>Cases</u>

*Abagninin v. AMVAC Chem. Corp.*,
  545 F.3d 733 (9th Cir. Sept. 24, 2008)..............................................................24

*Aerotec Int'l, Inc. v. Honeywell Int'l, Inc.*,
  836 F.3d 1171 (2016) ...................................................................................*passim*

*Allied Orthopedic Appliances Inc. v. Tyco Health Care Group*,
  592 F.3d 991 (9th Cir. 2010)..............................................................11, 13, 21

*Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*,
  7 Cal. 4th 503 (1994)........................................................................................23

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ......................................................................................9, 15

*Ass'n of Wash. Pub. Hosp. Dists. v. Philip Morris, Inc.*,
  241 F.3d 696 (9th Cir. 2001)............................................................................12

*Auto Sound Inc., v. Audiovox Elecs. Corp.*,
  2012 U.S. Dist. Lexis 196056 (C.D. Cal. Dec. 3, 2012)............................21, 22

*Barry Wright Corp. v. ITT Grinnell Corp.*,
  724 F.2d 227 (1st Cir. 1983) (Breyer, J.) ........................................................10

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ......................................................................................9, 14

*Berryman v. Merit Property Management, Inc.*,
  152 Cal. App. 4th 1544 (2007)........................................................................22

*Beverage Sys. Of the Carolinas, LLC v. Associated Bev. Repair, LLC*,
  368 N.C. 693 (2016)...................................................................................22, 23

*Brunswick Corp. v. Pueblo-Bowl-O-Mat, Inc.*,
  429 U.S. 477 (1977) ...........................................................................................9

*Creston Elecs. Inc. v. Cyber Sound & Sec. Inc.*,
  2012 U.S. Dist. LEXIS 16132 (D.N.J. Feb. 9, 2012)......................................14

*Eastern Foods Servs., Inc. v. Pontifical Catholic Univ. Servs. Ass'n*,
  357 F.3d 1 (1st Cir. 2004) ...............................................................................18

DEFENDANTS OPERATION TECHNOLOGY, INC. d/b/a ETAP AND OSISOFT, LLC'S
MOTION TO DISMISS SECOND AMENDED COMPLAINT

1

TABLE OF AUTHORITIES *(con't)*

2

3

Page(s)

4

<u>Cases</u>

5

*General Talking Pictures Corp. v. Western Electric Co.,*

6

    304 U.S. 175 (1938) ...................................................................................11, 16

7

*Int'l Constr. Prods., LLC v. Caterpillar, Inc.,*

    2016 U.S. Dist. LEXIS 6826 (D. Del. Jan. 21, 2016).......................................20

8

*J.L. Terrel's v. Sherwin-Williams Auto. Finishes Corp.,*

9

    2004 U.S. Dist. LEXIS 6411 (E.D. Penn. Mar. 30, 2004) ................................14

10

*Knievel v. ESPN,*

11

    393 F.3d 1068 (9th Cir. 2005).............................................................................14

12

*Korea Supply Co. v. Lockheed Martin Corp.,*

13

    29 Cal. 4th 1134 (2003).......................................................................................23

*LePage's, Inc. v. 3M,*

14

    324 F.3d 141 ........................................................................................................16

15

*Les Shockley Racing, Inc. v. Nat'l Hot Rod Ass'n,*

16

    884 F.2d 504 (9th Cir. 1989)................................................................................9

17

*Lovesy v. Armed Forces Benefit Ass'n,*

18

    2008 U.S. Dist. LEXIS 93479 (N.D. Cal. Mar. 13, 2008)...............................22

19

*Oceans One Eleven, LLC v. Beach Mart, Inc.,*

    2008 U.S. Dist. Lexis 82416 (E.D.N.C. Oct. 16, 2008)...................................22

20

*Omega Envtl., Inc. v. Gilbarco, Inc.,*

21

    127 F.3d 1157 (9th Cir. 1997)......................................................12, 13, 17, 19

22

*PNY Techs., Inc. v. Sandisk Corp.,*

23

    2014 U.S. Dist. LEXIS 58108 (N.D. Cal. Apr. 25, 2014) ...............................19

24

*Salameh v. Tarsadia Hotel,*

    726 F.3d 1124 (9th Cir. 2013)......................................................................23, 24

25

*Superior Performers, Inc. v. Meaike,*

26

    2014 U.S. Dist. LEXIS 158862 (M.D.N.C. Nov. 10, 2014) ............................23

27

28

DEFENDANTS OPERATION TECHNOLOGY, INC. d/b/a ETAP AND OSISOFT, LLC'S
MOTION TO DISMISS SECOND AMENDED COMPLAINT

1

TABLE OF AUTHORITIES <i>(con't)</i>

2

Page(s)

3

<u>Cases</u>

4

*Stewart v. Gogo, Inc.*,

5

    2013 U.S. Dist. LEXIS 51895 (N.D. Cal. Apr. 10, 2013) ...............................18

6

*T. Harris Young & Assocs. v. Marquette Elecs., Inc.*,

7

    931 F.2d 816 (11th Cir. 1991).........................................................................17

8

*United States v. Colgate & Co.,*
    250 U.S. 300 (1919) ........................................................................................11

9

*United States v. Dentsply Int'l, Inc.,*

10

    399 F.3d 181 (3rd Cir. 2005)...........................................................................16

11

*United States v. Westinghouse Elec. Corp.,*

12

    648 F.2d 642 (9th Cir. 1981)....................................................................11, 16

13

*ZF Meritor LLC v. Eaton Corp.,*
    696 F.3d 254 (3rd Cir. 2012)....................................................................13, 15

14

<u>Statutes</u>

15

Cal. Bus. & Prof. Code § 17200 ..........................................................................22

16

17

<u>Other Authorities</u>

18

Order re Defendants Operation Technology, Inc. and Osisoft, LLC's

19

    Second Motions to Dismiss, May 10, 2017 (Dkt. 227).............................*passim*

20

21

22

23

24

25

26

27

28

DEFENDANTS OPERATION TECHNOLOGY, INC. d/b/a ETAP AND OSISOFT, LLC'S
MOTION TO DISMISS SECOND AMENDED COMPLAINT

## **INTRODUCTION**

Plaintiff's third attempt to state non-patent law claims fails. Its Second Amended Complaint has ballooned to over-110 pages, now including multitudinous graphics and citation to inapplicable legal standards. Yet, this sound and fury fails to remedy a single pleading deficiency the Court found in dismissing Plaintiff's last complaint. The allegations – which are still focused on purported anticompetitive, exclusive dealing arrangements – fail to plausibly allege:

- Any agreement – beyond run-of-the-mill contracts – between ETAP, and OSI or Schneider;
- Any specific terms amounting to exclusivity in any alleged contract;
- OSI and Schneider were coerced into entering agreements with ETAP;
- Any alleged agreements are not easily terminable;
- A market properly defined by product distinction, rather than customer distinction, by which to determine foreclosure or market power;
- Power Analytics' foreclosure from selling to the markets even as defined;
- Harm to competition, rather than harm merely to Plaintiff; and
- Harm to Plaintiff from anticompetitive conduct as opposed to competition on the merits.

