David W. Kesselman (SBN 203838)
*dkesselman@kbslaw.com*
Trevor V. Stockinger (SBN 226359)
*tstockinger@kbslaw.com*
KESSELMAN BRANTLY STOCKINGER LLP
1230 Rosecrans Ave., Suite 690
Manhattan Beach, CA 90266
Telephone: (310) 307-4555
Facsimile: (310) 307-4570

*Attorneys for Defendant*
Operation Technology, Inc.
d/b/a ETAP

Michael J. Sacksteder (SBN 191605)
*msacksteder@fenwick.com*
Joseph S. Belichick (SBN 229371)
*jbelichick@fenwick.com*
FENWICK & WEST LLP
555 California Street, #1200
San Francisco, CA 94104
Telephone: (415) 875-2300
Facsimile: (415) 281-1350

*Attorneys for Defendant*
OSIsoft, LLC

[Additional Counsel Listed on Signature Pages]

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| POWER ANALYTICS CORPORATION,<br><br>                    Plaintiff,<br><br>        v.<br><br>OPERATION TECHNOLOGY INC. d/b/a ETAP; OSISOFT LLC; and SCHNEIDER ELECTRIC USA, INC.,<br><br>                    Defendants. | CASE NO. 8:16-cv-01955-JAK-FFMx<br><br>*Honorable John A. Kronstadt*<br><br>**DEFENDANTS OPERATION TECHNOLOGY, INC. d/b/a ETAP AND OSISOFT LLC'S NOTICE OF MOTION AND MOTION TO DISMISS THIRD AMENDED COMPLAINT**<br><br>Date:          April 23, 2018<br>Time:         8:30 a.m.<br>Courtroom:  10B |

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that on April 23, 2018 at 8:30 a.m., Defendants Operation Technology, Inc. d/b/a ETAP ("ETAP") and OSIsoft, LLC ("OSI") will bring for hearing this Motion to Dismiss the Third Amended Complaint ("TAC") before the Honorable John A. Kronstadt, in courtroom 10B at First Street Courthouse, 350 W. First Street, Los Angeles, California 90012.

Defendants, by and through their undersigned counsel, hereby move this Court pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss all claims in Plaintiff's TAC for failure to state a claim. The TAC fails to remedy any of the deficiencies found by this Court when it dismissed the First Amended Complaint and the Second Amended Complaint. Among other things, the Sherman Act Section 1 claims fail to properly allege a single element. The remaining counts similarly fail to state a claim because, among other things, they are derivative of the deficiently-pleaded Sherman Act Section 1 claims.

This Motion is based on the attached memorandum of points and authorities, the Declaration of Trevor V. Stockinger and attached exhibits, any matters of which this Court may take judicial notice, and such additional argument as may be presented at or before the hearing on this matter.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

DEFENDANTS OPERATION TECHNOLOGY, INC. d/b/a ETAP AND OSISOFT, LLC'S
MOTION TO DISMISS THIRD AMENDED COMPLAINT

1    This motion is made following the conference of counsel pursuant to L.R.

2    7-3, which took place telephonically on February 1, 2018, following an email

3    correspondence setting out the bases for the motion on January 25, 2018.

4

5    DATED:  February 8, 2018                 Respectfully submitted,

6                                            KESSELMAN BRANTLY STOCKINGER LLP

7

8                                            By:   _/s/ Trevor V. Stockinger____

9                                                  Trevor V. Stockinger

10   Michael J. Sacksteder                   David W. Kesselman

11   Joseph S. Belichick                     Trevor V. Stockinger
     FENWICK & WEST LLP                      KESSELMAN BRANTLY STOCKINGER LLP
12   555 California Street                   1230 Rosecrans Ave., Suite 690

13   San Francisco, CA 94104                 Manhattan Beach, CA 90266
     Telephone: (415) 875-2300               Telephone: (310) 307-4555
14

15   *Counsel for Defendant*                 John W. Vanderberg (*Pro Hac Vice*)
     OSIsoft , LLC                           Salumeh R. Loesch (*Pro Hac Vice*)
16                                           KLARQUIST SPARKMAN, LLP

17                                           121 S.W. Salmon St., Ste. 1600
                                             Portland, OR 97204
18                                           Telephone: (503) 595-5300

19
                                             *Counsel for Defendant*
20                                           OPERATION TECHNOLOGY, INC.,
                                             d/b/a ETAP
21

22

23

24

25

26

27

28

DEFENDANTS OPERATION TECHNOLOGY, INC. d/b/a ETAP AND OSISOFT, LLC'S
MOTION TO DISMISS THIRD AMENDED COMPLAINT

1
2

# TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................. 1

STATEMENT OF ALLEGATIONS AND PROCEDURAL HISTORY ............ 2

I.     Plaintiff's Insufficient Allegations. ............................................................. 2

II.    The Court Dismissed The Prior Complaint For Failure To State
       A Single Element Of A Single Claim. ......................................................... 5

III.   The TAC's Allegations Have Not Substantially Changed........................... 7

ARGUMENT........................................................................................................ 8

I.     The TAC Fails To State Plausible Theories Based On Facts. ..................... 8

II.    The TAC Still Fails To State Claims For Antitrust Violations.................... 8

       A.     The TAC Still Fails to Allege Antitrust Injury and Standing............ 8

       B.     The TAC Still Fails to Plead Sufficient Facts to Support
              Sherman Act Section 1 Violations.................................................... 11

              1.     Plaintiff still fails to allege a specific exclusivity term. ........ 11

              2.     The TAC still fails to allege harm to competition................. 15

                     a.     The TAC still fails to allege preclusion from all
                            selling opportunities. ................................................... 15

                     b.     The TAC still fails to allege foreclosure even in
                            the alleged markets....................................................... 16

              3.     The TAC still fails to allege coercion.................................... 17

              4.     The remaining allegations cannot save Plaintiff's claims..... 17

       C.     The TAC Fails to Sufficiently Plead Facts to Support Sherman
              Act Section 2 Violations. ................................................................. 18

III.   The TAC Still Fails To State A Cartwright Act Or UCL Claim. .............. 18

IV.    The TAC Still Fails To Allege Violations Of North Carolina's
       UDTPA....................................................................................................... 19

V.     The TAC Still Fails To State A Claim For Tortious Interference. ............ 20

28

DEFENDANTS OPERATION TECHNOLOGY, INC. d/b/a ETAP AND OSISOFT LLC'S
MOTION TO DISMISS SECOND AMENDED COMPLAINT

TABLE OF CONTENTS *(con't)*

Page

VI.     The TAC Still Fails To Allege A Claim Of Civil Conspiracy................... 20

VII.    This Court Should Dismiss All Claims With Prejudice............................ 21

CONCLUSION................................................................................. 21

DEFENDANTS OPERATION TECHNOLOGY, INC. d/b/a ETAP AND OSISOFT, LLC'S
MOTION TO DISMISS THIRD AMENDED COMPLAINT

# TABLE OF AUTHORITIES

Page(s)

<u>Cases</u>

*Abagninin v. AMVAC Chem. Corp.*,
  545 F.3d 733 (9th Cir. 2008) .................................................................. 21

*Aerotec Int'l, Inc. v. Honeywell Int'l, Inc.*,
  836 F.3d 1171 (2016) ................................................... 9, 10, 11, 12

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................ 8

*Barry Wright Corp. v. ITT Grinnell Corp.*,
  724 F.2d 227 (1st Cir. 1983) ............................................................ 10

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ............................................................................ 8