Any one of these deficiencies merits dismissal. Taken together, they show Plaintiff has no possibility of ever stating a claim. This Court should dismiss with prejudice Plaintiff's Second Amended Complaint.[1]

## **STATEMENT OF ALLEGATIONS AND PROCEDURAL HISTORY**

### **I.      Defendants' First Motion to Dismiss And Plaintiff's First Amendment.**

Power Analytics Corporation ("Plaintiff") filed its Original Complaint on March 21, 2016 in the District of Delaware. *See* Dkt. 1. The non-patent claims

---

[1] OSI joins this Motion in its entirety, and Section II of Schneider's Motion to Dismiss, which together address all claims directed against OSI. OSI seeks dismissal of all claims against it for the same reasons.

DEFENDANTS OPERATION TECHNOLOGY, INC. d/b/a ETAP AND OSISOFT, LLC'S
MOTION TO DISMISS SECOND AMENDED COMPLAINT

centered on purported exclusive dealing arrangements between OSI or Schneider, and ETAP. Defendants moved to dismiss all non-patent claims and moved to transfer venue to this Court. *See* Dkt. 17, 19, 21. ETAP and OSI's motion attached the agreements reference in the complaint, which stated they were non-exclusive. *See* Dkt. 24. Instead of opposing, Plaintiff filed a First Amended Complaint ("FAC"). *See* Dkt. 38.

The antitrust allegations in the FAC concerned software used for various functions in electrical power grids. FAC ¶ 13-25. The OSI "arrangement" allegedly affected the "NUPIC Market" for software certified by the Nuclear Regulatory Commission for use in Nuclear Power facilities. *See id.* ¶¶ 33, 36. The Schneider "arrangement" allegedly affected the "HR [High Reliability] Data Center Market." *See id.* ¶ 43, 77. The FAC alleged that both markets contain "multiple product classifications" of "Grid Design and Management Products." *Id.* ¶14. These included software for "engineering, design, and modelling of Power Grids," *id.* ¶ 15 ("Grid Design Products"), software for "real time monitoring, modeling, simulation and visualization of … events" during grid operation, *id.* ¶ 19 ("Real Time Products"), and "Historian Software" for collecting and storing data for real time monitoring, *id.* ¶ 24. ETAP allegedly sold Grid Design and Real Time Products for use with Historian Software. *Id.* ¶ 17, 23. OSI allegedly sold Historian Software. *Id.* ¶ 24. Schneider allegedly was an electrical original equipment manufacturer ("EOEM"), which supplies hardware, software and equipment to construct "HR Data Centers." *See id.* ¶ 71.

**The Alleged OSI-ETAP Agreement:** The FAC alleged that ETAP entered an agreement with OSI to become OSI's "OEM [Original Equipment Manufacturer] partner." FAC ¶ 65. This agreement was alleged to be "*de facto* exclusive." *Id.* at ¶ 67. But, the FAC did not allege specific terms causing exclusivity. It also did not allege that OSI was coerced into entering the agreements or could not easily terminate the agreements.

DEFENDANTS OPERATION TECHNOLOGY, INC. d/b/a ETAP AND OSISOFT, LLC'S
MOTION TO DISMISS SECOND AMENDED COMPLAINT

1    Instead, the FAC suggested only that after entering the agreement with

2   ETAP, OSI refused to partner with Plaintiff and serve as a "critical bridge" so that

3   customers could use Plaintiff's and OSI's software together. *See Id.* ¶¶ 63, 64, 67.

4   Significantly, other contradictory allegations stated that Plaintiff previously

5   "achieved [its] objective" of having Plaintiff's software "work[] seamlessly with

6   OSI's PI System" by paying to access OSI's code. *Id.* ¶ 63. The FAC was silent as

7   to why Plaintiff chose to stop paying OSI for access and even whether it needed to

8   keep paying to maintain interconnectivity.

9    Further, the FAC did not allege that the OSI-ETAP agreement foreclosed

10   Plaintiff from the full range of selling opportunities. The NUPIC Market was

11   defined as "the market for the sale and servicing of Power Grid Design and

12   Management Products, including Grid Design Products and Real Time Products, to

13   customers who can only purchase NUPIC-certified Power Grid Design and

14   Management Products;" the customers were "primarily nuclear power generation

15   facilities…." FAC ¶ 33. Thus, it defined the market based on distinctions among

16   customers, not products. Other allegations made clear that the same products were

17   sold to customers outside of the NUPIC Market, including to the FAA, Camp

18   Pendleton, Chevron and EOEMs, like Schneider, who supply software for HR Data

19   Centers. *See id.* ¶ 71 & 80; *see also id.* ¶ 13.

20    **The Alleged Schneider-ETAP Agreement:** The FAC similarly claimed

21   Schneider and ETAP entered a "*de facto* exclusive" "cooperative agreement." FAC

22   ¶¶ 74, 76. The FAC did not allege specific terms of exclusivity, that Schneider was

23   coerced to agree, or that Schneider could not easily terminate the agreement. The

24   FAC alleged only that, after entering the agreement, Schneider unilaterally

25   "refused to recommend or use" Plaintiff's software despite prior business dealings.

26   *Id.* ¶75. Yet, the FAC acknowledged that other competitors, like Eaton, could

27   compete despite the agreement, and Plaintiff lost to that competition. *Id.* ¶ 72.

28

DEFENDANTS OPERATION TECHNOLOGY, INC. d/b/a ETAP AND OSISOFT, LLC'S
MOTION TO DISMISS SECOND AMENDED COMPLAINT

1   The HR Data Center Market allegedly included the same Real Time and
2   Grid Design Products as the NUPIC Market. *Id.* ¶ 43. It was defined by customer
3   distinction to include only buyers of those products, like Schneider, Eaton and
4   ABB, who supplied that software to downstream HR Data Center customers. *See,*
5   *e.g., Id.* ¶ 71-72.

6   **II.   This Court Granted Defendants' Second Motions To Dismiss.**

7   On July 22, 2016, Defendants again moved to dismiss all non-patent claims.
8   Dkt. 42, 44. While the second Motions to Dismiss were pending, the District of
9   Delaware granted ETAP's motion to transfer the case to this District. Dkt. 73. This
10  Court then granted Defendants' Second Motions to Dismiss, in their entirety, on
11  May 10, 2017. *See* Dkt. 227 ("Order").

12  **Sherman Act Section 1 Based On The Alleged OSI-ETAP Agreement:**
13  The Court dismissed the exclusive dealing claim against OSI and ETAP for
14  multiple reasons. The Court first held that Plaintiff had failed to allege any specific
15  terms in the agreement causing exclusivity. Order at 14-15. It reasoned that OSI's
16  refusal to partner with Plaintiff did not suggest exclusivity. *Id.* at 14. Moreover, it
17  held that a mere allegation that OSI is a "critical bridge" is not enough; case law
18  makes clear Plaintiff had to allege "specific terms in the agreements or particular
19  conduct by the defendants with respect to critical bridges" to state a claim. *See id.*
20  at 14-15.

21  Next, the Court held that the FAC failed to allege that the agreement
22  foreclosed Plaintiff's ability to make sales. The Court stated that the NUPIC
23  Market did not properly encompass "the full range of selling opportunities
24  reasonably open to rivals…." *Id.* at 15. Instead, it was "limited to a portion of
25  customers" rather than a "distinction in the product sold to those customers." *Id.* at
26  16; *see id.* at 17-18. The Court noted that the same products were allegedly sold
27  both in the NUPIC and HR Data Center Markets, as well as other markets. *Id.* at
28

16. The Court recognized that, during oral argument, Plaintiff's counsel confirmed that competitors sold the same products to customers in different markets. *Id.* The Court, thus, concluded that the OSI-ETAP agreement did not exclude Plaintiff from the entire market for its products. *Id.* at 17-18.