*Brunswick Corp. v. Pueblo-Bowl-O-Mat, Inc.*,
  429 U.S. 477 (1977) ............................................................................ 8

*Bubar v. Ampco Foods, Inc.*,
  752 F.2d 445 (9th Cir. 1985) ............................................................. 9

*Creston Elecs. Inc. v. Cyber Sound & Sec. Inc.*,
  2012 U.S. Dist. LEXIS 16132 (D.N.J. Feb. 9, 2012) .................................... 12

*Eastern Foods Servs., Inc. v. Pontifical Catholic Univ. Servs. Ass'n*,
  357 F.3d 1 (1st Cir. 2004) ............................................................... 15

*First Atl. Mgmt. Corp. v. Dunlea Realty Co.*
  507 S.E.2d 56 (N.C. App. 1998) ...................................................... 19

*In re Gilead Sciences Sec. Litig.*,
  536 F.3d 1049 (9th Cir. 2009) .......................................................... 8

*Int'l Constr. Prods., LLC v. Caterpillar, Inc.*,
  2016 U.S. Dist. LEXIS 6826 (D. Del. Jan. 21, 2016) ................................... 17

*J.L. Terrel's v. Sherwin-Williams Auto. Finishes Corp.*,
  2004 U.S. Dist. LEXIS 6411 (E.D. Penn. Mar. 30, 2004) .......................... 12

*Korea Supply Co. v. Lockheed Martin Corp.*,
  29 Cal. 4th 1134 (2003) ................................................................... 20

DEFENDANTS OPERATION TECHNOLOGY, INC. d/b/a ETAP AND OSISOFT, LLC'S
MOTION TO DISMISS THIRD AMENDED COMPLAINT

TABLE OF AUTHORITIES

Page(s)

<u>Cases</u> *(con't)*

*L.C. Williams Oil, Inc. v. Exxon Corp.*,
    625 F. Supp. 477 (M.D.N.C. 1985) .................................................................. 20

*Lovesy v. Armed Forces Benefit Ass'n*,
    2008 U.S. Dist. LEXIS 93479 (N.D. Cal. Mar. 13, 2008) ........................... 19

*Oceans One Eleven, LLC v. Beach Mart, Inc.*,
    2008 U.S. Dist. Lexis 82416 (E.D.N.C. Oct. 16, 2008) ................................ 20

*Omega Envtl., Inc. v. Gilbarco, Inc.*,
    127 F.3d 1157 (9th Cir. 1997) .................................................... 11, 15, 16

*PNY Techs., Inc. v. Sandisk Corp.*,
    2014 U.S. Dist. LEXIS 58108 (N.D. Cal. Apr. 25, 2014) ........................... 16

*Salameh v. Tarsadia Hotel*,
    726 F.3d 1124 (9th Cir. 2013) ........................................................... 21

*Sea-Roy Corp. v. Parts R Parts, Inc.*,
    1997 U.S. Dist. LEXIS 21809 (M.D.N.C. 1997) ........................................ 19

*Sewell Plastics, Inc. v. Coca-Cola Co.*,
    720 F. Supp. 1196 (W.D.N.C. 1989) ............................................... 19, 20

*Stearns v. Genrad, Inc.*,
    564 F. Supp. 1309 (M.D.N.C. 1983) .................................................. 20

*Stewart v. Gogo, Inc.*,
    2013 U.S. Dist. LEXIS 51895 (N.D. Cal. Apr. 10, 2013) ........................... 15

*Stop & Shop Supermarket Co. v. Blue Cross & Blue Shield of R.I.*,
    373 F.3d 57 (1st Cir. 2004) ............................................................ 17

*United States v. Colgate & Co.*,
    250 U.S. 300 (1919) ...................................................................... 11

*United States v. Westinghouse Elec. Corp.*,
    648 F.2d 642 (9th Cir. 1981) .......................................................... 13

*ZF Meritor LLC v. Eaton Corp.*,
    696 F.3d 254, 282 (3rd Cir. 2012) ............................................... 11, 12

DEFENDANTS OPERATION TECHNOLOGY, INC. d/b/a ETAP AND OSISOFT, LLC'S
MOTION TO DISMISS THIRD AMENDED COMPLAINT

# **INTRODUCTION**

Plaintiff now makes a *fourth* attempt to plead its claims. It again fails. The Third Amended Complaint ("TAC") does not remedy a single pleading defect this Court enumerated in twice dismissing the prior complaints. The TAC should be dismissed with prejudice.

It is not surprising Plaintiff still cannot state a claim because its theory perverts the antitrust laws. Plaintiff complains of its own inability to compete – not anticompetitive behavior. The TAC, like the prior complaints, repeatedly alleges that Plaintiff is harmed because OSI and Schneider agreed to joint sales efforts with ETAP. But, tellingly, the TAC, like the prior complaints, is devoid of any allegation that Defendants actually made a joint sale. Moreover, the TAC, also like the prior complaints, admits that Plaintiff can still compete with ETAP. Even after the alleged agreements, Plaintiff can still access OSI's software, can still sell its products through Schneider's competitors, and can still negotiate with potential customers. As this Court held: If Plaintiff wanted a contract with OSI and Schneider, it simply had to offer a better deal. As a new allegation cataloging customer opinion makes clear, Plaintiff could not do so because ETAP simply had the "best" product. In other words, Plaintiff lost to competition. Yet, competition is the very thing antitrust laws are meant to protect.

Perhaps because its theory is hopelessly flawed, the TAC does nothing to remedy the extensive pleading defects set out by this Court. Rather than address the Court's issues, the TAC only reorganizes past allegations, adds substantively duplicative allegations of past allegations, and argues those past allegations should be judged under legal standards this Court already rejected. After four attempts and two prior adverse orders, it is time to bring this meritless case to a close. This Court should dismiss all claims with prejudice.[1]

---

[1] OSI joins this motion in its entirety, and Section II of Schneider's motion. ETAP joins Schneider's motion to the extent it raises additional arguments.

DEFENDANTS OPERATION TECHNOLOGY, INC. d/b/a ETAP AND OSISOFT, LLC'S MOTION TO DISMISS THIRD AMENDED COMPLAINT

## STATEMENT OF ALLEGATIONS AND PROCEDURAL HISTORY

Plaintiff filed its Original Complaint on March 21, 2016. *See* Dkt. 1 After reviewing Defendants' first motions to dismiss, *see* Dkt. 17, 19, 21, Plaintiff did not oppose, but instead amended that complaint, *see* Dkt. 38 ("FAC"). Defendants brought a second set of motions to dismiss on July 22, 2016. Dkt. 42, 44. While those motions were pending, this action was transferred to this Court. Dkt. 73.

On May 10, 2017, this Court granted Plaintiff's second set of motions to dismiss. *See* Dkt. 227 ("1st Order"). Plaintiff, again, attempted to remedy the pleading defects, filing its Second Amended Complaint on June 20, 2017. *See* Dkt. 285 ("SAC"). On July 17, 2017, Defendants moved to dismiss again.  Dkt. 303 & 304. The Court once more dismissed all claims on December 7, 2017. Dkt. 361 ("2nd Order"). Plaintiff has now filed a Third Amended Complaint. Dkt. 383.

## I.    Plaintiff's Insufficient Allegations.

This Court most recent order summarized Plaintiff's allegations. 2nd Order at 2-12. The antitrust allegations concerned software used for distinct functions in electrical power grids, including software for design of power grids ("Grid Design Software"); software that monitors power grid operations ("Real Time Software"); and software that collects and stores historical information on power grid operation ("Historian Software"). 2nd Order at 2-4. ETAP and Plaintiff allegedly sold Grid Design and Real Time Software for use with Historian Software. *Id.* OSI allegedly sold Historian Software. *Id.* at 4. Schneider allegedly sold "bundles" of software and equipment as Electrical Management Systems ("EMS"). *See id.* at 6.