The Court went on to explain that, even if the markets were not implausibly narrow, the FAC failed to allege that "ETAP's strategic alignment with OSI … prevented Plaintiff from convincing customers to switch [to Plaintiff's] products." *Id.* at 18. The FAC alleged to opposite: Plaintiff had "negotiated directly with customers" and "previously worked with OSI to integrate its products with OSI's historian software." *Id.* at 17-18.

The Court further held that the FAC had failed to allege the OSI-ETAP agreement harmed competition. *Id.* at 18-19. It held that the FAC failed to include necessary allegations that OSI had been coerced into entering the agreement and that the agreement was not easily terminable. *Id.* In addition, it held that the FAC had not adequately alleged that any Defendants had market power. *Id.* at 18, 21.

Finally, the Court concluded that Plaintiff had not shown antitrust injury or standing to even bring its claim against ETAP and OSI. *Id.* at 19-20. The Court stated that the allegations did not show that competition, rather than just Plaintiff, was harmed. *Id.* It specifically noted that the FAC failed to allege OSI had "not entered agreements with third parties that offer products that compete with those of Plaintiff and Etap." *Id.* at 20. Instead, the FAC alleged that some other competitors could compete despite the agreements. *Id.* at 20. The Court also rejected that Plaintiff could claim standing because of alleged costs to customers. *Id.* at 20.

**Sherman Act Section 1 Based On The Alleged Schneider-ETAP Agreement:** The Court dismissed the exclusive dealing claim relating to the Schneider-ETAP Agreement for many of the same reasons as the OSI-ETAP Agreement. It held Plaintiff failed to allege any specific terms creating exclusivity. Order at 12-14. It stated, in particular, that although the FAC alleged Schneider

and ETAP had previous business dealings, it failed to allege "how they relate to the claimed exclusivity." *Id.* at 13.

The Court also found the allegations of foreclosure to be inadequate because the HR Data Center Market was defined based on customers, and the same products were sold to customers outside that market. *Id.* at 15-17. Thus, as with the claim based on the OSI-ETAP arrangement, the Court concluded that the FAC did not plausibly allege that the Schneider-ETAP agreement "operate[d] to exclude Plaintiff from the entire market for [Plaintiff] products, as opposed to a subset of potential customers." *Id.* at 17.

The Court finally concluded that the FAC failed to properly allege that the Schneider-ETAP agreement harmed competition because it was not alleged to be coerced or difficult to terminate. *Id.* at 18-19. Moreover, the Court held Plaintiff lacked standing to pursue exclusive dealing claims relating to the Schneider-ETAP agreement for the same reasons as to the OSI-ETAP agreement. *Id.* at 19-20.

**Other claims:** The Court dismissed the Sherman Act Section 2 claims for monopolization for the same reasons it dismissed the Section 1 claims. Order at 21. It further held that the attempted monopolization claim failed because the FAC had not adequately alleged specific intent. *Id.* at 21. It dismissed the Clayton Act Section 3 claim with prejudice because that statute covers only tangible goods, and software is not a tangible good. *Id.* at 22-23. It dismissed the Lanham Act claim for failure to allege customer deception or reliance on any misrepresentation, among other reasons. *Id.* at 23-24. Finally, the Court dismissed each of Plaintiff's remaining state law claims because, among other things, each were derivative of the Sherman Act or Lanham Act claims. *Id.* at 24-27.

## III.   Plaintiff's Third Attempt To State A Claim.

Plaintiff has now amended its complaint a third time. *See* Dkt. 285. Despite adding over 100 new paragraphs of allegations, the Second Amended Complaint ("SAC") remains the same in substance as the FAC. The allegations still center on

DEFENDANTS OPERATION TECHNOLOGY, INC. d/b/a ETAP AND OSISOFT, LLC'S
MOTION TO DISMISS SECOND AMENDED COMPLAINT

1  purported exclusive dealing arrangements ETAP entered with Schneider and OSI.

2  Yet, the SAC now expressly alleges that these agreements are "not vertical

3  agreement[s] between a buyer and seller, or a manufacturer and a retailer." SAC ¶

4  78, 184.

5      **The Alleged OSI-ETAP Agreement:** The SAC still alleges that ETAP and

6  OSI agreed to enter a "partnership." *Id.* ¶ 80. Yet, the SAC still has not alleged any

7  specific terms amounting to exclusivity. Instead, the SAC focuses on purported

8  "unreasonable impediments and conditions" in a "Term Sheet" and "Memorandum

9  of Understanding" – non-binding documents created before the actual agreements.

10  *Id.* ¶ 86-90. The only specific term discussed is that the "Term Sheet" requires

11  ETAP to include language in its "Standard License Agreement" that if an ETAP

12  customer purchased an OSI-ETAP combined product, the OSI product could only

13  be used with that ETAP product. *Id.* ¶ 87. The customer would have to purchase

14  another license from OSI to use its product with a third party product. *Id.* ¶ 88. The

15  SAC leaps to call this a "contractually imposed penalty," *id.* ¶ 89, despite that the

16  allegations do not state what the license fee is and that this allegation suggests

17  customers could in fact license from OSI if they used a product other than ETAPs.

18      As with the FAC, the SAC continues to allege only that, after announcement

19  of the agreement, OSI refused to act as a "critical bridge" to the market. *See, e.g.*,

20  SAC ¶¶ 77, 93, 101. Other allegations continue to contradict this statement.  For

21  example, the SAC still alleges that Plaintiff's software "worked seamlessly" with

22  OSI's PI System until 2014. *Id.* ¶ 95, 307. The SAC still fails to explain why such

23  "seamless" integration does not work today.

24      The SAC also still defines the impacted markets based on customer

25  distinction. The OSI agreement allegedly impacts the same "NUPIC Markets," *id.*

26  ¶ 79 – although now the SAC alleges two separate NUPIC markets, one for Grid

27  Design Products and another for Real Time Products, *id.* ¶ 52. Inconsistently, the

28  SAC now alleges there is no competition in the Real Time NUPIC Market because

DEFENDANTS OPERATION TECHNOLOGY, INC. d/b/a ETAP AND OSISOFT, LLC'S
MOTION TO DISMISS SECOND AMENDED COMPLAINT

"there are no Real Time Products that have successfully completed a NUPIC audit." *Id.* ¶ 65.

**The Alleged Schneider-ETAP Agreement:** The SAC continues to allege that after ETAP and Schneider announced an "agreement," Schneider "refused to recommend or use Power Analytics' … Products…." SAC ¶ 201. It is not clear what agreement is alleged or what specific terms lead to exclusivity. For example, while the SAC cites a press release, that marketing piece states only that Schneider has unilaterally "chosen" to "standardize" its own "Services Division" on ETAP products. *Id.* ¶ 190. The SAC further continues to acknowledge that Plaintiff and other competitors may still sell to Eaton and "other suppliers of turnkey EMS Platforms" despite any agreement. *Id.* ¶ 141. The SAC does contain new detail concerning inchoate business discussions dating from two years before any alleged anticompetitive acts between Schneider and Plaintiff, SAC ¶¶ 179-183, but it still does nothing to link Schneider's alleged "refusal" to continue those discussions to an exclusive dealing arrangement with ETAP. In any case, there are no allegations that Schneider was coerced or that any agreement is not easily terminable.