The OSI "arrangement" with ETAP allegedly affected two separately-defined markets: the market for Grid Design Software certified for use in nuclear power facilities ("NUPIC Grid Design Market") and the market for similarly-certified Real Time Software ("NUPIC Real Time Market"). *See id.* at 4-5, 8-9. Both were defined based on customer distinction, and products in the NUPIC Markets could be sold in other markets. *See id.* at 19-20. Plaintiff further admitted

that no one had successfully obtained NUPIC certification for Real Time Software. *Id.* at 5-6, 20. The Schneider "arrangement" allegedly affected the "market for the sale and servicing of [EMS] platforms" ("EMS Platform Market") or four separate submarkets – all of which only encompass sales of a bundle of goods. *See id*. at 6-8. Plaintiff, however, alleged that it did not sell software bundles. *Id.* at 18. Moreover, those markets were also defined by "common characteristics" among "customers" and "end users." *Id.* at 6.

**The Alleged OSI-ETAP Agreement:** ETAP allegedly entered a "strategic partnership" with OSI "intended to ensure that OSI products can only be used … with ETAP Products." *Id.* at 8 (internal quotation and alteration omitted). This was purportedly "not a vertical agreement," but an agreement between "two sellers of Grid D and M Products in the NUPIC Markets." *Id.* Plaintiff did not allege specific exclusivity terms in the agreement. *Id.* at 8-9, 16-17. Instead, it relied on two non-binding documents. *See id.* at 8, 20. The only specifics it discussed is that one non-binding document required ETAP to include language in its "Standard License Agreement" that "joint solution" customers are licensed by OSI to use OSI's product only with ETAP's; if a customer wanted to use it with a non-ETAP product, it needed a new license. 2nd Order at 20. Plaintiff leaped to allege this is a "contractually imposed penalty," without any discussion of the cost of the license and without acknowledging that this allegation shows OSI, in fact, licenses its product for use with non-ETAP products. *Id.* In any case, Plaintiff also has not alleged that OSI was coerced into entering the actual agreement or that the agreement was not easily terminable. *Id.* at 21-22.

Further, Plaintiff only alleged that, despite prior business discussions, OSI refused joint marketing efforts with Plaintiff after entering the agreement with ETAP. *See id.* 20. Yet, Plaintiff admitted it previously "achieved [its] objective" of having Plaintiff's software "work[] seamlessly with OSI's PI System" by paying to access OSI's code. *Id.* at 20. Plaintiff's allegations are silent as to why Plaintiff

DEFENDANTS OPERATION TECHNOLOGY, INC. d/b/a ETAP AND OSISOFT, LLC'S MOTION TO DISMISS THIRD AMENDED COMPLAINT

chose to stop paying and even whether it needed to do so to maintain interconnectivity. Moreover, while it alleges it lost four customers after the announced agreement, *id.* at 9, Plaintiff did not allege that those customers replaced Plaintiff's product with the alleged ETAP-OSI "joint solution," *id.* at 23. Indeed, there is no allegation ETAP or OSI ever sold even one joint solution product. Plaintiff also did not allege the agreement foreclosed Plaintiff from the full range of opportunities to sell its products. *Id.* at 17, 19-21.

**The Alleged Schneider-ETAP Agreement:** Plaintiff alleges Schneider and ETAP entered a "cooperative agreement" that is also "not … vertical," but one "between two sellers of components…." *Id.* at 9. Like allegations concerning the OSI-ETAP agreement, Plaintiff did not allege specific terms of exclusivity in the Schneider-ETAP agreement, that Schneider was coerced to agree, or that the agreement was not easily terminable. *Id.* at 14-16, 21-22. It claimed only that Schneider and ETAP entered an agreement "at least as early as 2012," but that this agreement was not "confirmed" until Schneider announced in 2015 that it had "standardized" on ETAP products. *Id.* at 9. The allegations say nothing about the 2012 agreement, and the allegation that Schneider "standardized" on ETAP is solely based on a marketing piece that states only that a single "Engineering Services Division" of Schneider has unilaterally "chosen" to use ETAP's Grid Design Software. *See* 2nd Order at 14; TAC ¶ 204; SAC ¶ 190. Further, Plaintiff alleged that, after entering the agreement, Schneider unilaterally "refused to recommend or use" Plaintiff's software despite prior business dealings. 2nd Order at 10. Yet, the last business dealing was from 2010 – years earlier than that alleged agreement. *Id.* at 15. Further, the SAC acknowledged that other competitors, like Eaton, ABB, Honeywell, and Siemens, could compete despite the purported agreement, and Plaintiff could sell to those competitors. *Id.* at 23.

DEFENDANTS OPERATION TECHNOLOGY, INC. d/b/a ETAP AND OSISOFT, LLC'S
MOTION TO DISMISS THIRD AMENDED COMPLAINT

**II.     The Court Dismissed The Prior Complaint For Failure To State A Single Element Of A Single Claim.**

This Court dismissed the SAC for many of the same reasons it dismissed the FAC. It found the SAC did not plausibly allege: (i) the existence of exclusive dealing arrangements; (ii) foreclosure from competition in a relevant market as a result of the alleged arrangements; (iii) harm to competition; and (iv) antitrust standing. *See id.* at 2. It also dismissed the remaining claims as both derivative of the deficient Section 1 claims and for other independent reasons. *See id.* at 24-27.

**Sherman Act Section 1 Based On The Alleged OSI-ETAP Agreement:** The Court dismissed the exclusive dealing claim against OSI and ETAP for multiple reasons. The Court first held that Plaintiff had failed to allege any specific exclusivity terms. *Id.* at 16-17; *see id.* at 13-16. It cited as an example Plaintiff's failure to allege that the OSI-ETAP "strategic partnership" prevented OSI from also entering a partnership with Plaintiff or other competitors. *Id.* at 16.

Next, the Court held that the SAC failed to allege that the agreement foreclosed Plaintiff's "full range of selling opportunities…." *See id.* at 17, 19-21. The Court reasoned that there were no allegations that Plaintiff was prevented from selling its Grid Design and Real Time Software to customers outside the NUPIC Markets. *Id.* at 19-20. It further concluded that even if the NUPIC Markets were properly defined Plaintiff was not foreclosed from those markets; Plaintiff alleged it previously worked with OSI to integrate their products and that it could directly negotiate with customers. *Id.* at 20. The Court considered the allegation that OSI charged an additional license fee; it concluded that neither this allegation nor any other suggested "OSI refused to meet customer demand for OSI historian software that interacts with non-ETAP software." *Id.*

The Court further held that the SAC failed to allege the OSI-ETAP agreement harmed competition. *Id.* at 21-22. It ruled that "[w]ithout a showing that one of the parties was coerced…, an exclusive dealing agreement may function

DEFENDANTS OPERATION TECHNOLOGY, INC. d/b/a ETAP AND OSISOFT, LLC'S
MOTION TO DISMISS THIRD AMENDED COMPLAINT

simply as legal competition on the merits." *Id.* at 21. It expounded that where a contract is short-term or easily-terminable, "a competing manufacturer need only offer a better product or a better deal to get contracts of its own." *Id.* at 21. Thus, it concluded the allegations were fatally flawed because they failed to allege the agreement was coerced or difficult to terminate. *Id.* at 22. In so ruling, it rejected Plaintiff's argument that the fact OSI "realized 'substantial financial gains' from their horizontal agreements" made them difficult to terminate. *Id.* at 22 n. 3.