The alleged Schneider-ETAP agreement now allegedly affects the market for "the sale and servicing of Energy Management System … platforms" ("EMS Platform Market") and at least four "alternative" narrower markets, including a "Data Center" Market. SAC ¶¶ 107, 126, 150, 162, 166, 170, 174, 328, 329. Like the FAC, those markets are expressly defined by "common characteristics" among "customers" or "[e]nd [u]ser[s]." SAC ¶ 109, 111, 150. The SAC also continues to acknowledge that the same Real Time and Grid Design products are sold in both the EMS Platform and NUPIC Markets, as well as to numerous types of customers not alleged to be impacted by the alleged agreements, including the FAA, Camp Pendleton, and Chevron. SAC ¶¶ 18, 220.

Based on these allegations, the SAC still alleges ETAP, OSI and Schneider violated Sherman Act Section 1, violated North Carolina's Unfair and Deceptive

DEFENDANTS OPERATION TECHNOLOGY, INC. d/b/a ETAP AND OSISOFT, LLC'S
MOTION TO DISMISS SECOND AMENDED COMPLAINT

Trade Practices Act, and engaged in "civil conspiracy." *Id.* ¶¶ 293-349; 369-373; 381-386. It continues to assert a claim for violation of Sherman Act Section 2 against ETAP alone. *Id.* ¶¶ 352-68. The SAC also continues to assert a claim for interference with prospective economic relations, now against all Defendants. *Id.* ¶¶ 376-80. The SAC drops previously-alleged Lanham Act and trade theft claims, but it adds claims under California's Cartwright Act and California's Unfair Competition Law against all Defendants. *Id.* ¶¶ 350-51; 374-75.

<u>**ARGUMENT**</u>

**I.    The SAC Fails to State Plausible Theories Based on Facts.**

The allegations fail to satisfy basic pleading requirements. They do not state a "facial[ly] plausible" claim based on "factual content" that raises more than a "sheer possibility" of unlawful conduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The SAC's allegations that do not exclude the possibility that the alleged anticompetitive behavior is in line with a wide swatch of rational and competitive business strategy will not do. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 551-556. (2007). Similarly, allegations "that offer[] 'labels and conclusions' or 'a formulaic recitation of elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678. These requirements are particularly important due to the unusually high cost of discovery in antitrust cases. *Twombly*, 550 U.S. at 558-59.

**II.   The SAC Still Fails to State Claims for Antitrust Violations.**

**A.    The SAC Fails to Allege Antitrust Injury and Standing.**

The SAC still fails to allege that Plaintiff has suffered antitrust injury or has standing to assert its Sherman Act claims. "The antitrust laws … were enacted for the protection of competition not competitors." Order at 19 (quoting *Brunswick Corp. v. Pueblo-Bowl-O-Mat, Inc.*, 429 U.S. 477, 488 (1977)); *see Les Shockley Racing, Inc. v. Nat'l Hot Rod Ass'n*, 884 F.2d 504, 508 (9th Cir. 1989) ("[R]emoval of one or a few competitors need not equate with injury to competition," *quoted in* Order at 19-20). Thus, this Court held: "To state an

**DEFENDANTS OPERATION TECHNOLOGY, INC. d/b/a ETAP AND OSISOFT, LLC'S MOTION TO DISMISS SECOND AMENDED COMPLAINT**

1    antitrust violation, [the complaint] must plausibly demonstrate that the Defendants'

2    conduct caused harm to competition, not just to Plaintiff." Order at 19.

3         This Court held that the FAC failed to allege antitrust injury and standing

4    because it alleged only that Schneider and OSI refused to partner with Plaintiff. *Id.*

5    at 19-20. Plaintiff had not stated that Schneider and OSI refused to partner with

6    other third parties in the same markets, and in fact alleged that "some others have

7    been able to compete." *Id.* at 20. The Court further found that the allegations were

8    even insufficient to support that Plaintiff itself could not compete. *Id.* at 17-18.

9         The SAC does not cure these pleading deficiencies. While the SAC adds

10   detail as to OSI's and Schneider's previous business dealings, the SAC alleges

11   only that Schneider and OSI refused to partner with Plaintiff. *See, e.g.,* SAC at ¶¶

12   91-99; 179-183. Like the FAC, it alleges that others, like Eaton, are able to

13   compete. *See id.* ¶ 141. Finally, the SAC continues to allege that even Plaintiff can

14   compete. It can sell to numerous of Schneider's competitors. *See id.* ¶¶ 165, 169,

15   173, 177. And, it alleges partnering with OSI is not even necessary to enter the

16   NUPIC Markets; Plaintiff  already achieved" "seamless[]" integration with OSI's

17   product. SAC ¶ 95, 307.

18        The SAC's remaining allegations show legitimate competition, not

19   anticompetitive conduct. For example, the SAC states that the agreements "lock

20   out" Plaintiff and other competitors. *See, e.g., id.* ¶¶ 81, 89, 192. As this Court

21   previously noted, those conclusory allegations are not enough because "virtually

22   *every* contract to buy 'forecloses' or 'excludes' alternative sellers from *some*

23   portion of the market, namely the portion consisting of what was bought." Order at

24   12 (citing *Barry Wright Corp. v. ITT Grinnell Corp.*, 724 F.2d 227, 236 (1st Cir.

25   1983) (Breyer, J.); *Aerotec Int'l, Inc. v. Honeywell Int'l, Inc.*, 836 F.3d 1171, 1183

26   (2016) ("Contracts, *simpliciter*, are not illegal under the Sherman Act.").

27        The SAC's further allegation – that OSI would not allow ETAP customers to

28   use OSI's software with Plaintiff's software unless that customer paid OSI a

DEFENDANTS OPERATION TECHNOLOGY, INC. d/b/a ETAP AND OSISOFT, LLC'S
MOTION TO DISMISS SECOND AMENDED COMPLAINT

separate license fee, SAC ¶¶ 88, 89 – is also not anticompetitive. Licensing is part of OSI's intellectual property rights that incentivize innovation. "The right to license [a] patent, exclusively or otherwise, or to refuse to license at all, is 'the untrammeled right' of the patentee." *United States v. Westinghouse Elec. Corp.*, 648 F.2d 642, 647 (9th Cir. 1981). Granting rights for only certain uses has been, for decades, "unquestionably" part of these "untrammeled rights." *General Talking Pictures Corp. v. Western Electric Co.*, 304 U.S. 175, 181 (1938).

The SAC's further allegation that Schneider unilaterally "chose[]" to "standardize" its own "Services Division" on ETAP's products is equally flawed. SAC ¶ 190. Choosing with whom to deal is fundamental to competition. There is a "long recognized right of trader or manufacturer [to] freely to exercise his own independent discretion as to parties with whom he will deal." *See United States v. Colgate & Co.,* 250 U.S. 300, 307 (1919); *see Aerotec Int'l,* 836 F.3d at 1184 ("As the Supreme Court has repeatedly emphasized, there is 'no duty to deal under the terms and conditions preferred by [a competitor's] rivals.'").