Finally, this Court concluded that the SAC failed to allege antitrust standing because allegations of harm to competition were conclusory and the alleged harm to Plaintiff, itself, was insufficient to convey standing. *Id.* at 23-25. It specifically stated that the SAC failed to sufficiently allege the OSI-ETAP agreement caused competitors not to seek NUPIC certification or harmed customers or potential customers. *Id.* at 23. Moreover, it ruled that Plaintiff could not show harm in the NUPIC Real Time Market because that market did not exist. *Id.* at 20, 21-22.

**Sherman Act Section 1 Based On The Alleged Schneider-ETAP Agreement:** The Court dismissed the exclusive dealing claim relating to the Schneider-ETAP Agreement for many of the same reasons it dismissed claims as to the OSI-ETAP Agreement. It held Plaintiff failed to allege any specific terms creating exclusivity. *Id.* at 15. It stated, in particular, that the allegations as to one business unit at Schneider "standardizing" on ETAP were conclusory and did not explain how the standardization prevented Schneider from bundling its products with those of ETAP's competitors. *Id.* It further held it implausible to infer that Schneider refused to do business with Plaintiff due to an agreement; it observed that the last alleged business dealing between Schneider and ETAP was years before the alleged agreement. *Id.*

The Court found the allegations of foreclosure inadequate because the EMS Platform Market and related submarkets were defined based on customers, and the same products were sold outside those markets. *Id.* at 17-19. It explained that the

DEFENDANTS OPERATION TECHNOLOGY, INC. d/b/a ETAP AND OSISOFT, LLC'S
MOTION TO DISMISS THIRD AMENDED COMPLAINT

allegations also showed Plaintiff was not precluded from partnering with Schneider's competitors in the market. *Id.* at 19.

The Court finally concluded that, as with the OSI-ETAP agreement, the SAC failed to properly allege harm to competition because the Schneider-ETAP agreement was not coerced or difficult to terminate. *Id.* at 21-22. It also held Plaintiff lacked standing for the same reasons as to the OSI-ETAP agreement. *Id.* at 22-24.

**Other claims:** The Court dismissed the Sherman Act Section 2 claim for monopolization for the same reasons it dismissed the Section 1 claims. *Id.* at 24-25. It further held that the attempted monopolization claim failed because the SAC had not adequately alleged specific intent. *Id.* at 25. It dismissed the California Cartwright Act, California and North Carolina unfair competition, and the civil conspiracy claims because, among other things, they were derivative of the faulty Sherman Act claims. *Id.* at 25-26, 27. Finally, it dismissed the tortious interference claim for failing to sufficiently identify specific contracts or allege causation, among other things. *Id.* at 26-27.

## III.    The TAC's Allegations Have Not Substantially Changed.

The TAC primarily reorganizes the prior allegations although there are a limited number of new allegations. Some new allegations contain legal argument. Most of these directly contradict this Court's prior orders. For example, despite the Court's two previous rulings that Plaintiff must allege coercion, Plaintiff has now added allegations arguing that coercion is not a necessary element of its claim. *See* TAC at ¶¶57-58; *cf.* 2nd Order at 21-22. Similarly, Plaintiff has added allegations arguing a legal standard for relevant market definition and foreclosure, which contradicts this Court's prior orders. *See* TAC at ¶¶ 41-51; *cf.* 2nd Order at 17.

Other new allegations are conclusory or duplicative of prior allegations. For example, apparently attempting to address the Court's concern that Schneider and Plaintiff's business discussions ended years before the alleged anticompetitive

agreements, the TAC adds a conclusory paragraph that "Power Analytics continued its efforts to work with Schneider through multiple meetings, discussions and proposals up until" 2015. *Id.* at ¶ 195. In addition, while the TAC adds headings to its allegations, the content is either conclusory or duplicative of prior allegations. *See id.* at ¶¶ 222-23. *Compare id.* at ¶¶ 224-45 *with* SAC at ¶¶ 60, 76, 77, 79, 80, 101, 103, 297, 312, 354.

## ARGUMENT

### I.   The TAC Fails To State Plausible Theories Based On Facts.

The allegations fail to satisfy basic pleading requirements. They do not state a "facial[ly] plausible" claim based on "factual content" that raises more than a "sheer possibility" of unlawful conduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Among other things, the allegations are consistent with rational business strategy, contradict terms of the actual agreements and other documents, and only offer insufficient labels and conclusions. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 551-556 (2007); 2nd Order at 12 (citing *In re Gilead Sciences Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2009)); *Iqbal*, 556 U.S. at 678.

### II.   The TAC Still Fails To State Claims For Antitrust Violations.

#### A.   The TAC Still Fails to Allege Antitrust Injury and Standing.

The TAC still fails to allege antitrust injury or standing to support any of its Sherman Act claims. "The antitrust laws … were enacted for the protection of competition not competitors." 2nd Order at 22 (quoting *Brunswick Corp. v. Pueblo-Bowl-O-Mat, Inc.*, 429 U.S. 477, 488 (1977) (internal quotation removed)). Thus, "it is the allegations concerning harm to competition that are material, not those concerning the claimed harm to Plaintiff from the alleged misconduct…." 2nd Order at 23. This Court concluded the SAC's allegations of antitrust injury and standing were conclusory. *Id.* at 23. The TAC's new allegations remain conclusory, and those that are not show Plaintiff was harmed by its own inability to compete on the merits.

DEFENDANTS OPERATION TECHNOLOGY, INC. d/b/a ETAP AND OSISOFT, LLC'S
MOTION TO DISMISS THIRD AMENDED COMPLAINT

First, the new allegations under the "Antitrust Standing" heading, which concern both agreements, are insufficient. They simply argue in a conclusory fashion that "Power Analytics has standing under the prevailing law…." TAC at ¶¶ 222-23. Second, as to the OSI-ETAP agreement, there are no new non-conclusory allegations that support the alleged agreement "has caused any potential competitors not to seek NU[P]IC certification" or otherwise "harmed customers or potential customers" – as required by this Court. 2nd Order at 23. Indeed, the TAC still alleges there have never been any competitors in the NUPIC Real Time Market to harm. TAC ¶115; *see* 2nd Order at 20.[2] Moreover, the allegations still show that OSI is willing to license customers to use its historian software with non-ETAP products; OSI customers can, thus, integrate with non-ETAP products; and Plaintiff can negotiate directly with OSI customers. *See* 2nd Order at 20; TAC ¶¶ 93, 100, 102. While the TAC still calls the license fee an "unreasonably imposed penalty," it also still fails to allege the actual value of the fee or any other facts supporting that the fee is "unreasonable." *See* TAC ¶ 93.