Unable to plead that it was injured by anticompetitive activity, Plaintiff tries to raise a specter of improper conduct by repeatedly citing an email in which an ETAP employee states ETAP ought to "kill" competition from "Cyme, DigSilent, PSSE," and Plaintiff. *Id.* ¶ 35. Like the other allegations, however, the email evinces legitimate competition. The acronym "USP" referred to in the email means "Unique Sales Proposition." *See id.* In other words, the email is saying only that ETAP intends to beat Plaintiff and other competitors based on the relative merits of its product. That is the essence of competition. *Allied Orthopedic Appliances Inc. v. Tyco Health Care Group*, 592 F.3d 991, 1000 (9th Cir. 2010) ("[T]he very purpose of the antitrust laws … is … to foster … competition on the merits.")

The SAC's repetition of the word "kill" does not change that fact. "Competitors are not required to engage in a lovefest; indeed, even an act of pure malice by one business competitor against another does not, without more, state a

DEFENDANTS OPERATION TECHNOLOGY, INC. d/b/a ETAP AND OSISOFT, LLC'S
MOTION TO DISMISS SECOND AMENDED COMPLAINT

claim under the federal antitrust laws." Order at 21-22 (quoting *Aerotec, Int'l*, 836 F.3d at 1184 (internal quotation and alteration removed). In any case, the listed companies, other than Plaintiff, are expressly alleged to *not* compete in the NUPIC markets *at all*. SAC ¶¶ 62, 65. ETAP cannot "kill" competition that does not exist.

Separately, Plaintiff also lacks standing because it affirmatively alleges that it does not compete in impacted markets. The SAC expressly alleges no one, including Plaintiff, sells into the NUPIC Real Time Products Market. SAC ¶ 65.[2] It also does not compete in the EMS Platform or related markets affected by the purported Schneider-ETAP agreement. Those markets include only "full-line," "bundled" products offered by Schneider and its competitors, not individual components like those sold by ETAP or Plaintiff. SAC ¶ 128, 133. It is implausible for Plaintiff to allege standing to recover for harms in markets in which it does not compete. *Ass'n of Wash. Pub. Hosp. Dists. v. Philip Morris, Inc.*, 241 F.3d 696, 705 (9th Cir. 2001)

## B.    The SAC Fails to Sufficiently Plead Facts Supporting Sherman Act Section 1 Violations.

The SAC still fails to properly allege the elements of a Sherman Act Section 1 claim. To state a claim, "a plaintiff must prove (1) the existence of an agreement, and (2) that the agreement was in unreasonable restraint of trade." Order at 11 (quoting *Aerotec Int'l*, 836 F.3d at 1178). This Court recognized that exclusive dealing agreements have "well-recognized economic benefits … including the enhancement of interbrand competition." *Id.* (quoting *Omega Envtl., Inc. v.*

---

[2] The SAC alleges Plaintiff "stands ready" to seek approval of its Real Time Products "once the anticompetitive agreement … is nullified and enjoined." SAC ¶ 68. This conclusory allegation is not plausible. The SAC does not explain why Plaintiff has not sought a NUPIC audit in the seven years since it developed its Real Time Products. *Id.* ¶ 204. Its admitted delay does not show Plaintiff had "a genuine intent to enter the market…." *See Bubar v. Ampco Foods, Inc.*, 752 F.2d 445, 450 (9th Cir. 1985).

*Gilbarco, Inc.*, 127 F.3d 1157, 1162 (9th Cir. 1997). Thus, an exclusive dealing arrangement violates Section 1 "only if its effect is to foreclose competition in a substantial share of the line of commerce affected." Order at 12 (quoting *Allied Orthopedic Appliances*, 592 F.3d at 996 (internal quotation marks omitted).)

### 1.   The SAC Pleads Away an Exclusive Dealing Claim.

The only theory Plaintiff has offered to support its Sherman Act Section 1 claims is anticompetitive exclusive dealing. *See* SAC ¶¶ 295, 297, 298, 326, 335, 336, 337. That theory requires an agreement between buyers and sellers. This Court held: "Exclusive dealing involves an agreement between *a vendor and a buyer* that prevents the buyer from purchasing a given good from any other vendor." Order at 12 (quoting *Allied Orthopedic Appliances Inc.*, 592 F.3d at 996) (emphasis added). Yet, the SAC alleges that the OSI-ETAP and Schneider-ETAP agreements are "*not* … vertical agreement[s] between a buyer and seller, or a manufacturer and retailer." (SAC ¶ 78, 184) (emphasis added). Thus, the SAC affirmatively pleads away its claims.

### 2.   Plaintiff Fails to Allege a Specific Term Amounting to Exclusivity.

Setting aside the above deficiency, the allegations still fail the "threshold requirement" to allege an express exclusivity term or terms that "in the real world" have the same effect. *Aerotec Int'l, Inc.*, 836 F.3d at 1182; *ZF Meritor LLC v. Eaton Corp.*, 696 F.3d 254, 282 (3rd Cir. 2012). This Court ruled that the FAC did "not present allegations specific to exclusivity such as 'requirements terms, … volume or market share targets, or long-term contracts' that prevent meaningful competition by taking potential purchasers off the market." Order at 13 (quoting *Aerotec, Int'l*, 836 F.3d at 1181). The SAC remains deficient in this regard.

**OSI-ETAP Agreement:** Stated simply: Plaintiff has had the operative agreements for nearly a year, but continues to ignore their actual terms. *See* Declaration of Trevor V. Stockinger, Ex. A & B ("Stockinger Decl."). The SAC

DEFENDANTS OPERATION TECHNOLOGY, INC. d/b/a ETAP AND OSISOFT, LLC'S
MOTION TO DISMISS SECOND AMENDED COMPLAINT

remains devoid of *any* allegations concerning *any* terms in those agreements. The allegations thus wholly fail to show these agreements are anything but "run-of-the-mill contracts." *Aerotec Int'l*, 836 F.3d at 1182; *id.* at 1180 (Plaintiff "cannot sustain its burden by offering broad allegations and complaints that are unhinged from any specific agreement.")

Plaintiff also continues to evade the fact that these agreements are expressly *non*-exclusive: ETAP is a "non-exclusive" OEM and OSI's license grant is "non-exclusive." Stockinger Decl., Ex. . *See Creston Elecs. Inc. v. Cyber Sound & Sec. Inc.*, 2012 U.S. Dist. LEXIS 16132, *10 (D.N.J. Feb. 9, 2012) (dismissing claim because agreement was expressly non-exclusive); *J.L. Terrel's v. Sherwin-Williams Auto. Finishes Corp.*, 2004 U.S. Dist. LEXIS 6411, *16-17 (E.D. Penn. Mar. 30, 2004) (same). Plaintiff cannot continue to avoid the legal deficiencies in its claim by ignoring the very documents upon which it is based. *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005). [3]

Instead of citing the actual agreements, Plaintiff misleadingly cites two other documents drafted prior to any agreement: a "Term Sheet" and a "Memorandum of Understanding." SAC ¶¶ 87-90. The documents confirm that fact. The MOU is red-lined with changes and plainly is a non-executed draft. Stockinger Decl., Ex. C. The Term Sheet expressly states that "nothing" in it "create[s] any legal rights

---

[3] The SAC also conclusorily alleges that the OSI-ETAP agreement was meant to "extend well beyond" the OEM agreements. SAC ¶¶ 83. The factual allegations provide no support for this claim. The email quoted in Paragraph 84 – which pre-dates the OEM agreement – does not discuss any exclusivity agreement or any other terms "going beyond" that agreement. Instead, it says the opposite. *Id.* ("[M]any of the terms and conditions contained in the OSIsoft's OEM agreement simply don't apply…."). The purported ETAP statement that a "joint sale" would result in a product with "no substitutes" also does not pertain to exclusivity in any way. SAC ¶ 85. Like other allegations, it is consistent with competition in that ETAP believed a joint product would be better on the merits than any other. *See Twombly*, 550 U.S. at 551-557.

or obligations between the parties." Stockinger Decl., Ex. D.[4] Further, they both

contemplate that the final agreement will be "nonexclusive." *Id.*, Ex. C & D. Thus,

the SAC's key allegation that these documents "*obligate[] OSI to exclusively*

'recommend and promote ETAP Products as a preferred power systems analysis

and management platform' to all prospective customers" is a mischaracterization

of the actual documents. SAC ¶ 90 (emphasis added).