---

[2] The TAC still cites an internal email in which an ETAP employee allegedly states ETAP should "kill" competition. TAC ¶85. This Court already concluded that email was of no moment. *See* 2nd Order at 25 (citing *Aerotec Int'l v. Honeywell Int'l, Inc.*, 836 F.3d 1171, 1184 (9th Cir. 2016) ("Even an act of pure malice by one business competitor against another does not, without more, state a claim under the federal antitrust laws.")). That the TAC now explains it was written in response to Plaintiff releasing its Real Time Software does not change that conclusion. TAC ¶ 84. Quite the opposite. Plaintiff admits neither ETAP, Plaintiff, nor any other competitor sought to certify Real Time Products. ETAP cannot "kill" competition in a non-existent market. Relatedly, the TAC now fails to even attempt to allege Plaintiff had a genuine intent to enter the Real Time NUPIC Market. *Cf.* SAC ¶ 68; *see Bubar v. Ampco Foods, Inc.*, 752 F.2d 445, 450 (9th Cir. 1985). It does not explain why Plaintiff never sought a NUPIC audit in the seven years since it developed its Real Time Software (especially when it admittedly had a working relationship with OSI for years during that time period). *See* SAC ¶ 204 (alleging in dismissed patent allegation that Plaintiff developed Real Time Software in 2007).

DEFENDANTS OPERATION TECHNOLOGY, INC. d/b/a ETAP AND OSISOFT, LLC'S
MOTION TO DISMISS THIRD AMENDED COMPLAINT

1   Third, the TAC also does not show harm to the EMS Platform Market. As an

2   initial matter, Plaintiff continues to allege that it does not even compete in that

3   market; that market is "restrict[ed] to sales among firms that … provide a …

4   bundle," *id.* ¶ 140, and Plaintiff only supplies single "components," *id.* ¶ 141.

5   Moreover, there are no new non-conclusory allegations that the Schneider-ETAP

6   Agreement has caused a price increase in the EMS Platform Market – again as

7   required by the Court. *See* 2nd Order at 23. The TAC does word-smith its

8   allegations claiming price increased because of the "high costs" associated with

9   "expensive manual studies" that Schneider allegedly conducts. *See, e.g.*, TAC at

10  ¶ 209. But, that allegation of harm is based on "one competitor's … products," *i.e.*

11  Power Analytics', and, thus, cannot support standing. TAC at ¶ 211; 2nd Order at

12  23. And, importantly, the SAC contained similar allegations this Court already

13  rejected. *See* 2nd Order at 23 (discussing SAC ¶¶ 193, 197 that alleged exclusion

14  of "lower cost" products). In any case, even if price increased, that is not a signal

15  that any alleged agreement caused competitive harm to Plaintiff. Plaintiff

16  affirmatively alleges it can compete, despite the agreement, by offering its

17  purportedly lower cost and higher quality product to Schneider's competitors,

18  "Eaton, Siemens, GE, ABB, Honeywell and other smaller competitors," and even

19  to the other Schneider business units that have not "standardized" on ETAP. *See*

20  2nd Order at 23; TAC ¶¶ 152, 204.

21  At base, this is the failure of Plaintiff's allegations. Plaintiff complains of

22  losing to competition on the merits because ETAP won contracts with OSI and

23  Schneider. That does not state a claim. To the contrary, "[c]ontracts, *simpliciter*,

24  are not illegal under the Sherman Act." *Aerotec Int'l, Inc.*, 836 F.3d at 1181. In

25  fact, as this court has recognized, "virtually *every* contract … excludes alternative

26  sellers from *some* portion of the market…." 2nd Order at 12 (citing *Barry Wright

27  Corp. v. ITT Grinnell Corp.*, 724 F.2d 227, 236 (1st Cir. 1983) (Breyer, J.)).

28  Moreover, OSI and Schneider have a "long recognized right" to decide "with

DEFENDANTS OPERATION TECHNOLOGY, INC. d/b/a ETAP AND OSISOFT, LLC'S
MOTION TO DISMISS THIRD AMENDED COMPLAINT

whom [to] deal." *United States v. Colgate & Co.,* 250 U.S. 300, 307 (1919); *see Aerotec Int'l,* 836 F.3d at 1183.

Thus, this Court has rightly ruled that the allegations show Plaintiff "need only offer a better product or a better deal to get contracts of its own." 2nd Order at 21 (quoting *Omega Envtl, Inc. v. Gilbarco, Inc.*, 127 F.3d 1157, 1164 (9th Cir. 1997)). The new allegations themselves make clear Plaintiff has not been able to do so, not because of anticompetitive conduct, but simply because ETAP's products are better. A YouTube video, now integrated by a new allegation, contains numerous statements from corporate and government customers saying just that – ETAP offered the "best" product. *See* TAC ¶ 206. Plaintiff cannot use the antitrust laws, designed to foster competition, to stifle it. These claims should be dismissed with prejudice.

## B. The TAC Still Fails to Plead Sufficient Facts to Support Sherman Act Section 1 Violations.

The TAC also still fails to properly allege the elements of a Sherman Act Section 1 claim. To state a claim, "a plaintiff must prove (1) the existence of an agreement, and (2) that the agreement was in unreasonable restraint of trade." 2nd Order at 13 (quoting *Aerotec Int'l,* 836 F.3d at 1178). This Court ruled that exclusive dealing agreements have "well-recognized economic benefits…." *Id.* (quoting *Omega Envtl.*, 127 F.3d at 1162). Thus, they violate Section 1 "only if its effect is to foreclose competition in a substantial share of the line of commerce affected." 2nd Order at 14 (quoting *Allied Orthopedic Appliances Inc. v. Tyco Health Group LP*, 592 F.3d 991, 996 (9th Cir. 2010) (internal quotations omitted)).

### 1. Plaintiff still fails to allege a specific exclusivity term.

The allegations still fail the "threshold requirement" to allege an express exclusivity term or a term that "in the real world" has the same effect. *ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254, 282, 285 (3rd Cir. 2012); *see Aerotec Int'l, Inc.*,

DEFENDANTS OPERATION TECHNOLOGY, INC. d/b/a ETAP AND OSISOFT, LLC'S
MOTION TO DISMISS THIRD AMENDED COMPLAINT

836 F.3d at 1182.[3] This Court has twice ruled that Plaintiff did "not … present any allegations specific to exclusivity, *e.g.*, requirements terms, … volume or market share targets, or long-term contracts that prevent meaningful competition by taking potential purchasers off the market." 2nd Order at 15; 1st Order at 13. The TAC's allegations still fail to allege the agreements are anything but "run-of-the-mill contracts." 2nd Order at 14 (citing *Aerotec Int'l*, 836 F.3d at 1181).

**OSI-ETAP Agreement:** Plaintiff persists in ignoring the actual terms of the OSI-ETAP agreements. *See* Declaration of Trevor V. Stockinger, Ex. A & B ("Stockinger Decl."). They are expressly *non*-exclusive: ETAP is a "non-exclusive" OEM, and OSI's license grant is "non-exclusive." Stockinger Decl., Ex. B at §§1.1, 1.2. Plaintiff cannot avoid the very documents upon which the claim is based. *See* 2nd Order at 12 (a court need not accept as true allegations contradicted by exhibits). They defeat its claim at the outset. *Creston Elecs. Inc. v. Cyber Sound & Sec. Inc.*, 2012 U.S. Dist. LEXIS 16132, *10 (D.N.J. Feb. 9, 2012) (dismissing claim because agreement was expressly non-exclusive); *J.L. Terrel's v. Sherwin-Williams Auto. Finishes Corp.*, 2004 U.S. Dist. LEXIS 6411, *16-17 (E.D. Penn. Mar. 30, 2004) (same).