In any case, the only allegation of any specific provision in any of these

documents is that the Term Sheet required "the ETAP-OSI Agreement [to include]

specific wording in ETAP's Standard License Agreement providing that OSI

products that a customer purchased under the ETAP/OSI arrangement could be

used by the customer solely in conjunction with the ETAP products." *Id.* ¶ 87. The

SAC goes on to claim that customers needed another "duplicative license" from

OSI to use OSI products with a product other than ETAP's. *Id.* ¶ 88. The SAC

leaps to call this a "contractually imposed penalty [that] has the effect of further

'locking out' and harming competition…." *Id.* ¶ 89.

These new allegations are insufficient to show *de facto* exclusivity. First,

they are conclusory, providing no detail as to the amount of the license fee or how

it "harms competition." *Iqbal*, 556 U.S. at 678 (offering "labels and conclusions …

will not do"). Second, the allegations are not the type of "requirements terms, …

volume or market share targets, or long-term contracts" provision that amounts to

exclusivity. *See* Order at 13.[5]  Instead, they are no more than an allegation that OSI

_____

[4] Even if the Terms Sheet or MOU were agreements, the final ETAP-OSI
agreement superseded them and contains an integration clause. Stockinger Decl,
Ex. B at ¶ 13.

[5] *Cf. Aerotec*, 836 F.3d at 1182 (rejecting exclusive dealing claim because "a 15
percent discount on … a series of independent sales ... may be enticing enough to
'coerce' a purchase in that instance, but in the absence of any exclusive
requirements on which the discount is conditioned, the sale remains non-
exclusive."); *ZF Meritor, LLC*, 696 F.3d at 282 (conditional discounts amounted to
exclusivity because purchaser could not "afford to lose" seller's business); *United*

DEFENDANTS OPERATION TECHNOLOGY, INC. d/b/a ETAP AND OSISOFT, LLC'S
MOTION TO DISMISS SECOND AMENDED COMPLAINT

enforces standard use restrictions to protect its intellectual property. The Supreme Court has long-recognized the legitimacy of such licensing restrictions. *General Talking Pictures Corp.*, 304 U.S. at 181; *see Westinghouse Elec. Corp.*, 648 F.2d at 647. Plaintiff cannot twist this well-recognized licensing right to state a claim. Indeed, the allegation suggests that OSI *is* willing to license and work with others besides ETAP. At base, the SAC, like the FAC, "alleges only that OSI has not partnered with Plaintiff." Order at 14. That is not enough.

**Schneider-ETAP Agreement:** The allegations of an alleged exclusive agreement between Schneider and ETAP are also wholly deficient. The allegations contain no specificity as to exclusivity, instead characterizing whatever agreement Schneider and ETAP entered as a generic "cooperative agreement" or one for "joint sale ... of a Schneider product and an ETAP product...." SAC ¶¶ 187-88; *see generally id.* ¶¶184-203. The SAC's new quotation from a "press release" does not even relate to an agreement. *See id.* ¶ 190. It simply states that Schneider made a unilateral decision to use ETAP products in its own "Services Division." *Id.* As with the FAC, the SAC does not allege what "prevents Schneider and Plaintiff from entering a similar bundling agreement" or what is "unreasonable." Order at 13. Moreover, the new allegations of "Schneider's Pre-Agreement Relationship with Plaintiff," SAC ¶ 179-83, still fail to state "how [the previous dealings] relate to claimed exclusivity," Order at 13. The SAC, like the FAC, fails to plausibly allege a Scheinder-ETAP exclusive dealing agreement.

---

*States v. Dentsply Int'l, Inc.*, 399 F.3d 181, 195-96 (3rd Cir. 2005) (exclusivity found because dealers under "heavy economic pressure" and faced "all-or-nothing" choice); *LePage's, Inc. v. 3M*, 324 F.3d 141, 158-159 (noting that 3M's "all-or-nothing" discounts forced dealers to deal exclusively with 3M).

DEFENDANTS OPERATION TECHNOLOGY, INC. d/b/a ETAP AND OSISOFT, LLC'S MOTION TO DISMISS SECOND AMENDED COMPLAINT

3.       **The SAC Fails to Allege Preclusion From a Relevant Market.**

a.       **The SAC Still Fails to Allege Foreclosure From All Selling Opportunities.**

The SAC also fails to properly allege Plaintiff was foreclosed from "the full range of selling opportunities reasonably open to rivals, namely, all the product and geographic sales they may readily compete for…." Order at 15 (citing *Omega*, 127 F.3d at 1162). This Court dismissed the FAC because it limited the relevant markets to "a portion of customers," rather than "a distinction in the product sold to those customers." Order at 16-17 (quoting *T. Harris Young & Assocs. v. Marquette Elecs., Inc.*, 931 F.2d 816, 824 (11th Cir. 1991)). The Court faulted Plaintiff for alleging separate markets that included the same products. *Id*. The SAC continues to allege the markets contain the same products and are defined by customers.

**Markets Allegedly Foreclosed By OSI-ETAP Agreement:** The FAC defined a market for NUPIC-certified products that included both Real Time and Grid Design Products. FAC ¶ 33. The SAC's only change is to break this single market into two: one for Real Time Products and one for Grid Design Products. SAC ¶ 52. Thus, these new markets are nearly identical to the FAC's implausible markets. Significantly, the new allegations still expressly define both of these markets based on customer distinctions. They allegedly encompass "*customers who are … limited to purchasing only … Products that have successfully completed a NUPIC audit within the past three years.*" *Id.* ¶ 52 (emphasis added). Significantly, the SAC now seems to allege that the Real Time NUPIC Market does not even exist: "[T]here are no Real Time Products that have successfully completed a NUPIC audit." SAC ¶ 65. These claims fail to plausibly allege a relevant market encompassing all selling opportunities.

DEFENDANTS OPERATION TECHNOLOGY, INC. d/b/a ETAP AND OSISOFT, LLC'S MOTION TO DISMISS SECOND AMENDED COMPLAINT

**Markets Allegedly Foreclosed By The Schneider-ETAP Agreement:** The allegations as to the markets allegedly impacted by the Schneider-ETAP arrangement are equally deficient. The SAC states that the main market is for "the sale and servicing of Energy Management Systems (EMS) platforms." SAC ¶ 107. The SAC expressly defines that market based on "common characteristics" of "[c]ustomers." *Id.* ¶ 109; *see, e.g., id.* ¶¶ 110, 111, 120, 121. The SAC also alleges four other "alternative" markets – which are more narrow than the main market. Those markets are also narrowed by customers – now called "[e]nd [u]ser[s]." *Id.* p. 37 (heading 3). Thus, the SAC continues to implausibly define these markets by customer distinction. The SAC's addition of dozens of paragraphs of allegations and numerous graphics cannot solve this basic pleading failure.