Plaintiff misleadingly cites two other documents that are not agreements: a "Term Sheet" and a "Memorandum of Understanding." TAC ¶¶ 92-94. This misdirection fails. The MOU is a red-lined draft. Stockinger Decl., Ex. C. The Term Sheet expressly states that "nothing" in it "create[s] any legal rights or obligations between the parties." *Id.*, Ex. D at General Terms. Moreover, both contemplate that the final agreement will be "nonexclusive" – which it is, and that

---

[3] Even before reaching this "threshold requirement," Plaintiff's claim fails. It must plead a vertical agreement to support an exclusive dealing arrangement. *See* 2nd Order at 13 ("Exclusive dealing involves an agreement between a vendor and buyer…."). Yet, the allegations state the agreements are "not … vertical." TAC at ¶¶ 79, 197. Thus, the TAC affirmatively pleads away its claims, as this Court appears to have recognized in assessing harm to competition. 2nd Order at 22 n. 3.

DEFENDANTS OPERATION TECHNOLOGY, INC. d/b/a ETAP AND OSISOFT, LLC'S MOTION TO DISMISS THIRD AMENDED COMPLAINT

1   agreement emphasizes that it supersedes these and any other precedent documents.

2   *Id.*, Ex. C at General Responsibilities, Ex. D at Distribution Rights, Ex. B at § 13.

3   Thus, the TAC's key allegation that the MOU "*obligates* OSI to *exclusively*

4   'recommend and promote ETAP Products as a preferred power systems analysis

5   and management platform' to all prospective customers and includes a reciprocal

6   requirement for ETAP to do the same" remains a mischaracterization of the actual

7   agreements. TAC ¶ 94 (emphasis added). Tellingly, there are no allegations that

8   ETAP or OSI ever did what Plaintiff alleges that MOU obligated them to do.

9       Plaintiff goes on to allege that the Term Sheet required ETAP to state that

10   the OSI license only extended to use of its product with ETAP's software, not non-

11   ETAP software. TAC ¶ 92; *see id.* at ¶ 93. As described above, the Term Sheet is

12   not an agreement and requires nothing. Moreover, this Court already rejected the

13   sufficiency of that allegation for failing to state that OSI refused to license a non-

14   ETAP customer. 2nd Order at 20. The TAC is still devoid of that allegation. More

15   broadly, there are no non-conclusory allegations that OSI or ETAP recommended

16   or sold *any* joint products under these agreements. Further, the allegations support

17   no more than that OSI enforces standard use restrictions – a long-recognized right

18   of a holder of intellectual property. *See General Talking Pictures Corp. v. Western*

19   *Elec. Co.*, 304 U.S. 175, 181 (1938); *see United States v. Westinghouse Elec.*

20   *Corp.*, 648 F.2d 642, 647 (9th Cir. 1981). At base, the TAC, like the SAC, "alleges

21   only that OSI has not partnered with Plaintiff," but nothing in the alleged

22   agreement prevents it from doing so. 2nd Order at 16. This claim should be

23   dismissed with prejudice for failing to allege an exclusive dealing arrangement.

24       **Schneider-ETAP Agreement:** The allegations of an exclusive agreement

25   between Schneider and ETAP are also still deficient. 2nd Order at 15-16. They say

26   absolutely nothing about the terms of the purported 2012 agreement or how those

27   terms relate to the 2015 "standardization" on ETAP. *See* TAC ¶¶ 198-200. Further,

28   the allegation of the 2015 agreement still provides no specificity on its terms,

DEFENDANTS OPERATION TECHNOLOGY, INC. d/b/a ETAP AND OSISOFT, LLC'S
MOTION TO DISMISS THIRD AMENDED COMPLAINT

relying solely on a press release that a *single* Schneider business unit standardized for internal purposes – not for purposes of selling to EMS Platform customers. *See id.* ¶ 204 (stating standardization only "within the company's Engineering Services Division."). Moreover, the TAC's new explanatory gloss on this press release, made "on information and belief," is conclusory and is contradicted by the press release itself. *See* TAC ¶ 204; *see* 2nd Order at 12 (no credit given to allegations contrary to judicially-noticeable documents). And, the integration of a YouTube video in which a Schneider executive states "ETAP was the only choice" does not fix the faulty allegations. TAC ¶ 206. To the contrary, in context, it, as well as the press release itself, suggests Schneider choose ETAP because it is the preferred product. *Id.*; *see id.* ¶ 204 (ETAP product "is already reducing costs and improving productivity" at Schneider's Engineering Services Division).

Further, the allegations as to Plaintiff and Schneider's business dealings are still insufficient to support an inference that Schneider refused to do business with Plaintiff because of the agreement. *See* 2nd Order at 15. This Court previously concluded that causal inference was implausible because Schneider ended business dealings with Plaintiff in 2010 – years before the alleged agreement and "standardization." *Id.* at 15. The TAC now adds an allegation that Plaintiff continued "to work with Schneider through multiple meetings, discussions and proposals" *up until 2015*. TAC ¶ 195. First, in sharp contrast to allegations of specific pre-2010 business dealings, this new allegation is patently conclusory. Second, if credited, it now suggests Schneider was willing to deal with Plaintiff all the way until 2015 – despite the Schneider-ETAP agreement that purportedly began in 2012. *See id.* ¶ 198. Thus, it is still true, as this Court previously held, "it is not plausible to infer … that Schneider has refused to do business with Plaintiff due to an exclusive dealing arrangement." 2nd Order at 15.

DEFENDANTS OPERATION TECHNOLOGY, INC. d/b/a ETAP AND OSISOFT, LLC'S
MOTION TO DISMISS THIRD AMENDED COMPLAINT

**2.   The TAC still fails to allege harm to competition.**

      **a.   The TAC still fails to allege preclusion from all selling opportunities.**

The TAC still fails to properly allege Plaintiff was foreclosed from "the full range of selling opportunities reasonably open to rivals…." 2nd Order at 17 (citing *Omega Envtl.*, 127 F.3d at 1162). Instead, the TAC, like the SAC and FAC, limits the relevant markets to "a portion of customers," rather than "a distinction in the product sold to those customers," thereby improperly defining separate markets that include the same products. 2nd Order 1810; 1st Order at 16-17; *see* TAC ¶ 60-61 (limiting NUPIC market to sales "to customers who … may only purchase and deploy" Grid Design or Real Time Software); TAC ¶ 121-22, 161 (limiting EMS Platform market by "common characteristics" of customers and "End User[s]"); TAC ¶¶ 14-38 (describing software in both markets in "General Background").

Indeed, the TAC now deletes – apparently trying to hide from – previous allegations showing Plaintiff could still sell to customers outside the alleged markets, including to Chevron, Camp Pendleton and the Federal Aviation Administration. *See* SAC ¶ 220, FAC ¶¶ 80.  In any case, the TAC's new allegation that sales into the NUPIC and EMS Platform Markets account for only 80 percent of all product sales still belies that none of the defined markets, nor all three together, properly encompass the "full range" of selling opportunities. TAC ¶ 160. *See Eastern Foods Servs., Inc. v. Pontifical Catholic Univ. Servs. Ass'n*, 357 F.3d 1, 9 (1st Cir. 2004) (affirming dismissal where exclusivity covered only Puerto Rican University but no allegations of what other "potential outlets are foreclosed to [plaintiff] and other competitors"); *Stewart v. Gogo, Inc.*, 2013 U.S. Dist. LEXIS 51895, *11-13 (N.D. Cal. Apr. 10, 2013) (dismissing because alleged foreclosure covered aircraft that actually had internet access, not all aircraft that could have internet access). Indeed, the allegations that Plaintiff was foreclosed from all Schneider sales – let alone the full range of selling opportunities – is not

DEFENDANTS OPERATION TECHNOLOGY, INC. d/b/a ETAP AND OSISOFT, LLC'S
MOTION TO DISMISS THIRD AMENDED COMPLAINT

1  even supported; the only concrete allegation of foreclosure relates not to sales into

2  the EMS Platform Market or to sales to Schneider as a whole, but rather to the

3  choice of one out of numerous Schneider divisions to standardize on ETAP. TAC

4  ¶ 204.[4] The TAC should be dismissed with prejudice for this reason.