More generally, all of these alleged markets – the two NUPIC Markets and the five EMS Platform Markets – still contain the same products. The SAC defines "Grid Design Products" and "Real Time Products" in a section containing allegations that are "Generally … Applicable to All Claims." *See* SAC ¶ 14-35. The NUPIC Markets and the EMS Markets are also expressly alleged to include these two types of products. SAC ¶¶ 52, 135. Moreover, the SAC still contains allegations that these same products are sold to customers not impacted by the supposed anticompetitive agreements, including the FAA, Camp Pendleton, and Chevron. SAC ¶¶ 18, 220; *see* Order at 16, 17. The SAC, thus, should be dismissed for the same reasons the FAC was dismissed. *See Eastern Foods Servs., Inc. v. Pontifical Catholic Univ. Servs. Ass'n*, 357 F.3d 1, 9 (1st Cir. 2004) (affirming dismissal where exclusivity covered only Puerto Rican University but no allegations of what other "potential outlets are foreclosed to [plaintiff] and other competitors"); *Stewart v. Gogo, Inc.*, 2013 U.S. Dist. LEXIS 51895, at *11-13 (N.D. Cal. Apr. 10, 2013) (dismissing because alleged foreclosure covered aircraft that actually had internet access, not all aircraft that could have internet access).

DEFENDANTS OPERATION TECHNOLOGY, INC. d/b/a ETAP AND OSISOFT, LLC'S MOTION TO DISMISS SECOND AMENDED COMPLAINT

b.      **The SAC Still Fails to Allege Foreclosure Even in the Alleged Markets.**

The SAC, like the FAC, fails to adequately allege foreclosure even if the NUPIC Markets and EMS Platform Markets were plausibly alleged. The SAC's allegations – like the FAC's – make clear that Plaintiff has "alternative channels of distribution" into these markets. *Omega*, 127 F.3d at 1163 (granting dismissal); *PNY Techs., Inc. v. Sandisk Corp.*, 2014 U.S. Dist. LEXIS 58108, at *27-31 (N.D. Cal. Apr. 25, 2014).

**Alternative channels into the NUPIC Markets:** Like the FAC, the SAC alleges alternative means to sell into the NUPIC Markets. First, the SAC contains the same allegation as the FAC that Plaintiff had previously integrated its products with OSI's (and no new allegation as to why that integration is no longer sufficient). SAC ¶¶ 95, 307. Second, like the FAC, the SAC still fails to allege that "OSI would not provide access to OSI's historian software to customers who opted to use products other than those provided by Etap." Order at 18. Instead, it only suggests that customers would have to pay for a license to do so. As discussed above, that does not cut off access to the market. Third, the SAC still alleges Plaintiff could negotiate directly with customers. It quotes from Plaintiff's own email that it has "personnel" at customer-plants with whom it could talk directly. SAC ¶ 99. Despite these allegations, the SAC, like the FAC, maintains that OSI is a "critical bridge" into the NUPIC Market. SAC ¶¶ 93, 313. This Court already rejected this assertion. Order at 18. Thus, the SAC fails to show foreclosure of even the narrowly-defined NUPIC Markets.

**Alternative channels into the EMS Platform Markets:** Similarly, the SAC lists several alternative EMS Platform suppliers to whom Plaintiff could sell its products despite the alleged agreement, including "Siemens, GE, ABB, Honeywell and other additional smaller competitors." SAC ¶ 141. Indeed, the SAC concedes that Schneider captures its share of the market through a "competitive

DEFENDANTS OPERATION TECHNOLOGY, INC. d/b/a ETAP AND OSISOFT, LLC'S
MOTION TO DISMISS SECOND AMENDED COMPLAINT

advantage." SAC ¶¶ 140, 146. That the market is "fragmented," that another supplier offers a product competing with Plaintiff, or that the opportunities are purportedly "less desirable" does not save Plaintiff's claims. *See* SAC ¶¶ 141; 149. *Int'l Constr. Prods., LLC v. Caterpillar, Inc.*, 2016 U.S. Dist. LEXIS 6826, at *19, *22 (D. Del. Jan. 21, 2016) (dismissing complaint despite claim that alternative channels were "inferior" or that market entry was "difficult").

### 4. The SAC Fails to Allege Facts Showing Harm to Competition.

The SAC is also devoid of facts supporting harm to competition from the agreements. First, this Court found the FAC's allegations of any Defendants' market power insufficient because Plaintiff failed to plausibly allege a market. Order at 18. As discussed above, that is still true of the SAC. Second, the Court dismissed the FAC because it did "not allege any terms in the agreements that operate to make them coercive or ones that cannot be readily terminable." *Id.* at 19. This is also still true of the SAC. Indeed, the SAC now alleges facts supporting that OSI and Schneider willingly entered these agreements. The SAC states that the OSI-ETAP arrangement was "particularly beneficial" to OSI, SAC ¶ 81, and that Schneider was "very impressed" with ETAP's products, and used them to "reduc[e] cost, "improv[e] productivity," and "gain[] revenues". *Id.* ¶ 138, 190, 196. Third, the SAC still alleges purported raised consumer costs, but this Court already rejected Plaintiff's ability to rely on that harm. *See id.* ¶¶ 194-97; Order at 20. Fourth, the remaining allegations of harm to competition are mere boilerplate. *See* SAC ¶ 104, 193, 202, 203, 315, 342. The SAC fails to allege plausibly harm to competition, and the Section 1 claims should be dismissed.

### C. The SAC Fails to Sufficiently Plead Facts Supporting Sherman Act Section 2 Violations.

The SAC fails to plausibly allege that ETAP violated Sherman Act Section 2 for monopolizing or attempting to monopolize the NUPIC Markets. A Section 2

claim requires: "(a) the possession of monopoly power in a relevant market; (b) the willful acquisition or maintenance of that power; and (c) causal antitrust injury." Order at 21 (citing *Allied Orthopedic Appliances*, 592 F.3d at 998). In addition, an attempt claim requires a "specific intent to monopolize." *Id.* (citing *Aerotec Int'l*, 836 F.3d at 1184).

The SAC's Section 2 claim is wholly derivative of its Section 1 exclusive dealing claim. *See*, *e.g.*, SAC ¶¶ 358-63 (alleging "exclusionary agreement" as basis for claim). As this Court previously ruled, "Plaintiff has failed to plausibly allege a relevant market or anticompetitive conduct that caused antitrust injury" to support a Section 2 claim for the same reasons as to the Section 1 claim. Order at 21. As to the attempt claim, as this Court previously held intent is not plausibly alleged: "Defendants' refusal to deal with Plaintiff" is not sufficient to show "ill will" or "anticompetitive conduct." Order at 21. The SAC contains no express allegations as to intent and appears to continue only to rely on a mere "refusal to deal" to show intent. This Court should dismiss Plaintiff's Section 2 claim.

## III.   The SAC Still Fails to Allege a California Cartwright Act Claim.

Plaintiff's Cartwright Act claim, which is alleged in two non-substantive and conclusory paragraphs, should also be dismissed. Plaintiff asserts that its California Cartwright Act claim is derivative of its Sherman Act Section 1 claim. SAC ¶ 351 ("Defendants' conduct violative of the Section 1 of the Sherman Act constitutes a violation of the Cartwright Act."). Accordingly, Plaintiff's Cartwright claim fails for reasons set forth above. *Auto Sound Inc., v. Audiovox Elecs. Corp*., 2012 U.S. Dist. Lexis 196056, at *18 (C.D. Cal. Dec. 3, 2012) (dismissing Cartwight Act and Sherman Act claims for "the same reasons").