### b.    The TAC still fails to allege foreclosure even in the alleged markets.

7  Even were the NUPIC and EMS Platform Markets plausibly alleged, the

8  TAC, like the prior complaints, fails to adequately allege foreclosure. The TAC's

9  allegations still show that Plaintiff has "alternative channels of distribution" into

10  these markets. *Omega*, 127 F.3d at 1163 (granting dismissal); *PNY Techs., Inc. v.*

11  *Sandisk Corp.*, 2014 U.S. Dist. LEXIS 58108, at *27-31 (N.D. Cal. Apr. 25, 2014).

12  **Alternative channels into the NUPIC Markets:** This Court previously

13  concluded that the SAC failed plausibly to allege foreclosure from the NUPIC

14  Markets because it alleged that "Plaintiff previously worked with OSI to integrate

15  its products with OSI's historian software," "Plaintiff is 'currently eligible' to sell

16  its grid design products," and "Plaintiff has been able to negotiate directly with

17  customers in this market." 2nd Order at 20. The TAC still contains these same

18  allegations. *See Compare* TAC ¶ 100 *to* SAC ¶ 95; TAC ¶ 68 to SAC ¶ 61; TAC

19  ¶ 102 *to* SAC ¶ 98. Consequently, the TAC should be dismissed.

20  **Alternative channels into the EMS Platform Markets:** Similarly, this

21  Court held that the SAC failed to allege Eaton and other Schneider competitors are

22  not viable alternatives "from the perspective of component suppliers like Plaintiff."

23  2nd Order at 23. The TAC still lists numerous alternative EMS Platform suppliers

24  to whom Plaintiff could sell, including Eaton, GE, Siemens, ABB and Honeywell.

25  TAC ¶ 152. And, as this Court previously held, Plaintiff cannot save its claims

---

[4] For this reason, too, any allegations as to Schneider's market shares are inapposite. The purported agreement is alleged to encompass only one of many Schneider business units.

DEFENDANTS OPERATION TECHNOLOGY, INC. d/b/a ETAP AND OSISOFT, LLC'S
MOTION TO DISMISS THIRD AMENDED COMPLAINT

1    with allegations that the market is "fragmented," that Eaton offers a product

2    competing with Plaintiff, or that remaining sales opportunities are "less desirable."

3    2nd Order at 19, 23; *Compare* TAC ¶¶ 152, 159 *to*  SAC ¶¶ 141, 149; *see also Int'l*

4    *Constr. Prods., LLC v. Caterpillar, Inc.*, 2016 U.S. Dist. LEXIS 6826, at *19, *22

5    (D. Del. Jan. 21, 2016) (dismissing complaint despite claim that alternative

6    channels were "inferior" or that market entry was "difficult").

7                    **3.    The TAC still fails to allege coercion.**

8            This Court has recognized that "it is not in the long-term interest of the

9    company that grants [an] 'exclusive deal' to drive out of business competitors of

10   the grantee." 2nd Order at 21 (citing *Stop & Shop Supermarket Co. v. Blue Cross*

11   *& Blue Shield of R.I.*, 373 F.3d 57, 66 (1st Cir. 2004)). Moreover, "[i]f the

12   contracts at issue are short-term or easily terminated, a competing manufacturer

13   need only offer a better product or a better deal to get contracts of its own." 2nd

14   Order at 21 (internal quotation removed). Based on these legal principles, this

15   Court held that the prior allegations were insufficient because they failed to allege

16   that Schneider or OSI were coerced into the agreements or that the agreements

17   were difficult to terminate. 2nd Order at 22; 1st Order at 18-19. Indeed, the OSI-

18   ETAP agreement has now expired on its own terms. Stockinger Decl., Ex. B at

19   Schedule A §8 (terminating three years from November 3, 2013). Plaintiff has

20   never even attempted to fix this dispositive pleading defect; instead, the TAC now

21   regurgitates rejected legal argument that coercion is not a necessary element of its

22   claims. TAC at 57-58; *see* 2nd Order at 22. This Court should dismiss based on

23   this deficiency alone.

24                    **4.    The remaining allegations cannot save Plaintiff's claims.**

25           All of the remaining allegations of harm to competition are insufficient.

26   First, harm cannot be inferred from allegations of market power because this Court

27   has repeatedly found no relevant market is plausibly alleged; thus, market share

28   allegations cannot be assessed. 2nd Order at 25; 1st Order at 15-18, 21. Second, all

of the remaining allegations are conclusory or non-cognizable. 2nd Order at 23 (discussing conclusory allegations of harm to competition); 1st Order at 20 (dismissing as non-cognizable allegations of raised consumer costs); *see, e.g.*, TAC at ¶¶ 79, 81, 83, 106, 208, 210-18, 251, 267. Thus, Plaintiff again fails plausibly to allege harm to competition.

C.     **The TAC Fails to Sufficiently Plead Facts to Support Sherman Act Section 2 Violations.**

The TAC fails plausibly to allege that ETAP violated Sherman Act Section 2 for monopolizing or attempting to monopolize the NUPIC Markets. Section 2 claims require: (a) possession of monopoly power in a relevant market; (b) willful acquisition or maintenance of that power; and (c) causal antitrust injury. 2nd Order at 24 (citing *Allied Orthopedic Appliances*, 592 F.3d at 998). An attempt claim also requires a "specific intent to monopolize." *Id.*

The TAC's Section 2 claim is still wholly derivative of its Section 1 claim. *See, e.g.*, TAC ¶¶ 283-87 (alleging "exclusionary agreement" as basis for claim). This Court has twice held these same allegations fail to allege any element of the claim: market power in a relevant market, anticompetitive conduct, or antitrust injury. 2nd Order at 25; 1st Order at 21. As to the attempt claim, this Court also held that even an allegation that ETAP intended to "kill competition" is not enough to allege specific intent to monopolize. 2nd Order at 25. As discussed above, the TAC does not remedy these deficiencies. This Court should dismiss this claim with prejudice.

**III.   The TAC Still Fails To State A Cartwright Act Or UCL Claim.**

The California Cartwright Act and Unfair Competition Law claims should again be dismissed. This Court previously dismissed them because both "rise[] and fall[]" and are "derivative" of the Sherman Act claims. 2nd Order at 25, 26. The TAC does not even try to augment the prior two paltry allegations supporting each

DEFENDANTS OPERATION TECHNOLOGY, INC. d/b/a ETAP AND OSISOFT, LLC'S
MOTION TO DISMISS THIRD AMENDED COMPLAINT

claim. *See* TAC ¶¶ 275-76, 296-97. Because the Sherman Act claims still fail, the Court should dismiss the Cartwright Act and UCL claims with prejudice.[5]

## IV.    The TAC Still Fails To Allege Violations Of North Carolina's UDTPA.

This Court has twice dismissed Plaintiff's North Carolina UDTPA claim because the claim relies on insufficient allegations of antitrust or common law tort violations. 2nd Order at 26; 1st Order at 26. The TAC now contains a separate section with purported allegations as to these claims, but those are merely duplicative of the insufficient antitrust allegations. See TAC ¶¶ 224-40.[6]

Courts routinely dismiss UDTPA claims, where, as here, they fail to allege the conduct (whether "full blown" or incipient) adversely impacted competition or resulted in harm to plaintiff. *See, e.g.*, *Sea-Roy Corp. v. Parts R Parts, Inc.*, 1997 U.S. Dist. LEXIS 21809 at *64 n.25 (M.D.N.C. 1997) (granting summary judgment on UDTPA claim based on refusals to deal for failure to prove adverse

---

[5] The UCL claim also fails because Plaintiff has not alleged under which prong it is bringing its claim. *Lovesy v. Armed Forces Benefit Ass'n*, 2008 U.S. Dist. LEXIS 93479, *18-19 (N.D. Cal. Mar. 13, 2008) ("Allegations of unlawful, unfair, or fraudulent acts … must be pled with a reasonable degree of particularity.").