## IV.   The SAC Still Fails to Allege Violations of North Carolina's UDTPA.

This Court dismissed Plaintiff's claim for violation of the North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA") because Plaintiff had failed to adequately plead the common law tort or antitrust claims that formed the basis

DEFENDANTS OPERATION TECHNOLOGY, INC. d/b/a ETAP AND OSISOFT, LLC'S
MOTION TO DISMISS SECOND AMENDED COMPLAINT

1  of its UDPTA claim. Order at 26. Now, the SAC's sole bases for Plaintiff's

2  UDPTA claims are Defendants' alleged violations of the federal antitrust laws.

3  SAC ¶ 371. As set forth above, the SAC did not cure the pleading defects

4  previously identified by the Court as to those claims. The UDTPA claim, thus,

5  should also be dismissed. *See Oceans One Eleven, LLC v. Beach Mart, Inc.*, 2008

6  U.S. Dist. Lexis 82416, *5-6 (E.D.N.C. Oct. 16, 2008).

7  **V.     The SAC Fails to Allege Violations of California's UCL (Count X).**

8          Dissatisfied with pleading violations of an unfair competition statute under

9  one state's law, Plaintiff now also pleads under California law. Conduct violates

10  California's Unfair Competition Law only if it is (1) unlawful, (2) unfair, or (3)

11  fraudulent. *See* Cal. Bus. & Prof. Code § 17200. Thus, "[a]llegations of unlawful,

12  unfair, or fraudulent acts … must be pled with a reasonable degree of

13  particularity." *Lovesy v. Armed Forces Benefit Ass'n*, 2008 U.S. Dist. LEXIS

14  93479, *17-19 (N.D. Cal. Mar. 13, 2008). The SAC's two conclusory paragraphs

15  fail to even plead what prong Defendants purportedly violated. SAC ¶ 375. And,

16  even if the Court reads Plaintiff's mere reference to its Sherman Act allegations as

17  an attempt to state a claim under the UCL's unlawful prong, the claim still fails as a

18  matter of law because Plaintiff has failed to state a Sherman Act claim. *See, e.g.*,

19  *Berryman v. Merit Property Management, Inc.*, 152 Cal. App. 4th 1544, 1555-56

20  (2007); *Auto Sound.*, 2012 U.S. Dist. Lexis 196056 at *18.

21  **VI.    The SAC Still Fails to State a Claim for Tortious Interference.**

22          Plaintiff's claim for tortious interference with prospective economic

23  advantage should be dismissed. Plaintiff's claim fails under North Carolina law. To

24  state a claim for tortious interference with prospective economic advantage under

25  that law, Plaintiff must allege facts showing that ETAP acted maliciously and

26  without justification to induce a third party to refrain from entering into a contract

27  with Plaintiff, and that the third party would have entered into the contract.

28  *Beverage Sys. of the Carolinas, LLC v. Associated Bev. Repair*, *LLC*, 368 N.C.

DEFENDANTS OPERATION TECHNOLOGY, INC. d/b/a ETAP AND OSISOFT, LLC'S
MOTION TO DISMISS SECOND AMENDED COMPLAINT

693, 700-701 (2016). Here, Plaintiff does not allege that ETAP acted with malice
or without justification. To the extent that Plaintiff claims that ETAP's alleged
actions were illegitimate because they violated the antitrust laws, that argument
fails because Plaintiff has failed to state a valid claim for any antitrust violation.

Plaintiff's claim also fails under California law. Under California law, a
plaintiff must plead that the defendant (1) knew of the relationship between the
plaintiff and a third party, (2) intended to disrupt that relationship; and (3) engaged
in independently wrongful conduct to disrupt the relationship. *Korea Supply Co. v.
Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1153-54 (2003). Here, Plaintiff has
failed to plead either knowledge or intent on the part of ETAP, or that ETAP acted
wrongfully in disrupting Plaintiff's alleged relationships. To the extent that
Plaintiff relies on its antitrust claims to show that ETAP engaged in wrongful
conduct, that argument fails for the reasons set forth above.

**VII.   The SAC Still Fails To Allege A Claim Of Civil Conspiracy (Count XV).**

The civil conspiracy claim should be dismissed. First, civil conspiracy is not
an independent cause of action. *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7
Cal. 4th 503, 510-11 (1994) ("Conspiracy is not a cause of action…."); *Superior
Performers, Inc. v. Meaike*, 2014 U.S. Dist. LEXIS 158862, *29 (M.D.N.C. Nov.
10, 2014). Second, the SAC's allegations of a civil conspiracy are the same
conclusory allegations that this Court has already dismissed. *Compare* SAC ¶¶
381-86 *with* FAC ¶¶ 238-43. Third, the claim is based on the defective allegations
discussed above. This claim should be dismissed. *See* Order at 25.

**VIII.  This Court Should Dismiss All Non-Patent Claims With Prejudice.**

This Court should dismiss Plaintiff's non-patent claims without further leave
to amend. Plaintiff has now made three attempts to amend its complaint and has
still failed to state a claim despite this Court's detailed Order. Dismissal with
prejudice is appropriate. *Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir.
2013) (dismissal with prejudice appropriate where "district court gave Plaintiffs

DEFENDANTS OPERATION TECHNOLOGY, INC. d/b/a ETAP AND OSISOFT, LLC'S
MOTION TO DISMISS SECOND AMENDED COMPLAINT

1   specific instructions on how to amend the complaint, and Plaintiffs did not

2   comply"); *Abagninin v. AMVAC Chem. Corp.*, 545 F.3d 733, 742 (9th Cir. Sept.

3   24, 2008) ("Leave to amend may … be denied for repeated failure to cure

4   deficiencies by previous amendment.").

5   <u>**CONCLUSION**</u>

6   For the reasons set forth above, this Court should dismiss all non-patent

7   claims with prejudice.

8   DATED:  July 17, 2017                      Respectfully submitted,

9                                             KESSELMAN BRANTLY STOCKINGER LLP

10

11   By:   */s/ Trevor V. Stockinger*
                                                    Trevor V. Stockinger

12

13   Michael J. Sacksteder                    David W. Kesselman

14   Joseph S. Belichick                      Trevor V. Stockinger
     Adam M. Lewin                            KESSELMAN BRANTLY STOCKINGER LLP
     FENWICK & WEST LLP

15
                                              John W. Vanderberg (*Pro Hac Vice*)
16   *Counsel for Defendant*                  Salumeh R. Loesch (*Pro Hac Vice*)
     OSIsoft, LLC                             KLARQUIST SPARKMAN, LLP
17                                            121 S.W. Salmon St., Ste. 1600
                                              Portland, OR 97204
18                                            Telephone: (503) 595-5300

19

20                                            *Counsel for Defendant*
                                              OPERATION TECHNOLOGY, INC.,
21                                            d/b/a ETAP

22

23

24

25

26

27

28

DEFENDANTS OPERATION TECHNOLOGY, INC. d/b/a ETAP AND OSISOFT, LLC'S
MOTION TO DISMISS SECOND AMENDED COMPLAINT