[6] It appears Plaintiff is only alleging a UDTPA claim under the anticompetitive conduct prong – not the distinct unfair and deceptive practices prong. Indeed, the claim is legally defective for failing to allege under which prong it is bringing its claim. *See Sewell Plastics, Inc. v. Coca-Cola Co.*, 720 F. Supp. 1196, 1220 (W.D.N.C. 1989). As the FAC did, the TAC does again allege ETAP made a false statement. TAC ¶¶ 109; TAC ¶¶ 299-30. Setting aside that the allegation is plainly made in the antitrust section of the TAC, even if it is considered under the unfair and deceptive practices prong, the allegation is deficient; it is conclusory and fails to establish causation – that is, an ability to deceive sophisticated customers who design and operate nuclear power plants. *See First Atl. Mgmt. Corp. v. Dunlea Realty Co.* 507 S.E.2d 56, 63 (N.C. App. 1998) (must show "likelihood of deception" to support UDTPA claim). In dismissing Plaintiff's Lanham Act claim brought in the FAC, this Court considered and rejected a very similar allegation as "conclusory" and for failing to establish "deception or customer reliance." 1st Order at 23-24; *see also id.* at 26 (citing *Ellis v. La.-Pac. Corp.*, 699 F.3d 778, 787 (4th Cir. 2012) and dismissing UDPTA claim, in part, because Lanham Act claim insufficiently alleged).

DEFENDANTS OPERATION TECHNOLOGY, INC. d/b/a ETAP AND OSISOFT, LLC'S MOTION TO DISMISS THIRD AMENDED COMPLAINT

effect on competition, or actual injury or damage); *Oceans One Eleven, LLC v. Beach Mart, Inc.*, 2008 U.S. Dist. Lexis 82416, *5–6 (E.D.N.C. Oct. 16, 2008) (dismissing UDTPA claim that relied on insufficient allegations of Sherman Act claim); *Sewell Plastics*, 720 F. Supp. at 1220 (disposing of federal antitrust and section 75-1.1 claims based on exclusive dealing for failure to show an adverse effect on competition); *L.C. Williams Oil, Inc. v. Exxon Corp.*, 625 F. Supp. 477, 484 (M.D.N.C. 1985) (same); *Stearns v. Genrad, Inc.*, 564 F. Supp. 1309, 1318 (M.D.N.C. 1983) (same). Plaintiff's UDTPA should be dismissed with prejudice.

## V.   The TAC Still Fails To State A Claim For Tortious Interference.

Plaintiff's claim for tortious interference should again be dismissed. TAC ¶¶ 298-302. This Court previously ruled Plaintiff failed to state a claim because: (1) it did not identify any specific business relations with which Defendants interfered; (2) it did not allege that any losses in sales were the result of interference; and (3) it did sufficiently allege intent. 2nd Order at 26-27. Plaintiff has failed to amend any of its insufficient allegations. Further, this tort requires independent wrongful conduct; because the allegations as to the Sherman Act and other claims are deficient, Plaintiff cannot meet this element. *See Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1159 (2003) (wrongful act is one that is unlawful). This is particularly important because the new allegations make clear that Plaintiff is really complaining about loss of business due to competition on the merits. *Id.* ("[I]ndependently wrongful [requirement] distinguishes lawful competitive behavior from tortious interference"). Thus, it should be dismissed with prejudice.

## VI.   The TAC Still Fails To Allege A Claim Of Civil Conspiracy.

The civil conspiracy claim should be dismissed with prejudice. This Court has already dismissed it twice, and Plaintiff has failed to amend any of its conclusory allegations. *Compare* TAC ¶¶ 303-308 *to* SAC ¶¶ 381-86.

1   **VII.   This Court Should Dismiss All Claims With Prejudice.**

2        This Court should dismiss with prejudice. "Leave to amend may … be

3   denied for repeated failure to cure deficiencies by previous amendment."

4   *Abagninin v. AMVAC Chem. Corp.*, 545 F.3d 733, 742 (9th Cir. 2008); *see*

5   *Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013). This Court has

6   dismissed Plaintiff's allegations two times with specific instructions on how to

7   amend. Yet, Plaintiff has now three times failed to remedy a single issue.

8        Indeed, rather than remedy the defects, Plaintiff adds improper argument

9   that this Court was previously wrong on the law. *See*, *e.g.*, TAC ¶¶ 41-51 (arguing

10  relevant market standard based on cases rejected by Court); TAC ¶¶ 57-58

11  (arguing "[c]oercion is [n]ot a [r]equired [e]lement of an [a]ntitrust [c]laim");

12  ¶¶ 241-45 (arguing legal standard relating to North Carolina UDTPA claim). Most

13  other new allegations are conclusory or repetitive of allegations already rejected as

14  deficient.  *See*, *e.g.*, TAC ¶¶ 208-21 (merely reorganizing prior or adding

15  conclusory allegations in new "[h]arm to [c]ompetition" section); *id.* ¶¶ 222-23

16  (conclusory, repetitive allegations in "antitrust standing" section); *id.* ¶¶ 224-45

17  (summarizing prior allegations in "[u]nfair and [d]eceptive [t]rade [p]ractices"

18  section). Those that are not support the grant of dismissal. *See*, *e.g.*, *id.* ¶ 195

19  (showing Schneider continued to deal with Plaintiff after purported 2012

20  agreement); *id.* ¶ 206 (showing ETAP offered better product than Plaintiff). This

21  Court should dismiss with prejudice.

22  **CONCLUSION**

23       This Court should dismiss all claims with prejudice.

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

DEFENDANTS OPERATION TECHNOLOGY, INC. d/b/a ETAP AND OSISOFT, LLC'S
MOTION TO DISMISS THIRD AMENDED COMPLAINT

1   DATED:  February 8, 2018       Respectfully submitted,

2                             KESSELMAN BRANTLY STOCKINGER LLP

3

4                             By:   */s/ Trevor V. Stockinger*
                                 Trevor V. Stockinger

5

6   Michael J. Sacksteder       David W. Kesselman
   Joseph S. Belichick         Trevor V. Stockinger

7   FENWICK & WEST LLP     KESSELMAN BRANTLY STOCKINGER LLP

8   *Counsel for Defendant*

9   OSIsoft, LLC            John W. Vanderberg (*Pro Hac Vice*)
                             Salumeh R. Loesch (*Pro Hac Vice*)

10                          KLARQUIST SPARKMAN, LLP
                             121 S.W. Salmon St., Ste. 1600

11                          Portland, OR 97204
                             Telephone: (503) 595-5300

12

13                          *Counsel for Defendant*
                          OPERATION TECHNOLOGY, INC.,

14                          d/b/a ETAP

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS OPERATION TECHNOLOGY, INC. d/b/a ETAP AND OSISOFT, LLC'S
MOTION TO DISMISS THIRD AMENDED COMPLAINT